the value of the Reorganized Parent Common Equity distributed under the Plan shall be calculated using the Debtors' midpoint valuation of $417 million.

### 9019 SETTLEMENT

EE.     The Plan incorporates and implements the 9019 Settlement. The 9019 Settlement reflects two separate settlement agreements entered into with the Debtors' largest secured and unsecured creditors. The Committee Settlement Agreement reflects a compromise and settlement of all claims and Causes of Action, including the claims and Causes of Action asserted in the Adversary Proceeding, that the Debtors may have or could have asserted or that may have been asserted on the Debtors' behalf, or that may have been asserted by any Holder of a Claim or Interest, against Oaktree, the Directors and Officers, National Union and the Holders of Claims in Class 5 other than Holders of Claims in Class 5 who objected to the Plan or as otherwise set forth in this Order, and the mutual release of claims and Causes of Action by the Committee Settlement Parties, including through the Plan Debtor Releases, the Third Party Releases and the Molycorp Minerals Debtors Releases. Such mutual releases, including the Third Party Releases (as modified by this Order), reflect a critical component of the Committee Settlement Agreement, upon which the Committee Settlement Parties relied in agreeing to support the Plan. Pursuant to the Committee Settlement Agreement, holders of Claims in Class 5A will receive (x) 7.5% of the Reorganized Parent Common Equity, (y) $2 million in Cash for the Class 5 Cash Out Option, and (z) National Union, under the Plan, has agreed to provide the Holders of Claims in Class 5A with the Class 5A Insurance Payment.

FF.     The Plan also incorporates and implements the terms of the 10% Noteholder Group Settlement among the Ad Hoc 10% Noteholders, the Debtors, Oaktree and the Creditors' Committee that resolves all of the Ad Hoc 10% Noteholders' objections to the Committee Settlement Agreement and the Plan, including potential objections related to the

transfer pursuant to the Plan of Molycorp Silmet AS and certain intellectual property related to the Downstream Businesses to Reorganized Parent, or entities owned, directly or indirectly, by Reorganized Parent, and provides for certain releases, upon which the parties have relied and without which the parties may not have agreed to the 10% Noteholder Group Settlement. Pursuant to the 10% Noteholder Group Settlement, the parties agreed, among other things, that the 10% Noteholder Permitted Credit Bid of $1,000,000, plus the assumption of certain liabilities shall be deemed the Successful Bid (as defined in the Bid Procedures Order) for the sale and purchase of certain assets of the Molycorp Minerals Debtors to be transferred to an acquisition vehicle for which Oaktree shall receive its *pro rata* share. For the avoidance of doubt, the Purchased Assets (as defined in the Credit Bid APA) shall not include and the Credit Bid shall expressly exclude, among other things the Downstream Transferred Assets, the Fee-Owned Real Estate, the Molycorp Minerals Intercompany Amount; the Inventory Proceeds (each as defined in the 10% Noteholder Group Settlement), all assets that will be owned directly or indirectly by the Reorganized Parent pursuant to the Plan; and the Oaktree Equipment.

GG.     The 10% Noteholder Group Settlement also provides significant consideration to the Molycorp Minerals Debtors in the form of Molycorp Minerals Wind-down Expenses Reserve (as defined in the 10% Noteholder Group Settlement) to fund certain costs set forth on Exhibit 3 to the 10% Noteholder Group Settlement, and including (i) $400,000 for the costs and expenses of seeking approval of the Credit Bid and the Molycorp Minerals Sale pursuant to the Credit Bid APA, (ii) an initial amount of $2.1 million, to fund Mountain Pass carrying costs, costs associated with the termination of the remaining employees at Molycorp Minerals and the wind-down and/or chapter 7 liquidation costs associated with the remaining assets of the Molycorp Minerals Debtors not sold pursuant to the Credit Bid or otherwise

NAI-1500955975v1

transferred pursuant to the terms of the 10% Noteholder Group Settlement, and (iii) following consent by Oaktree and the Ad Hoc 10% Noteholders or automatically upon consummation of the Mineral Rights Transfer, the balance of the costs set forth on Exhibit 3 to the 10% Noteholder Group Settlement. Pursuant to the 10% Noteholder Group Settlement all fees and expenses of the Ad Hoc 10% Noteholders incurred in connection with these cases shall be paid upon consummation of the Plan in an amount up to $5,000,000; the fees and expenses of the 10% Notes Indenture Trustee shall be paid from the cash recovery allocable to the 10% Noteholders on account of their allowed secured claim; and to the extent legally permissible, the Ad Hoc 10% Noteholders may submit any fees and expenses above $5,000,000 for reimbursement to be paid out of the cash recovery allocable to the 10% Noteholders. The 10% Noteholder Group Settlement provides for certain mutual releases, and the Ad Hoc 10% Noteholders support the various releases in the Plan, including the releases contemplated to be given by the Molycorp Minerals Debtors.

HH. The Molycorp Minerals Debtors' Release is (i) in exchange for good and valuable consideration, (ii) a good faith settlement and compromise of the claims so released, and (iii) is in the best interests of the Molycorp Minerals Debtors and their estates.

II. The Committee Settlement Agreement and 10% Noteholder Group Settlement as incorporated in the Plan (a) are permitted means of implementing the Plan pursuant to section 1123(b) of the Bankruptcy Code; (b) are integral elements of the transactions incorporated into the Plan; (c) confer material benefits on, and are in the best interests of, the Debtors, the Debtors' Estates, and their creditors; (d) are fair and equitable and represent a resolution within the range of reasonableness; and (e) are consistent with sections 105, 1123, and

NAI-1500955975v1

1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law.

JJ. Based on the record made to the Court and pursuant to Section IV.A of the Plan:

1. the Holders of Claims in Class 5A are entitled to receive the Class 5A Insurance Payment and the Class 5A Stand-Alone Distribution;

2. the Convertible Notes Claims shall be Allowed in the amounts set forth in Section III.B.5.b of the Plan; and

3. the Recharacterized Intercompany Claims shall be deemed recharacterized as equity solely for purposes of calculating distributions under the Plan to third-party creditors and the Plan will take into account all Recharacterized Intercompany Claims solely for purpose of calculating distributions to third-party creditors.

## DISCHARGES, RELEASES, INJUNCTION, AND EXCULPATIONS

KK. The approval of all settlement, discharge, release, injunction, and exculpation provisions set forth in Article IX of the Plan, including the Third Party Release and the Molycorp Minerals Debtors Release (all of the foregoing, as may be modified by the terms of this Order, the "**Release Provisions**") is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b) and (d). The Release Provisions:

1. are fair, equitable and reasonable;

2. constitute good faith compromises and settlements of the claims released thereby;

3. have been made in exchange for good and valuable consideration provided by the Released Parties and the Molycorp Minerals Debtors Released Parties;

4. have been made and given after due notice and opportunity for hearing;

5. are essential elements of the Plan, necessary to finally resolve all claims among the parties in interest in the Chapter 11 Cases, and

the failure to approve the Release Provisions would seriously impair the Plan Debtors' ability to confirm the Plan;

6. confer material benefits on, and are in the best interests of, the Debtors and the Debtors' Estates; and

7. constitute a bar to any Releasing Party or Molycorp Minerals Debtors to assert any claim or Cause of Action released thereby against any Released Party or Molycorp Minerals Debtors Released Party, as applicable.

LL. The Plan is a separate plan of reorganization or liquidation for each Plan Debtor. No evidence has been presented to warrant either (i) a substantive consolidation of the Debtors' Estates or, specifically, of the Estate of any Molycorp Minerals Debtor with any Downstream Debtor, or (ii) the piercing of the corporate veil of any Debtor under applicable non-bankruptcy law.

### CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN

MM. The conditions precedent to the confirmation of the Plan set forth in Article X of the Plan have been satisfied or duly waived in accordance with the terms of the Plan.

### RETENTION OF JURISDICTION

NN. The Court may properly and shall retain jurisdiction over the matters set forth in Article XII of the Plan, as modified pursuant to the terms of this Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:**

1. The Plan is **CONFIRMED** pursuant to section 1129 of the Bankruptcy Code; provided, however, that if there is any conflict between the terms of the Plan and/or the terms of this Order, the terms of this Order shall control. The Plan Modifications made after solicitation are approved pursuant to section 1127(a) of the Bankruptcy Code. The terms of the Plan are incorporated into, and are an integral part of this Order and are authorized and approved,

- 19 -

and the Plan Debtors are authorized to implement these provisions and consummate the Plan without further authorization except as expressly required by the Plan or this Order.

2. Each Objection that (a) has not been withdrawn, waived or settled prior to the entry of this Order or (b) is not cured by the relief granted herein, is **OVERRULED** in its entirety on its merits, and all withdrawn Objections are deemed withdrawn with prejudice.

3. The Effective Date of the Plan shall occur on the first Business Day on which (a) no stay of this Order is in effect; and (b) all other conditions set forth in Section X.B of the Plan have been satisfied or waived in accordance with Section X.C of the Plan, but in no event later than April 8, 2016 or such later date as agreed to by the Plan Debtors and Oaktree; provided, however that if the Effective Date shall have not occurred prior to July 7, 2016, nothing herein shall preclude the Creditors' Committee or the Ad Hoc 10% Noteholders from seeking appropriate relief from the Court. The Plan Debtors and their assets shall remain subject to the jurisdiction of this Court until the Effective Date.

4. On and after the Effective Date, each Reorganized Plan Debtor may operate its business and may use, acquire and dispose of property and prosecute, compromise or settle any Claims (including any Administrative Claims) and Retained Causes of Action without supervision of, or approval by, the Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules (other than restrictions expressly imposed by the Plan or this Order). Without limiting the foregoing, the Reorganized Plan Debtors may pay the charges that they incur on or after the Effective Date for professional services without application to the Court.

A. **Plan Implementation**

5. The 9019 Settlement, including without limitation the Committee Settlement Agreement and the 10% Noteholders Group Settlement, is approved in all respects as fair and equitable and in the best interests of the Debtors, the Debtors' Estates and creditors, upon

entry of this Order, and the parties to the 9019 Settlement are authorized and directed to take any actions necessary to effectuate all terms thereof.

6.  In accordance with the terms of this Order, the Debtors are authorized to make all payments contemplated when due pursuant to the 9019 Settlement and take all actions necessary and appropriate to effectuate the 9019 Settlement.

7.  Immediately upon entry of this Order, or as soon thereafter as reasonably practicable, the Plan Debtors, the Reorganized Plan Debtors, or the Non-Debtors Affiliates, as applicable shall pay the Molycorp Minerals Intercompany Amount to the Molycorp Minerals Debtors.

8.  As soon as reasonably practicable after the consummation of the Molycorp Minerals Sale, notwithstanding anything herein or in the Plan to the contrary, the balance of the Molycorp Minerals Intercompany Amount and the Inventory Proceeds not used to fund the Minerals Wind-down Expense Reserve shall be distributed to the Pari Passu Collateral Agent, which shall transmit such cash to Holders of Allowed Claims secured by the Pari Passu Collateral in accordance with the terms of the Pari Passu Collateral Agency Agreement subject to the terms of Section VII.D.1 of the Plan.

9.  Nothing herein shall affect Oaktree's ownership of the Oaktree Equipment and in accordance with the Bid Procedures and the Bid Procedures Order, Oaktree shall have a reasonable amount of time following the closing of the Molycorp Minerals Sale to remove (as it may determine in its sole discretion) the Oaktree Equipment in accordance with the terms of Oaktree Lease Documents, subject to compliance with any requirements of California and federal laws, rules and regulations, if and to the extent applicable to such removal, including but not limited to, if and to the extent applicable, the Surface Mining and Reclamation Act of 1975

and all related rules, regulations and orders (collectively "**SMARA**"), and subject to the prior orders entered by the Court in the Debtors' chapter 11 cases.

10. Upon entry of this Order, or as soon as reasonably practicable thereafter, the Molycorp Minerals Debtors shall transfer the Downstream Transferred Assets to the Plan Debtors, one of the Plan Debtors' Non-Debtor Affiliates, the Reorganized Parent or an entity that, after the Effective Date, will be directly or indirectly controlled by the Reorganized Parent, as applicable, and the Downstream Transferred Assets shall be free and clear of all liens, Claims, charges, and other encumbrances. Following the entry of this Order, on a date agreed upon by the Debtors and Oaktree, all of the transactions necessary to implement the transfer of the Downstream Transferred Assets shall be deemed to have occurred.

11. Upon entry of this Order, but subject to the occurrence of the Effective Date, the Adversary Proceeding shall be dismissed with prejudice against Oaktree and the Directors and Officers and the Pari Passu Collateral Agent. In the event the Effective Date does not occur, the dismissal of the Adversary Proceeding shall be deemed void *ab initio* and of no effect.

12. Upon entry of this Order, but subject to the occurrence of the Effective Date, the Creditors Committee and its Representatives (solely in their capacities as such), the Ad Hoc 10% Noteholders and their Representatives (solely in their capacities as such), the 10% Notes Indenture Trustee and its Representatives (solely in their capacities as such), Wells Fargo, as Collateral Agent, and its Representatives (solely in their capacities as such); Oaktree and its Representatives (solely in their capacities as such), the Debtors (including without limitation the Molycorp Minerals Debtors) and their Representatives (solely in their capacities as such), the Non-Debtor Affiliates and their Representatives (solely in their capacities as such), the Directors

NAI-1500955975v1

and Officers and their Representatives (solely in their capacities as such), and National Union shall be deemed to have provided and received the mutual full and final releases from all claims and Causes of Action, including, without limitation, those claims and Causes of Action asserted in the Adversary Proceeding, that the Debtors may have or could have asserted or that may have been asserted on the Debtors' behalf, or by any Holder of a Claim or Interest, against Oaktree, the Creditors' Committee, the Directors and Officers, National Union and the Holders of Claims in Class 5 other than Holders of Claims in Class 5 who objected to the Plan, or as otherwise set forth in this Order.

13. Upon the entry of this Order, but subject to the occurrence of the Effective Date, the Plan and the Plan Documents, including the Restructuring Transactions, shall bind any Holder of a Claim against or Interest in a Plan Debtor and such Holder's respective successors and assigns, whether or not: (a) the Claim or Interest is Impaired under the Plan, (b) such Holder has accepted the Plan, (c) such Holder has failed to vote to accept or reject the Plan or voted to reject the Plan, (d) such Holder is entitled to a distribution under the Plan, (e) such Holder will receive or retain any property or interests in property under the Plan, and (f) such Holder has filed a Proof of Claim against any Plan Debtor. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan, the Plan Documents, and the Restructuring Transactions shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

14. The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise

- 23 -

affect, the actual classification of such Claims or Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Plan Debtors except for voting purposes.

15. In accordance with section 1142 of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation law of any other relevant state or foreign jurisdiction, but subject to the prior satisfaction or waiver of all conditions precedent listed in Section X.B of the Plan in accordance with the terms of the Plan, without further action by the Court or the Debtors', the Reorganized Parent's, or any of the Reorganized Plan Debtors' boards of directors, managers or equity security holders, the Debtors, the Reorganized Parent and the Reorganized Plan Debtors, and their respective directors, officers, members, agents, attorneys, financial advisors, and investment bankers as applicable, are authorized to: (a) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order and the transactions contemplated thereby or hereby, including those identified in Article IV of the Plan, including, without limitation, the Restructuring Transactions; (b) grant, issue, execute, deliver, file and/or record such agreements, documents, contracts, securities and other instruments as may be necessary to effectuate the Plan, including, without limitation, all agreements, documents, contracts, securities and other instruments included in the Plan Supplement or necessary to effectuate the Restructuring Transactions (collectively, the "**Effectuating Documents**") and perform their obligations thereunder; and (c) take any and all actions necessary or appropriate to effectuate the Plan. The Effectuating Documents, once executed and delivered or adopted, as applicable, shall constitute legal, valid, binding and authorized obligations of the Debtors, the Reorganized Parent

or the Reorganized Plan Debtors, as applicable, immediately enforceable in accordance with their terms.

16.     Subject to the prior satisfaction or waiver of all conditions precedent listed in Section X.B of the Plan in accordance with the terms of the Plan, all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Court without further approval, act, or action under any applicable law, order, rule, or regulation, including, among other things, (i) all transfers of assets that are to occur pursuant to the Plan, (ii) the incurrence of all obligations contemplated by the Plan and the making of all distributions under the Plan, and (iii) entering into any and all transactions, contracts, leases, instruments, releases, and other documents and arrangements permitted by applicable law, order, rule, or regulation. The approvals and authorizations specifically set forth in this Order are nonexclusive and are not intended to limit the authority of the Debtors, the Reorganized Parent and/or the Reorganized Plan Debtors or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Order pursuant to section 1142(b) of the Bankruptcy Code. Pursuant to section 1142 of the Bankruptcy Code, to the extent that, under applicable nonbankruptcy law or the rules of any stock exchange, any of the foregoing actions that would otherwise require approval of the equity holders or directors (or any equivalent body) of the Debtors, the Reorganized Parent or the Reorganized Plan Debtors, such approval shall be deemed to have occurred and shall be in effect from and after the prior satisfaction or waiver of all conditions precedent listed in Section X.B of the Plan in accordance with the terms of the Plan pursuant to the applicable law of the jurisdiction of incorporation or formation without any requirement of further action by the equity holders or directors (or any equivalent body) of the Debtors, the Reorganized Parent or the

NAI-1500955975v1

Reorganized Plan Debtors. The Debtors, the Reorganized Parent, or the Reorganized Plan Debtors, as applicable, shall, if required, be authorized to file any documents required to be filed in such jurisdictions so as to effectuate the provisions of the Plan, including without limitation the Restructuring Transactions.

17. Any of the Effectuating Documents shall be accepted by each of the respective filing offices and recorded, if required, in accordance with applicable law and shall become effective in accordance with their terms and the provisions of such applicable law. All counterparties to any Effectuating Documents are hereby directed to execute such documents as may be required or provided by such documents, without any further order of the Court.

18. Pursuant to the appropriate provisions of the General Corporation Law of the State of Delaware (including section 303 thereof), section 1142(b) of the Bankruptcy Code, or other applicable law, but, as applicable in accordance with the terms of this Order, subject to prior satisfaction or waiver of all conditions precedent listed in Section X.B of the Plan in accordance with the terms of the Plan, this Order shall constitute all authorizations required for the Debtors, the Reorganized Parent, and/or the Reorganized Plan Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the 9019 Settlement, the New Corporate Governance Documents, the Reorganized Parent Common Equity Holder Agreement, and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan and 9019 Settlement, including, without limitation, each of the Restructuring Transactions, and the respective directors, stockholders, managers, or members of the Debtors, the Reorganized Parent, or the Reorganized Plan Debtors shall not be required to take any actions in connection with the implementation of the Plan, including, but not limited to, the 9019 Settlement, any of the

NAI-1500955975v1

Restructuring Transactions, the New Corporate Governance Documents, and the Reorganized Parent Common Equity Holder Agreement, each of which shall be hereby approved and adopted and effective no later than the Effective Date.

19. On the Effective Date, the Reorganized Parent and the Reorganized Plan Debtors, as applicable, shall enter into the New Corporate Governance Documents and the Reorganized Parent Common Equity Holder Agreement. The New Corporate Governance Documents and the Reorganized Parent Common Equity Holder Agreement shall, as of no later than the Effective Date, be valid, binding, and enforceable in accordance with their terms.

20. In furtherance of Oaktree's intent that the Reorganized Parent not be a publicly reporting company, if, prior to the Effective Date, it is determined that the total number of holders of the Reorganized Parent Common Stock would require the Reorganized Parent to be a publicly reporting company, the Plan Debtors and/or Oaktree may seek further relief in furtherance of such intent and any party in interest, including the Creditors' Committee, may object to such relief.

21. On the Effective Date, each Person or Entity that receives shares of the Reorganized Parent Common Equity pursuant to the Plan shall automatically be deemed a party to the Reorganized Parent Common Equity Holder Agreement, bound by its terms, whether such Person or Entity receives shares on or after the Effective Date and regardless of whether such Person or Entity executes the Reorganized Parent Common Equity Holder Agreement.

22. To the extent any Governmental Unit (as such term is defined in section 101(27) of the Bankruptcy Code) or similar foreign governmental entity may require approval and/or consent with respect to any aspect of the implementation or consummation of the Plan and/or the 9019 Settlement, this Order shall constitute all such approval and/or consent, and each

federal, state, commonwealth, local, foreign or other governmental agency is hereby directed and authorized to accept for filing and/or recording any and all Effectuating Documents. Nothing in this paragraph shall in any way diminish the reservation of rights set forth in paragraph 96 below. Nothing in this Order or the Plan authorizes or deems any party to have consented to the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.

23. The consummation of the Plan, including any Restructuring Transactions, shall not constitute, or be deemed to constitute, a change in ownership or change in control or similar provision under any of the Debtors' contracts, leases, agreements, financial instruments, loans or financing agreements.

### B. Restructuring Transactions

24. Notwithstanding anything to the contrary herein, in accordance with Section IV.G of the Plan, upon entry of this Order, and, as applicable, subject to the prior satisfaction or waiver of all conditions precedent listed in Section X.B of the Plan in accordance with the terms of the Plan and the occurrence of the Effective Date, the Debtors or the Reorganized Plan Debtors, as applicable, may, but shall not be required to, take all actions necessary and/or appropriate to effectuate the Restructuring Transactions, including, but not limited to, the Restructuring Transactions set forth in Exhibit 5 of the Plan Supplement (the "**Restructuring Transaction Exhibit**") and the actions set forth in the following paragraphs of this Section B of this Order.

25. Upon entry of this Order, the Plan Debtors, the Reorganized Parent, and/or the Reorganized Plan Debtors are authorized to take all actions necessary to ensure that all