Claim must be Filed and served on the Reorganized Plan Debtors, and the Entity asserting the Fee Claim no later than 60 days after the Effective Date. To the extent necessary to effectuate solely the timing and notice provisions of Section II.A.5 of the Plan, in the event of a conflict, this Order hereby amends and supersedes the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 229]; provided, however, that Professionals may still submit monthly and interim fee applications (and receive payment) prior to the Effective Date. Allowed Fee Claims not paid on or prior to the Effective Date, shall be paid as soon as reasonably practicable after such Fee Claims become Allowed Claims, in full in Cash by the Reorganized Plan Debtors (and may be paid from Cash available at any Reorganized Plan Debtor or Non-Debtor Affiliate or combination thereof), provided, however, that nothing herein shall in any way limit, impair or waive any objection to allowance of any Fee Claim.

70. The fees and expenses of the Creditors' Committee's legal professionals incurred on and after the Committee Settlement Effective Date with respect to the Creditors' Committee Legal Fee Cap Matters shall not exceed $250,000. Any amounts incurred by the Creditors' Committee's legal professionals on and after the Committee Settlement Effective Date with respect to the Creditors' Committee Legal Fee Cap Matters in excess of the Creditors' Committee Legal Fee Cap are disallowed, and none of the Debtors, the Debtors' Estates or the Reorganized Plan Debtors shall be liable for any such amounts.

71. Except as otherwise specifically provided herein or in the Plan, on and after the Effective Date, the Reorganized Plan Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented fees and expenses of their Professionals incurred on or after the

Effective Date. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code or any order of the Court entered before the Effective Date governing the retention of, or compensation for services rendered by, such Professionals shall terminate.

N.  **Payment of Fees & Expenses of the Convertible Notes Indenture Trustees**

72. As part of the 9019 Settlement, without any further notice to or action, order, or approval of the Court, on the Effective Date, the Reorganized Plan Debtors shall make the Indenture Trustees Allowed Fee Payment to the Convertible Notes Indenture Trustees and the Subordinated Convertible Notes Indenture Trustee.

O.  **Payment of Fees & Expenses of the Ad Hoc 10% Noteholders; the 10% Notes Indenture Trustee, and the Pari Passu Collateral Agent**

73. All fees and expenses of the Ad Hoc 10% Noteholders incurred in connection with these cases shall be paid on the Effective Date in an amount up to $5,000,000.

74. To the extent legally permissible, the Ad Hoc 10% Noteholders may submit any fees and expenses above $5,000,000 for reimbursement to be paid out of the cash recovery allocable to the 10% Noteholders.

75. The fees and expenses of the 10% Notes Indenture Trustee shall be paid from the cash recovery allocable to the 10% Noteholders on account of their allowed secured claim.

76. Except as set forth in paragraph 18 of the 10% Noteholder Group Settlement, none of the 10% Noteholders, the Ad Hoc 10% Noteholders, the 10% Notes Indenture Trustee, the Pari Passu Collateral Agent, or any of their Representatives shall have any further right to seek payment of any fees, expenses, costs, or indemnification, from any of the Debtors, the Reorganized Plan Debtors, or any Released Party. Without limiting the foregoing,

- 54 -

to the extent the Pari Passu Collateral Agent is directed by the Applicable Authorized Representative to take any action (other than performing any of its obligations under the Pari Passu Collateral Agency Agreement) authorized under the Pari Passu Collateral Agency Agreement, the Pari Passu Collateral Agent shall not be under any obligation to take such action, unless the Pari Passu Collateral Agent shall have received adequate security and indemnity reasonably satisfactory to it against the costs, expenses and liabilities that may be incurred by it in compliance with such direction, including such reasonable advances as may be requested by the Pari Passu Collateral Agent.

### P. Oaktree's Fees and Expenses

77. Without any further notice to or action, order or approval of the Bankruptcy Court the Plan Debtors shall pay and continue to pay, when due and payable, Oaktree for all reasonable and documented professional fees and expenses incurred by Oaktree prior to the Effective Date in connection with or related to the Plan Debtors, the Reorganized Plan Debtors, the Chapter 11 Cases, the Oaktree Prepetition Facilities and the Oaktree Lease Documents, including without limitation, the reasonable and documented fees and expenses of Milbank, Tweed, Hadley & McCloy LLP, as co-counsel to Oaktree, Morris, Nichols, Arsht & Tunnell LLP, co-counsel to Oaktree, and Centerview Partners, as financial advisors to Oaktree; *provided*, that after the Effective Date, the Post-Effective Date Plan Debtors shall not be obligated to nor shall they pay the fees and expenses of professionals representing Oaktree incurred after the Effective Date, provided, further, however, that the Reorganized Plan Debtors may retain and pay the fees and expenses of any such professional post Effective Date.

## Q. Binding Effect of Prior Orders

78. For the avoidance of doubt, and notwithstanding anything to the contrary herein or in the Plan, pursuant to section 1141 of the Bankruptcy Code, upon entry of this Order, this Order and all prior orders entered in the Debtors' chapter 11 cases, including without limitation, the DIP Order (including any interim order with respect thereto) and the Bid Procedures Order, shall remain binding and effective as to the Molycorp Minerals Debtors and all parties in interest and their respective successors and assigns in the Molycorp Minerals Debtors' chapter 11 cases, including without limitation any chapter 7 trustee; <u>provided, however,</u> that from and after the entry of the Confirmation Order, the Plan Debtors and their Non-Debtor Affiliates shall be authorized to engage in intercompany transactions between and among themselves provided that any superpriority administrative expense claims arising in connection with such transfer shall be deemed waived as of the Effective Date.

## R. Dissolution of Creditors' Committee

79. On the Effective Date, the Creditors' Committee will dissolve and the members of such committee will be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases; *provided, that,* the Creditors' Committee will not be dissolved, and the members of the Creditors' Committee will not be released or discharged of duties solely with respect to (i) any appeals or stays of any orders related to the Plan until such time as such orders become Final Orders (the "**Committee Rights**"), (ii) the Molycorp Minerals Debtors, unless and until such debtors' chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code (the "**Minerals Committee Rights**"), and (iii) any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date in accordance with the provisions of Section II.A.5 of

the Plan (the "**Fee Application Rights**" together with the Committee Rights and the Minerals Committee Rights, the "**Post-Effective Date Matters**"); *provided, further, that,* the Creditors' Committee will be dissolved and the members thereof discharged from all duties and obligations on the date upon which all services related the Post-Effective Date Matters are completed. The Professionals retained by such committee and the members thereof will not be entitled to assert any claims for reasonable fees rendered or expenses incurred after the Effective Date, except for reasonable and documented fees rendered and expenses incurred in connection with the Post-Effective Date Matters but subject to the Creditors' Committee Legal Fee Cap for the Creditors' Committee Legal Fee Cap Matters. The Bankruptcy Court shall retain jurisdiction over any disputes with respect to such fees and expenses, but otherwise such fees and expenses shall be paid by the Reorganized Plan Debtors without further application to the Bankruptcy Court; *provided, however,* that nothing herein shall in any way limit, impair or waive any objections (and all such objections are expressly reserved) to any fees or expenses incurred in connection with the Post-Effective Date Matters, including the reasonableness of such fees or expenses.

S.     **Effect of Non-Occurrence of the Effective Date**

80.    If the Effective Date does not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement and compromise embodied in the Plan (except for those authorized to be implemented upon entry of this Order and not subject to either the occurrence of the Effective Date or prior satisfaction or waiver of all conditions precedent listed in Section X.B of the Plan in accordance with the terms of the Plan), assumption or rejection of any Executory Contract or Unexpired Lease effected by the Plan, and any document or agreement executed pursuant to, or in furtherance of, the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any

NAI-1500955975v1

Claims or Interests, (b) prejudice in any manner the rights of the Debtors or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

### T.      Reference to Plan and Plan Provisions

81.    Failure specifically to include or reference any particular section or provision of the Plan or any related agreement in this Order shall not diminish or impair the effectiveness of such section or provision, it being the intent of the Court that the Plan (as modified by this Order) for each of the Plan Debtors be confirmed in its entirety.

82.    Any document related to the Plan that refers to a plan of reorganization of the Plan Debtors other than the Plan shall be, and it hereby is, deemed to be modified such that (i) the reference to the Debtors in such document shall mean the Plan Debtors and (ii) the reference to the plan of reorganization shall mean the Plan confirmed, and as modified, by this Order, as appropriate.

### U.      Continuation of Automatic Stay

83.    Unless otherwise provided in the Plan or in this Order, all injunctions and stays in effect in the Debtors' chapter 11 cases on the date of entry of this Order pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court shall remain in full force and effect until the Effective Date. All injunctions and stays contained in the Plan or this Order shall remain in full force and effect in accordance with their respective terms.

### V.      Post-Effective Date Notices

84.    Except as otherwise may be provided in the Plan or herein, the only parties entitled to notice of any pleadings Filed in the Chapter 11 Cases of the Plan Debtors after the Effective Date shall be: (a) the Reorganized Parent and the Reorganized Plan Debtors and their

counsel, (b) the United States Trustee, (c) Oaktree, and (e) any party known to be directly affected by the relief sought in a given pleading.

## W. Retention of Jurisdiction

85. Notwithstanding the entry of this Order, from and after the Effective Date, this Court shall, to the fullest extent legally permissible, retain exclusive jurisdiction over the Chapter 11 Cases and all matters arising under, arising out of, or related to, the Chapter 11 Cases, including, without limitation, all matters listed in Article XII of the Plan, as well as for the purposes set forth in sections 1142 of the Bankruptcy Code. To the extent it is not legally permissible for the Court to have exclusive jurisdiction over any of the foregoing matters, the Court shall have non-exclusive jurisdiction over such matters to the fullest extent legally permissible. For the avoidance of doubt, nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

## X. Notice of Confirmation of the Plan and the Occurrence of the Effective Date and Cash Out Option

86. The Debtors or the Reorganized Plan Debtors are directed to serve a notice of the entry of this Order and the occurrence of the Effective Date, substantially in the form of Appendix II attached hereto, which is hereby approved (the "**Effective Date Notice**"), on all parties that they have served with the notice of the Confirmation Hearing no later than ten (10) days after the Effective Date; provided, however, that the Plan Debtors or the Reorganized Plan Debtors shall be obligated to serve the Effective Date Notice only on the record holders of Claims or Interests as of the Distribution Record Date. As soon as practicable after the entry of this Order, the Debtors shall make copies of this Order available on their reorganization website at https://cases.primeclerk.com/molycorp/. Service of the Effective Date Notice as provided

NAI-1500955975v1

herein shall constitute good and sufficient notice pursuant to Bankruptcy Rules 2002 and 3020(e) of entry of this Order and the occurrence of the Effective Date and no other or further notice need be given.

87. The Debtors or the Plan Debtors are authorized and directed to serve the Important Notice to Holders of Claims in Class 5A Regarding the Class 5 Cash Out Option substantially in the form of Appendix III attached hereto (the "**Cash Out Notice**") within two (2) Business Days of entry of this Order, which is hereby approved including pursuant to section 1125 of the Bankruptcy Code, on all Holders of a Claim in Class 5A under the Plan. The Debtors, Creditors' Committee, its members, and their respective advisors are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code, Section IX.G of the Plan and this Order, in connection with the Cash Out Notice in all respects.

## Y. Exclusivity

88. The Plan Debtors' exclusive periods to file a plan of reorganization and solicit acceptances thereof, pursuant to section 1121(d) of the Bankruptcy Code, are hereby extended through the Effective Date.

## Z. Order Immediately Binding

89. The Debtors' request for a waiver of the stay of this Order imposed by Bankruptcy Rule 3020(e) is hereby granted. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Documents, and this Order shall be immediately effective, enforceable and binding upon the Debtors and any and all Holders of Claims against or Interests in, the Plan Debtors (regardless of whether such Claims or Interests have accepted or rejected (or are deemed to have accepted or rejected) the Plan), all Entities that are parties to, or are subject to, the settlements, compromises,

releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

90.     The terms and provisions of the Plan and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their respective Affiliates, successors and assigns, the Debtors' estates, all creditors of (whether known or unknown), and holders of equity interests in the Debtors, and any affected third parties, notwithstanding the dismissal of any of the Debtors' chapter 11 cases, the conversion of any the Debtors' chapter 11 cases to a case or cases under Chapter 7, or any subsequent appointment of any trustee(s) under any Chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding and not subject to rejection or avoidance.  The Plan and this Order, and all prior orders of the Court in the Debtors' chapter 11 cases, shall be enforceable against and binding upon, and shall not be subject to rejection or avoidance by, any Chapter 7 or Chapter 11 trustee appointed in the Debtors' chapter 11 cases.  Further, nothing contained in any plan of reorganization or liquidation confirmed in the chapter 11 cases of the Molycorp Minerals Debtors or any other order to be entered in respect of the Molycorp Minerals Debtors shall conflict with or derogate from the provisions of the Plan, this Order or any prior order of the Court.

## AA.    Substantial Consummation

91.     On the Effective Date of the Plan, the Plan shall be deemed to be substantially consummated under section 1101 and 1127(b) of the Bankruptcy Code.

### BB.  Modification of the Plan

92. Subject to the restrictions contained in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Debtors shall have the right, without further order from the Court, but subject to the applicable provisions in the Plan, including, without limitation and to the extent applicable, the Oaktree Consent Right and the Creditors' Committee Consent Right, to make non-material alterations, amendments or modifications to the Plan subsequent to the entry of this Order; provided the Plan Debtors shall provide three (3) business days' notice to counsel to the Sureties and San Bernardino County prior to implementing any such non-material alterations, amendments or modifications.  In addition, without any further order from the Court, but subject to the terms of the Plan, including, without limitation and to the extent applicable, the Oaktree Consent Right, the Creditors' Committee's Consent Right, the Directors and Officers Consent Right and the National Union Consent Right, the Plan Debtors shall have the right to alter, amend, or modify any document and instrument included in the Plan Supplement to the extent necessary to implement the terms of this Order and the Plan (as modified by this Order). To the extent necessary, the Reorganized Plan Debtors shall have the right to initiate proceedings in this Court, after notice, to so alter, amend, or modify the Plan or any document and instrument described in the preceding sentence or remedy any defect or omission or reconcile any inconsistencies in this Order, the Plan, and the Disclosure Statement.

### CC.  Miscellaneous Provisions

93. Until entry of a final order of judgment or settlement resolving all of the claims asserted in the Securities Litigation, or an order of the Colorado District Court reducing or clarifying the scope of this preservation obligation, the Debtors, the Reorganized Plan Debtors, and/or any transferee of the Debtors' Books and Records (as defined below) shall preserve and

NAI-1500955975v1

maintain all books, records, documents, files, electronic data (in whatever format, including native format) (collectively, the "**Books and Records**") potentially relevant to the allegations in the Securities Complaint in accordance with the instructions and orders of the Colorado District Court. The Debtors and the Reorganized Plan Debtors submit to the jurisdiction of the Colorado District Court solely for the purposes of this paragraph.

94. The Plan Debtors (subject to the Oaktree Consent Right) and Westchester Fire Insurance Company shall within 30 days from entry of this Order enter into an agreement to retain or replace Bond No. K08927431 issued by Westchester Fire Insurance Company for the benefit of Molycorp Chemicals & Oxides, Inc. (the "**C&O Bond**"). If the Plan Debtors determine (subject to the Oaktree Consent Right) to replace the C&O Bond, Westchester Fire Insurance Company shall immediately thereupon release any collateral held by Westchester Fire Insurance Company solely on account of the C&O Bond. In no event shall Westchester Fire Insurance Company be required to keep said bond in place for more than 30 days from the date of this Order, without its consent to do so.

95. The Molycorp Minerals Debtors shall file a motion for separate joint administration from the Plan Debtors.

96. The rights of all parties are expressly reserved and nothing herein or in the Plan shall prejudice the rights and priorities of any party, including, without limitation, the County of San Bernardino (if any), Oaktree and the 10% Noteholders, as to: (a) any rights, liens, claims, encumbrances and interests in or to any machinery, plant, equipment, facilities, systems or other property owned by the Molycorp Minerals Debtors that is not a Downstream Transferred Asset (the "**Remaining Property**"); (b) whether any such Remaining Property may or may not be available to fund reclamation or other remediation and environmental liabilities of the

Molycorp Minerals Debtors with respect to Mountain Pass pursuant to, and to the extent applicable, any local, state or federal statute, rule or regulation relating to environmental matters or the public's health, safety or welfare, including, without limitation, SMARA or the Porter-Cologne Water Quality Control Act (each to the extent applicable) relating to Mountain Pass; (c) any party's obligations (if any) to comply with any local, state or federal statute, rule or regulation relating to environmental matters or the public's health, safety or welfare, including, without limitation, compliance with all requirements of SMARA or the Porter-Cologne Water Quality Control Act (each to the extent applicable) relating to Mountain Pass; or (d) all prior orders entered by the Court and the effect thereof. The rights and remedies of all parties with regard to Purchased Assets (as defined in the 10% Noteholder Permitted Credit Bid APA) concerning, among other things, the matters set forth above and any additional environmental issues not dealt with in the Plan or this Order with respect to the Purchased Assets, are addressed by the 10% Noteholder Permitted Credit Bid APA and the Order approving same [Docket No. 1559].

97. Nothing in the Plan or this Order shall release or reduce any claims of any of the Plan Debtors against any of the Molycorp Minerals Debtors; <u>provided</u> that (a) the superiority administrative claim of Molycorp, Inc. against Molycorp Minerals arising under the terms of the DIP Order shall be reduced by $9 million; (b) no payments on account of, or further reductions to, such claims of any Plan Debtor against the Molycorp Minerals Debtors shall be made absent further order of the Court; and (c) any such claims shall not reduce, limit or be paid

- 64 -

NAI-1500955975v1

from the Minerals Wind-down Expense Reserve (as defined in the 10% Noteholder Group Settlement) absent further order of the Court.

Dated: **April 8**, 2016
Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

# APPENDIX I

# PLAN OF REORGANIZATION

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| MOLYCORP, INC., *et al.*,[1] | : | Case No. 15-11357 (CSS) |
| Debtors. | : | (Jointly Administered) |

---

## PLAN DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION

Nothing contained in the Plan Debtors' Fourth Amended Joint Plan of Reorganization is an offer, acceptance, or a legally binding obligation of the Plan Debtors or any other party in interest. This Plan is subject to the Bankruptcy Court's approval and certain other conditions. This Plan is not an offer with respect to any securities. Acceptances or rejections with respect to this Plan may not be solicited until the Bankruptcy Court has approved an accompanying disclosure statement in accordance with section 1125 of the Bankruptcy Code. Any solicitation of this Plan will occur only in compliance with applicable provisions of securities and bankruptcy laws.

Paul D. Leake
Lisa Laukitis
George R. Howard
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

Brad B. Erens
Joseph M. Tiller
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

M. Blake Cleary (No. 3614)
Edmon L. Morton (No. 3856)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

**Counsel to the Plan Debtors**

April 8, 2016

---

[1] The Debtors are the following 21 Entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Molycorp, Inc. (1797); Industrial Minerals, LLC; Magnequench, Inc. (1833); Magnequench International, Inc. (7801); Magnequench Limited; Molycorp Advanced Water Technologies, LLC (1628); MCP Callco ULC; MCP Canada Holdings ULC; MCP Canada Limited Partnership; MCP Exchangeco Inc.; Molycorp Chemicals & Oxides, Inc. (8647); Molycorp Luxembourg Holdings S.à r.l.; Molycorp Metals & Alloys, Inc. (9242); Molycorp Minerals Canada ULC; Molycorp Minerals, LLC (4170); Molycorp Rare Metals Holdings, Inc. (4615); Molycorp Rare Metals (Utah), Inc. (7445); Neo International Corp.; PP IV Mountain Pass, Inc. (1205); PP IV Mountain Pass II, Inc. (5361); RCF IV Speedwagon Inc. (0845).

NAI-1500956096v1

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME** ....................................................................................... 2
    A.    Defined Terms ................................................................................................... 2
    B.    Rules of Interpretation and Computation of Time ........................................... 25

**ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS** ................ 26
    A.    Administrative Claims ..................................................................................... 26
    B.    Administrative Claims Bar Date ...................................................................... 28
    C.    Priority Tax Claims .......................................................................................... 28

**ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS** .................................. 29
    A.    Summary of Classification ............................................................................... 29
    B.    Classified Claims ............................................................................................. 31
    C.    Special Provisions Governing Unimpaired Claims ........................................ 37
    D.    Elimination of Vacant Classes ......................................................................... 37
    E.    Voting Classes; Presumed Acceptance by Non-Voting Classes ..................... 37
    F.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code .............. 38

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ................................... 38
    A.    9019 Settlement ............................................................................................... 38
    B.    Certain Transfers Between Molycorp Minerals and the Plan Debtors ........... 46
    C.    Downstream Businesses Sale ........................................................................... 46
    D.    The Stand-Alone Reorganization .................................................................... 47
    E.    Wind-Down and Liquidation of Assets after the Effective Date ................... 51
    F.    General Corporate Actions ............................................................................... 53
    G.    Restructuring Transactions .............................................................................. 54
    H.    Effectuating Documents; Further Transactions .............................................. 55
    I.    Sources of Cash for Plan Distributions ........................................................... 55
    J.    Exemption from Certain Taxes and Fees ........................................................ 56
    K.    Reporting Obligations ..................................................................................... 56
    L.    Cancellation of Securities and Agreements .................................................... 57
    M.    Release of Liens ............................................................................................... 57