B. **Certain Transfers Between Molycorp Minerals and the Plan Debtors**

1. **Payment of the Molycorp Minerals Intercompany Amount**

On the date the Court enters an order approving the 10% Noteholder Group Settlement or as soon thereafter as reasonably practicable, the Plan Debtors, the Post-Effective Date Plan Debtors or the Non-Debtor Affiliates, as applicable, shall pay the Molycorp Minerals Intercompany Amount to Molycorp Minerals.

2. **Transfer of the Downstream Transferred Assets**

In accordance with the terms of the 10% Noteholder Group Settlement, on or as soon as reasonably practicable after the entry of the Confirmation Order, Molycorp Minerals shall transfer the Downstream Transferred Assets to the Plan Debtors, one of the Plan Debtors' Non-Debtor Affiliates, the Reorganized Parent or an entity that will be directly or indirectly controlled by the Reorganized Parent, free and clear of any lien, claim, interest or pledge.

The Confirmation Order shall authorize the Debtors to pay the Molycorp Minerals Intercompany Amount to Molycorp Minerals and to effectuate the transfer of the Downstream Transferred Assets in accordance with the terms of the Plan as part of the settlements and compromises contained in the Plan. As soon thereafter as reasonably practicable after the entry of the Confirmation Order, all of the transactions necessary to implement the transfer of the Downstream Transferred Assets shall be consummated.

All matters and transactions necessary to effectuate the transfer of the Downstream Transferred Assets, and any partnership, membership, or shareholder action required by the applicable Debtors or any of any Non-Debtor Affiliate in connection with such transfer will be deemed to have occurred and will be in effect, without any requirement of further action by those authorized to act on behalf of the applicable Debtors. Upon entry of the Confirmation Order, the appropriate officers or managing members of each Debtor or Non-Debtor Affiliate, as applicable, shall be authorized and directed to issue, execute, deliver, file, and/or record any contracts, agreements, instruments, or other documents contemplated by, or necessary or desirable to effect, the transfer of the Downstream Transferred Assets in accordance with the terms of the Plan, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the transfer of the Downstream Transferred Assets, in each case in the name of and on behalf of the applicable Debtor or Non-Debtor Affiliate. Such authorizations and approvals will be effective notwithstanding any requirements under non-bankruptcy law.

If the transfer of the Downstream Transferred Assets is not approved in connection with confirmation of the Plan, the Debtors may seek approval and consummation of such transfer outside of a chapter 11 plan pursuant to section 363 of the Bankruptcy Code.

C. **Downstream Businesses Sale**

The Plan Debtors will only proceed with a Downstream Businesses Sale if the Existing Board concludes that acceptance of one or more Qualified Bids for all of the Assets of the Downstream Businesses is value-maximizing for the Plan Debtors' estates. If the Downstream

Businesses Sale Trigger occurs, the Plan Debtors shall consummate the Downstream Businesses Sale pursuant to the terms of this Plan, and the Confirmation Order shall authorize the Plan Debtors to enter into and perform under the Downstream Businesses Sale Agreements.

Notwithstanding anything herein to the contrary, Oaktree shall have the right to seek to credit bid in accordance with the terms of the Bid Procedures, and parties shall have the right to object to any such credit bid. Any such credit bid shall comply with the terms of the Bid Procedures. On the Effective Date, all of the transactions contemplated by the Downstream Businesses Sale Agreements shall be consummated.

Except as otherwise explicitly provided herein, on the Effective Date, substantially all of the Plan Debtors' property shall be sold and transferred to one or more Purchasers in accordance with the terms of the Downstream Businesses Sale Agreements and this Plan in exchange for the consideration set forth in the Downstream Businesses Sale Agreements. Any property of the Plan Debtors' Estates that is not transferred under the Downstream Businesses Sale Agreements or distributed on the Effective Date pursuant to the terms of this Plan shall revest in the Post-Effective Date Plan Debtors for liquidation and distribution to creditors in accordance with the terms of the Plan.

Unless otherwise expressly provided under the terms of a particular Downstream Businesses Sale Agreement, all matters and transactions provided for in the Downstream Businesses Sale Agreements, and any partnership, membership, or shareholder action required by the Plan Debtors or the Post-Effective Date Plan Debtors in connection with the Downstream Businesses Sale Agreements, will be deemed to have occurred and will be in effect, without any requirement of further action by those authorized to act on behalf of the Plan Debtors or the Post-Effective Date Plan Debtors. On or (as applicable) prior to the Effective Date, the appropriate officers or managing members of each Plan Debtor or Post-Effective Date Plan Debtor, as applicable, shall be authorized and directed to issue, execute, deliver, file, and/or record any contracts, agreements, instruments, or other documents contemplated by the Downstream Businesses Sale Agreements (or necessary or desirable to effect the transactions contemplated by the Downstream Businesses Sale Agreements), and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Downstream Businesses Sale Agreements, in each case in the name of and on behalf of such Plan Debtor or Post-Effective Date Plan Debtor. Such authorizations and approvals will be effective notwithstanding any requirements under non-bankruptcy law.

To the extent there are material amendments to the Downstream Businesses Sale Agreements prior to the Confirmation Hearing, the Plan Debtors shall File such revised Downstream Businesses Sale Agreements prior to the Confirmation Hearing. After the Confirmation Date, the Plan Debtors are authorized, subject to the Oaktree Consent Right, to enter into non-material amendments to the Downstream Businesses Sale Agreements in accordance with their terms and in furtherance of the transactions contemplated thereby without the need for further notice or Court approval.

D.    **The Stand-Alone Reorganization**

If the Plan Debtors do not effectuate the Downstream Businesses Sale with respect to the

-47-

Downstream Businesses, or if the Downstream Businesses Sale Trigger does not occur, the Plan Debtors shall consummate the Stand-Alone Reorganization. The following provisions shall govern a Stand-Alone Reorganization.

1. **Third Party Financing**

On the Effective Date, one or more of the Reorganized Plan Debtors shall be permitted to enter into any financing or other debt arrangement with third-parties unrelated to Oaktree and provided that any such capital raise complies with the minority protections described in Section IV.D.2 below.

2. **Reorganized Parent Common Equity**

On the Effective Date, subject to the terms and conditions of the Committee Settlement Agreement, (a) 92.5% of the Reorganized Parent Common Equity will be issued, directly or indirectly, to Oaktree in partial satisfaction of its Allowed Claims, and (b) the Class 5A Equity will be issued, directly or, subject to the consent of the Creditors' Committee which shall not be unreasonably withheld, indirectly, to the Holders of Allowed Claims in Class 5A, each of which will be subject to dilution for the MIP.

Each share of the Reorganized Parent Common Equity issued and distributed pursuant to the Plan will be duly authorized, validly issued, and fully paid non-assessable. Each distribution and issuance referred to herein will be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing such distribution or issuance, which terms and conditions will bind each Entity receiving such distribution or issuance.

The Reorganized Parent Common Equity Holder Agreement will provide the following protections for the minority holders of the Reorganized Parent Common Equity:

(a) preemptive rights in the event of a capital raise (debt or equity) with at least 15 days prior written notice, subject to a customary right to complete an issuance prior to satisfaction of such notice requirement;

(b) customary tag-along rights;

(c) a requirement that any dividends, sale proceeds, share repurchase, or other distributions on account of the Reorganized Parent Common Equity made by the Reorganized Parent to any holder of the Reorganized Parent Common Equity must be made to all holders *pro rata*;

(d) registration rights, following an initial public offering of the Reorganized Parent, for each holder of the Reorganized Parent Common Equity holding at least 5% of the then-outstanding Reorganized Parent Common Equity;

(e)      a requirement that any transactions (including debt incurrences or issuances of senior securities, but exclusive of other transactions for which preemptive rights are applicable) between the Reorganized Plan Debtors, on the one hand, and Oaktree or any affiliate thereof (excluding the Reorganized Plan Debtors and their respective subsidiaries), on the other hand, be at arms' length, on market terms and that, for transactions involving payments or value in excess of $5 million, the Reorganized Parent obtain an opinion from an independent financial advisor that the consideration to be received in the transaction is fair to the Reorganized Plan Debtors, provided that Oaktree agrees that neither Oaktree Capital Management LP nor any investment fund managed by Oaktree Capital Management LP, nor any entity within the corporate structure of Oaktree Capital Management LP will charge a fee with respect to the management of, or similar services provided to, the Reorganized Plan Debtors, but may seek reimbursement of actual costs and expenses;

(f)      sharing of audited annual consolidated financial statements, and unaudited quarterly consolidated financial statements, subject to appropriate confidentiality restrictions, to the ten (10) largest holders of more than 0.1% of the common stock;

(g)      provisions in the governing documents providing that, to the fullest extent permitted by applicable law, a director of the Reorganized Parent shall not be liable to the Reorganized Parent or any holder of the Reorganized Parent Common Equity for monetary damages for a breach of fiduciary duty as a director; and

(h)      no amendments or modifications to the Reorganized Parent's organizational or governing documents that may disproportionately adversely affect the Class 5A Equity without the consent of a majority of the holders of the Class 5A Equity.

3. **Section 1145 Exemption**

To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance, and distribution of (a) the Reorganized Parent Common Equity, (b) the Molycorp Silmet Equity and (c) any other securities issued and distributed pursuant to the Plan will be exempt from, among other items, the registration and prospectus delivery requirements of section 5 of the Securities Exchange Act of 1933 and any other applicable state and federal law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution, or sale of securities subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an "underwriter" in section 2(a)(11) of the Securities Act of 1933. To the extent that such exemption under section 1145 is not available with respect to the offering, issuance and distribution of any of the Reorganized Parent Common Equity, Molycorp Silmet Equity and any other securities issued and distributed pursuant to the Plan, such offering, issuance and/or distribution, as applicable, will be made pursuant to the exemption set forth in Section 4(a)(2) of the Securities Act or

another exemption thereunder. In addition, any securities contemplated by the Plan and any and all agreements incorporated therein, including the Reorganized Parent Common Equity and the Molycorp Silmet Equity, will be subject to (i) compliance with any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such securities or instruments; (ii) the restrictions, if any, on the transferability of such securities and instruments, including those set forth in the New Corporate Governance Documents; and (iii) applicable regulatory approval, if any. The Reorganized Parent Common Equity and the Molycorp Silmet Equity will be distributed pursuant to the Plan.

4. **Corporate Governance for Reorganized Parent and the Other Reorganized Plan Debtors**

   a. **New Corporate Governance Documents**

As of the Effective Date and with such changes as may be necessary to conform to the applicable law of the state of incorporation, the New Corporate Governance Documents will be in the form included in the Plan Supplement. Among other items, the New Corporate Governance Documents of each Reorganized Plan Debtor will prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a) of the Bankruptcy Code. After the Effective Date and subject to the terms and conditions of the applicable constituent documents and as permitted under applicable state law, each Reorganized Plan Debtor may amend or restate its respective New Corporate Governance Documents.

   b. **Insurance**

On or prior to the Effective Date, the Plan Debtors will obtain Run-off Insurance for the Plan Debtors and for the benefit of the Plan Debtors' current and former directors and officers, and covering those persons who are currently covered by the Plan Debtors' directors' and officers' liability and employment practices liability insurance policies on terms not less favorable than such existing insurance coverage; <u>provided</u> that the Plan Debtors shall not pay for the Run-off Insurance an amount in excess of 200% of the annual premium currently paid as of the date hereof by the Plan Debtors for such insurance; <u>provided, further</u>, that if the premium of such Run-off Insurance exceeds the forgoing cap, the Plan Debtors shall obtain as much comparable insurance as possible for a premium equal to the cap.

   c. **The New Board**

The initial board of directors of Reorganized Parent will be constituted with such number of members as determined by Oaktree and otherwise disclosed pursuant to section 1129(a)(5) of the Bankruptcy Code.

Reorganized Parent's New Board will identify and select the directors for the New Board for each of the direct and indirect subsidiaries of Reorganized Parent.

After the initial appointment of the New Board for each of the Reorganized Plan Debtors in accordance with this Section IV.D.5.c, the Reorganized Plan Debtors will appoint their respective boards of directors in accordance with the terms of the New Corporate Governance Documents.

#### d. Senior Management

If the Downstream Businesses Sale Trigger does not occur, the existing officers of the Plan Debtors as of the Petition Date will remain in their current capacities as officers of the Reorganized Plan Debtors, subject to the ordinary rights and powers of the New Board to remove or replace them in accordance with the New Corporate Governance Documents.

### 5. Vesting of Assets in the Reorganized Plan Debtors

If the Downstream Businesses Sale Trigger does not occur, except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate, all Causes of Action (not otherwise released pursuant to the terms of the Plan), and any property acquired by any of the Plan Debtors pursuant to the Plan will vest in each respective Reorganized Plan Debtor, free and clear of all liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Plan Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### 6. Reinstatement and Continuation of Insurance Policies

If the Downstream Businesses Sale Trigger does not occur, from and after the Effective Date, each of the Plan Debtors' insurance policies (and related documents) in existence as of the Effective Date will be continued in accordance with its terms and, to the extent applicable, will be deemed assumed by the applicable Reorganized Plan Debtor pursuant to section 365 of the Bankruptcy Code and Article VI.

### 7. Continued Corporate Existence

Except as otherwise provided in the Plan, including pursuant to the Restructuring Transactions, each Plan Debtor will continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Plan Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, including pursuant to the Restructuring Transactions, and to the extent such documents are amended, such documents are deemed to be approved pursuant to the Plan and require no further action or approval.

### E. Wind-Down and Liquidation of Assets after the Effective Date

#### 1. The Wind-Down Plan Debtors

Subject to Section IV.G, if the Downstream Businesses Sale Trigger occurs, the Wind-Down Plan Debtors shall continue to exist after the Effective Date for the purposes of making

distributions to the Holders of Allowed Claims under the Plan, and to take any other steps in furtherance thereof or as may be reasonably necessary or appropriate to wind-down the affairs of the Wind-Down Plan Debtors and their Estates, including filing and prosecuting objections to Claims not otherwise Allowed as of the Effective Date. The principal purpose of the Wind-Down Plan Debtors shall be to liquidate, collect and maximize the Cash value of their respective Remaining Assets, and make distributions on account of Allowed Claims in accordance with the terms of the Plan.

The Wind-Down Officer shall be authorized to merge, consolidate, liquidate or dissolve any of the Wind-Down Plan Debtors, as the Wind-Down Officer deems appropriate and in accordance with the other provisions of this Plan.

2.  **Assets of the Wind-Down Plan Debtors**

Subject to Section IV.G, on or after the Effective Date, the Remaining Assets of the Plan Debtors that will become Wind-Down Plan Debtors, including all assets of such Plan Debtors or their Estates which are neither distributed nor abandoned by such Plan Debtors on the Effective Date, shall be deemed transferred, dividended, or assigned to such Wind-Down Plan Debtor(s) as the Wind-Down Officer deems appropriate. On the Effective Date, or as soon thereafter as reasonably practicable, the Wind-Down Plan Debtors shall liquidate or abandon the Remaining Assets to the extent practicable.

3.  **Wind-Down Reserve**

The activities and operations of the Wind-Down Plan Debtors and the Wind-Down Officer shall be funded through the Wind-Down Reserve to be established on the Effective Date, in accordance with the terms of the Wind-Down Budget, to fund the winding down of the affairs of the Wind-Down Plan Debtors and the other items reflected in the Wind-Down Budget. The Wind-Down Reserve shall be funded as of the Effective Date from the Plan Debtors' Cash on hand and the Downstream Businesses Sale Net Proceeds, and thereafter from time to time, from the Cash proceeds of the liquidation of any Remaining Assets.

4.  **Wind-Down Officer**

If the Downstream Businesses Sale Trigger occurs, on the Effective Date, all existing officers and directors of the Plan Debtors shall resign or be deemed to have resigned and the Wind-Down Officer shall be appointed as the sole director, officer and/or member (as applicable) of each of the Wind-Down Plan Debtors to wind up the affairs of the Wind-Down Plan Debtors.

The identity of the Wind-Down Officer shall be disclosed prior to the commencement of the Confirmation Hearing and will be subject to the approval of the Bankruptcy Court in the Confirmation Order. After the Effective Date, the Wind-Down Officer may be removed and/or replaced by a successor in accordance with the terms of the Wind-Down Officer Agreement.

The Wind-Down Officer shall be deemed the representative of the Estates under section 1123(b)(3)(B) of the Bankruptcy Code, and shall have all rights associated therewith. Pursuant to the terms of the Wind-Down Officer Agreement, the Wind-Down Officer shall have

all duties, powers, and standing authority necessary to implement the Plan and to administer and liquidate the assets of the Wind-Down Plan Debtors for the benefit of the holders of Allowed Claims, and shall be entitled to indemnification and exculpation from the Wind-Down Plan Debtors.

The compensation of the Wind-Down Officer shall be as specified in the Wind-Down Officer Agreement and shall be paid by the Wind-Down Plan Debtors, subject to and consistent with the Wind-Down Budget. The Wind-Down Officer shall also be entitled to reimbursement of reasonable expenses, which expenses shall include the reasonable fees and expenses of attorneys and/or accountants and other professionals retained by the Wind-Down Officer, as more fully described in the Wind-Down Officer Agreement.

As soon as practicable after final distributions under the Plan, the Wind-Down Officer shall wind up the affairs of the Wind-Down Plan Debtors, pay all applicable Taxes, file final tax returns, arrange for storage of its records and dissolve the Wind-Down Plan Debtors pursuant to applicable law. As soon as practicable thereafter, the Wind-Down Officer shall File with the Bankruptcy Court a final report of distributions and perform such other duties as are specified in the Plan, whereupon the Wind-Down Officer shall have no further duties under the Plan.

5. **Insurance**

On or prior to the Effective Date, the Plan Debtors will obtain Run-off Insurance for the Wind-Down Plan Debtors and for the benefit of the Wind-Down Plan Debtors' current and former directors and officers, and covering those persons who are currently covered by the Plan Debtors' directors' and officers' liability and employment practices liability insurance policies on terms not less favorable than such existing insurance coverage, on terms not less favorable than such existing insurance coverage; provided that the Plan Debtors shall not pay for the Run-off Insurance an amount in excess of 200% of the annual premium currently paid as of the date hereof by the Plan Debtors for such insurance; provided, further, that if the premium of such Run-off Insurance exceeds the forgoing cap, Parent shall obtain as much comparable insurance as possible for a premium equal to the cap.

6. **Corporate Governance Documents**

The certificate of incorporation, by-laws or similar corporate constituent documents of each applicable Plan Debtor that is to become a Wind-Down Plan Debtor shall be deemed amended, to the extent necessary, in order to effectuate the provisions of this Article IV, and to the extent such documents are deemed amended, such amendments are deemed to be approved pursuant to the Plan and require no further action or approval of any kind or nature.

F. **General Corporate Actions**

Upon entry of the Confirmation Order and, as applicable, the satisfaction or waiver of all conditions precedent in Sections X.A and X.B in accordance with the terms hereof and the occurrence of the Effective Date, all transactions contemplated by the Plan will be deemed authorized, approved, and ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Plan Debtors, the Post-Effective Date Plan Debtors, or any other Entity, including the following actions, as may be appropriate

NAI-1500956096v1

depending on whether or not the Downstream Businesses Sale Trigger occurs: (i) the rejection or assumption, or assumption and assignment, as applicable, of Executory Contracts or Unexpired Leases; (ii) the consummation of the Downstream Businesses Sale if the Downstream Businesses Sale Trigger occurs, (iii) the selection of the managers and officers for the Post-Effective Date Plan Debtors; (iv) entry into the New Corporate Governance Documents; (v) the issuance and distribution of the Reorganized Parent Common Equity and the Molycorp Silmet Equity as provided herein; and (vi) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date), including the Restructuring Transactions. All matters provided for in the Plan involving the company structure of the Plan Debtors, and any company action required by the Plan Debtors in connection therewith, will be deemed to have occurred on, and will be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Plan Debtors. On or (as applicable) prior to the Effective Date, the appropriate officers, managers, or authorized persons of the Plan Debtors (including, any president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof) will be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Plan Debtors including, to the extent applicable (i) the Downstream Businesses Sale Agreements, (ii) the New Corporate Governance Documents, and (iii) any and all other agreements, documents, securities and instruments relating to the foregoing. The authorizations and approvals contemplated by this Section IV.E will be effective notwithstanding any requirements under non-bankruptcy law.

G.  **Restructuring Transactions**

1.  **Restructuring Transactions Generally**

While the Plan Debtors are not seeking, and will not effectuate a substantive consolidation of their respective Estates, on or after the Confirmation Date, the applicable Plan Debtors or Post-Effective Date Plan Debtors may enter into such Restructuring Transactions, including, but not limited to, those described in any Restructuring Transactions Exhibit to the Plan that may be Filed with the Court and may take such actions as the applicable Plan Debtors (subject to the Oaktree Consent Right) or Post-Effective Date Plan Debtors determine to be necessary or appropriate to effect, in accordance with applicable non-bankruptcy law, a corporate restructuring of their respective businesses or simplify the overall corporate structure of the Post-Effective Date Plan Debtors; provided that each Estate shall remain responsible for the payment of its respective quarterly fees to the office of the U.S. Trustee pursuant to 28 U.S.C. § 1930 until the applicable Plan Debtor's case is closed, dismissed or converted to another chapter of the Bankruptcy Code. Without limiting the foregoing, unless otherwise provided by the terms of a Restructuring Transaction, all such Restructuring Transactions will be deemed to occur on the Effective Date and may include one or more mergers, consolidations, restructurings, reorganizations, transfers, dispositions, conversions, liquidations, or dissolutions, as may be determined by the Plan Debtors (subject to the Oaktree Consent Right) or the Post-Effective Date Plan Debtors to be necessary or appropriate. The actions to effect these transactions may include (a) the execution and delivery of appropriate agreements or other documents of merger,