consolidation, restructuring, reorganization, transfer, disposition, conversion, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable state law and such other terms to which the applicable Entities may agree; (b) on terms consistent with the terms of the Plan and having such other terms to which the applicable Entities may agree, the execution and delivery of appropriate instruments of transfer, conversion, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation; (c) pursuant to applicable state law, the filing of appropriate certificates or articles of merger, consolidation, conversion, dissolution, or change in corporate form; (d) the inclusion of one or more Non-Debtor Affiliates as co-proponents of the Plan and the issuance of such Entities' equity securities in accordance with the terms of the Plan; and (e) the taking of all other actions that the applicable Entities determine to be necessary or appropriate, including (i) making filings or recordings that may be required by applicable state law in connection with such transactions and (ii) any appropriate positions on one or more tax returns (e.g., worthlessness deductions).

Any Restructuring Transaction (i) may, without any further action by the stockholders or directors of any of the Plan Debtors or the Post-Effective Date Plan Debtors, be effected on, or subsequent to, the Effective Date; and (ii) must otherwise comply with the Plan. For purposes of effectuating the Plan, none of the Restructuring Transactions contemplated herein will constitute a change of control under any agreement, contract, or document of the Plan Debtors.

2. **Obligations of Any Successor Corporation in a Restructuring Transaction**

The Restructuring Transactions may result in substantially all of the respective assets, properties, rights, liabilities, duties, and obligations of certain of the Post-Effective Date Plan Debtors vesting in one or more surviving, resulting, or acquiring Entities. In any case in which the surviving, resulting, or acquiring Entity in any such transaction is a successor to a Reorganized Plan Debtor, such surviving, resulting, or acquiring Entity will perform the obligations of the applicable Reorganized Plan Debtor pursuant to the Plan.

H. **Effectuating Documents; Further Transactions**

On and after the Effective Date and without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan, the Post-Effective Date Plan Debtors and the managers, officers, authorized persons, and members of the boards of managers and directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, and to the extent applicable, the Downstream Businesses Sale Agreements, the Restructuring Transactions and the securities issued pursuant to the Plan in the name of, and on behalf of, the Post-Effective Date Plan Debtors.

I. **Sources of Cash for Plan Distributions**

All consideration necessary for the Post-Effective Date Plan Debtors to make payments or distributions pursuant hereto shall be obtained through a combination of one or more of the

following: (a) Cash on hand of the Plan Debtors, including Cash from business operations, or distributions from Non-Debtor Affiliates; (b) Net Proceeds of any asset sales, including the Downstream Businesses Sale, if applicable; (c) the Net Proceeds of any tax refunds and other causes of action; and (d) any other means of financing or funding that the Plan Debtors or the Reorganized Plan Debtors determine is necessary or appropriate (subject to the Oaktree Consent Right). Further, the Plan Debtors (subject to the Oaktree Consent Right) and the Reorganized Plan Debtors shall be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Plan Debtors to satisfy their obligations under the Plan. Except as set forth herein, and subject to the Restructuring Transactions, any changes in intercompany account balances resulting from such transfers shall be accounted for and settled in accordance with the Plan Debtors' historical intercompany account settlement practices and shall not violate the terms of the Plan or any orders entered by the Bankruptcy Court with respect to the Plan Debtors' Cash management system or otherwise affect any distributions contemplated by the Plan.

### J.    Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto, including in connection with the Downstream Businesses Sale or the transfer of the Downstream Transferred Assets, if applicable, will not be subject to any stamp, transfer, mortgage recording, or other similar tax or governmental assessment in the United States, and the Confirmation Order will direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (i) any transfer, sale or assignment pursuant to the Downstream Businesses Sale Agreements or in connection with the Downstream Transferred Assets; (ii) the creation of any mortgage, deed of trust, Lien, or other security interest; (iii) the making or assignment of any lease or sublease; (iv) any Restructuring Transaction; (v) the issuance, distribution, or sale of any of the Reorganized Parent Common Equity, the Molycorp Silmet Equity and any other securities of the Plan Debtors or the Post-Effective Date Plan Debtors, or any of the foregoing; or (vi) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including the following: (a) any merger or securities purchase agreements; (b) agreements of consolidation, restructuring, reorganization, transfer, disposition, conversion, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any Restructuring Transaction occurring under the Plan.

### K.    Reporting Obligations

There will be no requirement that the Post-Effective Date Plan Debtors File monthly operating reports, or any other type of report, with the Bankruptcy Court after the Effective Date. The Post-Effective Date Plan Debtors shall provide a calculation of their disbursements to the U.S. Trustee on a quarterly basis until the entry of a final decree pursuant to Bankruptcy Rule 3022 to close the chapter 11 case of such Reorganized Plan Debtor.

### L. Cancellation of Securities and Agreements

On the Effective Date and except as otherwise specifically provided for in the Plan, the obligations of the Plan Debtors under (i) the Oaktree Prepetition Facilities, and the Oaktree Lease Documents, (ii) the 10% Notes Indenture, the Convertible Notes Indentures, the Subordinated Convertible Notes Indenture and the Pari Passu Collateral Agency Agreement, (iii) the DIP Facility, and (iv) any other agreement, certificate, share, certificate of designation, bylaws, certificate or articles of incorporation or similar document, note, bond, indenture, purchase right, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of, or ownership interest, equity, or profits interest in, the Plan Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Plan Debtors giving rise to any Claim or Interest (except the Subsidiary Plan Debtor Equity Interests), shall be cancelled solely as to the Plan Debtors, and the Post-Effective Date Plan Debtors shall have no continuing obligations thereunder and all such obligations shall be fully released, settled and compromised except as expressly provided herein, and, subject to Section VII.D.1 hereof, the Convertible Notes Indenture Trustees, the 10% Notes Indenture Trustee and the Pari Passu Collateral Agent shall be released from all duties thereunder solely with respect to the Plan Debtors, except with respect to any distributions to be made by such Convertible Notes Indenture Trustee or the 10% Notes Indenture Trustee pursuant to the Plan. With respect to any agreement (including, without limitation, any applicable indenture) that governs the rights of the Holder of a Claim or Interest and will be cancelled hereunder solely as to the Plan Debtors, and notwithstanding the occurrence of the Effective Date, such agreement will continue in effect as to the Plan Debtors solely for purposes of: (1) allowing such Holders to receive distributions under the Plan as provided herein; (2) allowing the Convertible Notes Indenture Trustees and the 10% Notes Indenture Trustee to make the distributions in accordance with the Plan; (3) preserving any rights of the Convertible Notes Indenture Trustees or the 10% Notes Indenture Trustee to payment of fees, expenses, and indemnification obligations solely as against any money or property distributable to the Holders under the relevant agreements, including any rights to priority of payment and/or to exercise charging liens on such distributions; (4) allowing the Convertible Notes Indenture Trustees to enforce any right to payment with respect to the Indenture Trustees Allowed Fee Payment; and (5) allowing the Convertible Notes Indenture Trustees or the 10% Notes Indenture Trustees to appear in the Chapter 11 Cases or any proceeding in which they are or may become a party with respect to items (1) through (4), as applicable.

### M. Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, liens, pledges, or other security interests of any nature against any property of the Estates will be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, liens, pledges, or other security interests of any nature against any property of the Estates will revert to the Post-Effective Date Plan Debtors and their successors and assigns. The Post-Effective Date Plan Debtors will be authorized to file any necessary or desirable documents to evidence such release in the name of

such parties holding mortgages, deeds of trust, liens, pledges, or other security interests of any nature against any property of the Estates.

In addition, except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date subject to and concurrently with satisfaction of the Oaktree Prepetition Claims in accordance with the terms hereof, and subject to the transfer of the Molycorp Silmet Equity contemplated by the 10% Noteholder Group Settlement solely with respect to Molycorp Silmet, Oaktree shall release the Non-Debtor Prepetition Oaktree Guarantors from all obligations under the existing Oaktree Prepetition Facilities and Oaktree Lease Documents, including but not limited to (1) any guarantees that the Non-Debtor Prepetition Oaktree Guarantors are party to, (2) any equity pledge agreements that Non-Debtor Prepetition Oaktree Guarantors are party to (or deemed party to by operation of applicable law) or the owners of their equity are party to with respect to their equity and (3) any other mortgages, deeds of trust, liens, pledges or other security interests of any nature against any property of the Non-Debtor Prepetition Oaktree Guarantors. Further, except as otherwise provided herein or specifically provided for in the Plan, on the Effective Date and concurrently with receipt of all distributions on account of DIP Facility Claims in accordance with the terms hereof, the DIP Lenders shall consent to the release of any claims and the termination of any liens or negative pledges executed or incurred by any Plan Debtor or Non-Debtor Affiliate in connection with the DIP Facility in connection with the extinguishment of the facility. The Post-Effective Date Plan Debtors will be authorized to file any necessary or desirable documents to evidence the releases and terminations set forth in this Section IV.L in the name of Oaktree.

### N. Preservation of Causes of Action

Except as provided in the Plan or in any contract, instrument, release, or other agreement entered into, or delivered in connection with, the Plan, in accordance with section 1123(b) of the Bankruptcy Code and to the fullest extent possible under applicable law, the Post-Effective Date Plan Debtors will retain and may enforce, and will have the sole right to enforce, any claims, demands, rights, and Causes of Action that any Plan Debtor or Estate may hold against any Entity other than Oaktree or any of its Representatives or any other Released Parties. The Post-Effective Date Plan Debtors or their successors may pursue, or not pursue, such retained claims, demands, rights or Causes of Action, as they deem appropriate in their discretion. A list of such retained Causes of Action shall be included in the Plan Supplement.

All claims and Causes of Action, including without limitation any Avoidance Actions of the Plan Debtors against any Holder of Claim in Class 5 shall be released and shall not vest in the Post-Effective Date Plan Debtors; *provided, however*, that notwithstanding anything to the contrary herein, no release shall be granted to Holders of Claims in Class 5 that object to the Plan.

O.  **Administrative Consolidation**

The classification and manner of satisfying all Claims and Interests under the Plan take into consideration the rights of holders of Claims and Interests, whether arising under contract, law, or equity, that a holder of a Claim or Interest may have against each of the Plan Debtors. Holders of Claims or Interests against more than one Plan Debtor are classified in consolidated classes of Claims against and Interests in all Plan Debtors in Section III.A for administrative convenience with respect to voting and the making of distributions on account of Claims and Interests. The Confirmation Order will approve this administrative consolidation.

Such administrative consolidation will have no effect on (a) the legal and corporate structures of the Plan Debtors; (b) pre- and post-Effective Date guarantees, liens, and security interests that are required to be maintained (i) in connection with contracts or leases that were entered into during the Chapter 11 Cases or (ii) Executory Contracts or Unexpired Leases that have been, or will be, assumed or assumed and assigned pursuant to the Plan; (c) Interests between and among the Plan Debtors; (d) distributions from any insurance policies or proceeds of such policies; (e) the revesting of assets in the separate Post-Effective Date Plan Debtors; and (f) the responsibility of each Estate for the payment of its respective quarterly fees to the office of the U.S. Trustee pursuant to 28 U.S.C. § 1930 until the applicable Plan Debtor's case is closed, dismissed or converted to another chapter of the Bankruptcy Code. In addition, such administrative consolidation will not constitute a waiver of the mutuality requirement for setoff under section 553 of the Bankruptcy Code.

P.  **Payment of Indenture Trustee Allowed Fees**

As part of the Committee Settlement Agreement, without any further notice to or action, order, or approval of the Bankruptcy Court, the Reorganized Plan Debtors shall pay on the Effective Date the Indenture Trustees Allowed Fee Payment to the Convertible Notes Indenture Trustees and the Subordinated Convertible Notes Indenture Trustee on account of the Indenture Trustees Allowed Fees.

## ARTICLE V.
## TREATMENT OF COMPENSATION AND BENEFITS PROGRAMS

A.  **MIP**

If the Downstream Businesses Sale Trigger does not occur, the New Board shall adopt the MIP.

B.  **Employee Compensation and Benefits Programs**

If the Downstream Businesses Sale Trigger does not occur, from and after the Effective Date, the Reorganized Plan Debtors shall, subject to the Oaktree Consent Right, continue (or continue as modified or replaced) their Compensation and Benefits Programs. Nothing herein shall preclude the Plan Debtors or the Reorganized Plan Debtors from making any changes to or terminating any of their Compensation and Benefits Programs in accordance with applicable law. However, unless otherwise ordered by the Bankruptcy Court, the Reorganized Plan Debtors shall continue to pay all retiree benefits, as that term is defined in section 1114 of the Bankruptcy

Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, for the duration of the period the applicable Debtor has obligated itself to provide such benefits.

### C.  Magnequench Pension Plan

If the Downstream Businesses Sale Trigger does not occur, MII will assume and continue the Magnequench Pension Plan, and will continue to fund the Magnequench Pension Plan in accordance with the minimum funding standards under applicable law, pay all required insurance premiums to the PBGC and continue to administer and operate the Magnequench Pension Plan in accordance with its terms and the provisions of ERISA.

If the Downstream Businesses Sale does not occur, the contingent Claims filed by the PBGC shall be deemed withdrawn and expunged from the Claims register; provided that neither the Plan, the Confirmation Order nor section 1141 of the Bankruptcy Code shall be construed as discharging, releasing or relieving any party, in any capacity, from any liability with respect to the Magnequench Pension Plan under any law, government policy or regulatory provision.  In addition, if the Downstream Businesses Sale does not occur, the PBGC and the Magnequench Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility against any party with such liability or responsibility as a result of any of provisions for satisfaction, release, injunction, exculpation, and discharge of Claims in the Plan, Confirmation Order or the Bankruptcy Code.

### D.  Workers' Compensation Programs

From and after the Effective Date, the Post-Effective Date Plan Debtors will continue to pay valid Claims under (i) all applicable workers' compensation laws in jurisdictions in which the Reorganized Plan Debtors operate; and (ii) the Plan Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance. All Proofs of Claims on account of workers' compensation will be deemed withdrawn automatically and without any further notice to, or action, order, or approval of, the Bankruptcy Court. Nothing in the Plan (i) will limit, diminish, or otherwise alter the Plan Debtors' or Reorganized Plan Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies, programs, and plans; and (ii) will be deemed to impose any obligations on the Plan Debtors or Reorganized Plan Debtors in addition to what is provided for under applicable law.

## ARTICLE VI.
## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

### A.  Assumption of Executory Contracts or Unexpired Leases

If the Downstream Businesses Sale Trigger occurs, except as otherwise provided herein, in the Downstream Businesses Sale Agreements, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan or the Downstream Businesses Sale Agreements, and as of the Effective Date, each Plan Debtor will be

-60-

NAI-1500956096v1

deemed to have rejected each Executory Contract or Unexpired Lease to which such Plan Debtor is a party, unless such Executory Contract or Unexpired Lease (i) was previously assumed or rejected; (ii) was previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion or notice to assume or assume and assign Filed on or before the Confirmation Date, including in connection with the Downstream Businesses Sale; or (iv) is designated specifically, or by category, as an Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases.

If the Downstream Businesses Sale Trigger does not occur, except as otherwise provided herein or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan and as of the Effective Date, each Reorganized Plan Debtor will be deemed to have assumed each Executory Contract or Unexpired Lease to which such Reorganized Plan Debtor is a party, unless such Executory Contract or Unexpired Lease (i) was previously assumed or rejected; (ii) was previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion or notice to reject Filed on or before the Confirmation Date; or (iv) is designated specifically, or by category, as an Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases.

In accordance with the 10% Noteholder Settlement Agreement, the Executory Contracts and Unexpired Leases set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases filed with the Plan Supplement shall be assumed by the applicable Molycorp Minerals Debtors and assigned to the Reorganized Parent or an entity directly or indirectly controlled by the Reorganized Parent.

The Confirmation Order will constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions or assumptions and assignments or rejections described above as of the Effective Date. Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts and Unexpired Leases in the Plan will be effective as of the Effective Date. Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to the Plan, or by Bankruptcy Court order, will vest in and be fully enforceable by the applicable Reorganized Plan Debtor or assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court.

Notwithstanding the foregoing paragraph or anything contrary herein, the Plan Debtors reserve the right to alter, amend, modify, or supplement the Executory Contracts and Unexpired Leases identified for assumption or rejection in the Plan Supplement prior to the Effective Date.

### B.    Cure of Defaults for Assumed Executory Contracts or Unexpired Leases

Any Executory Contracts or Unexpired Leases to be assumed (or assumed and assigned) pursuant to the Plan, or otherwise, that are, or may be, alleged to be in default, will be satisfied solely by payment of the Cure Cost or by an agreed-upon waiver or discharge of the Cure Cost on the Effective Date or as soon thereafter as practicable or on such other terms as the Plan Debtors (subject to the Oaktree Consent Right) and the counterparties to each such Executory Contract or Unexpired Lease may otherwise agree. In the event of a dispute regarding: (i) the amount of any Cure Cost; (ii) the ability to provide "adequate assurance of future performance"

within the meaning of section 365(b) of the Bankruptcy Code (if applicable) under the Executory Contract or the Unexpired Lease to be assumed and/or assumed and assigned; or (iii) any other matter pertaining to assumption (or assumption and assignment), then such Cure Costs will be paid following the entry of a Final Order resolving the dispute and approving the assumption and assignment of such Executory Contracts or Unexpired Leases or as may be agreed upon by the Plan Debtors (subject to the Oaktree Consent Right), or the Post-Effective Date Plan Debtors, as applicable, and the counterparty to such Executory Contract or Unexpired Lease.

The Plan Debtors shall provide notices of proposed assumption (or proposed assumption and assignment) and proposed cure amounts to be sent to applicable Executory Contract or Unexpired Lease counterparties, together with procedures for objecting thereto and resolution of disputes by the Bankruptcy Court in accordance with the Bid Procedures Order. Any objection by a contract or lease counterparty to a proposed assumption (or assumption and assignment) or related cure amount must be Filed, served, and actually received by the Plan Debtors no later than the date on which objections to Confirmation are due (or such other date as may be provided in the applicable assumption notice). Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or assumption and assignment or cure amount will be deemed to have assented to such assumption or assumption and assignment and related Cure Cost (if any).

Prior to the Effective Date, the Plan Debtors (subject to the Oaktree Consent Right), or after the Effective Date, the Post-Effective Date Plan Debtors, may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court. In addition, prior to the Effective Date and prior to the entry of a Final Order resolving any dispute and approving the assumption or assumption and assignment of such Executory Contract or Unexpired Lease, the Plan Debtors reserve the right to reject any Executory Contract or Unexpired Lease which is subject to dispute.

Notwithstanding anything to the contrary herein, neither the Plan Debtors nor the Post-Effective Date Plan Debtors shall assume any indemnification obligation in place as of the Effective Date, whether in the Bylaws, Certificates of Incorporation, Limited Liability Agreements, other organizational or formation documents, board resolutions, management or indemnification agreements or employee contracts for the Plan Debtors' current and former Directors and Officers but rather any such obligation shall, to the extent arising out of events which occurred prior to the Petition Date, be treated as a General Unsecured Claim, subject to the applicable provisions of the Bankruptcy Code.

### C.    Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Plan Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with the Prime Clerk no later than the later of (i) thirty (30) days after the effective date of rejection of such Executory Contract or Unexpired Lease and (ii) the Claims Bar Date established in the Chapter 11 Cases.

Any Holder of a Claim arising from the rejection of an Executory Contract or Unexpired Lease for which a Proof of Claims was not timely Filed as set forth in the immediately preceding