**Exhibit C**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MOLYCORP, INC., et al.[1] | Case No. 15-11357 (CSS) |
| Debtors. | Jointly Administered |
| | Ref. Docket Nos. 793 and 1505 |

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENT, (B) APPROVING THE SALE OF CERTAIN MOLYCORP MINERALS ASSETS TO THE PURCHASER FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363(b), (f), (k), AND (m), (C) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365, AND (D) GRANTING RELATED RELIEF**

This matter coming before the Court on the request of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), as set forth in the *Motion of Debtors for an Order (A) Approving Bidding Procedures for the Sale of the Debtors' Assets, (B) Approving Certain Bidder Incentives in Connection With the Debtors' Entry Into a Stalking Horse Agreement, If Any and (C) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Dkt. No. 793] (the "Bidding Procedures Motion") and the *Plan Debtors' (I) Memorandum of Law in Support of Confirmation of Joint Plan of Reorganization Proposed by the Plan Debtors and Molycorp Minerals, LLC and (II) Consolidated Reply To Objections to Confirmation of Joint Plan of Reorganization*

---

[1] The Debtors are the following 21 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Molycorp, Inc. (1797); Industrial Minerals, LLC; Magnequench, Inc. (1833); Magnequench International, Inc. (7801); Magnequench Limited; Molycorp Advanced Water Technologies, LLC (1628); MCP Callco ULC; MCP Canada Holdings ULC; MCP Canada Limited Partnership; MCP Exchangeco Inc.; Molycorp Chemicals & Oxides, Inc. (8647); Molycorp Luxembourg Holdings S.à r.l.; Molycorp Metals & Alloys, Inc. (9242); Molycorp Minerals Canada ULC; Molycorp Minerals, LLC (4170); Molycorp Rare Metals Holdings, Inc. (4615); Molycorp Rare Metals (Utah), Inc. (7445); Neo International Corp.; PP IV Mountain Pass, Inc. (1205); PP IV Mountain Pass II, Inc. (5361); RCF IV Speedwagon Inc. (0845). Molycorp's United States headquarters is located at 5619 DTC Parkway, Suite 1100; Greenwood Village, Colorado; 80111.

Dkt. No. 1505 (the "Confirmation Brief" and, collectively with the Bidding Procedures Motion, the "Sale Pleadings")², seeking, among other things, entry of an order pursuant to sections 105(a), 363(b), (f), (k), and (m), and 365 of Title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 6004, 6005, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (a) approving that certain Asset Purchase Agreement, dated as of April [5], 2016 (as may be amended, supplemented or otherwise modified in accordance with the terms thereof, and including all Exhibits and Schedules thereto, the "APA"), a true and correct copy of which (without Schedules) is attached hereto as Exhibit A, by and among Molycorp Minerals, LLC ("Minerals"), PP IV Mountain Pass Inc., PP IV Mountain Pass II, Inc., and RCF IV Speedwagon Inc. (collectively, the "Sellers") and Secure Natural Resources LLC (the "Purchaser"), a newly-formed limited liability company that, upon Closing, will be owned by the holders of the Debtors' 10% senior secured notes (the "10% Notes" and the holders thereof, "10% Noteholders") and OCM MLYCo CTB Ltd and its affiliates (collectively with their respective designees and transferees, "Oaktree"), for the purchase and sale of the Purchased Assets (as defined and described in section 2.1 of the APA) (the "Molycorp Minerals Sale"), (b) approval of the Molycorp Minerals Sale to the Purchaser free and clear of all Liens, Claims, encumbrances, and other interests pursuant to Bankruptcy Code sections 105(a) and 363(b), (f), (k), and (m); (c) approving the assumption and assignment of certain executory contracts (as defined and described in section 2.1 of the APA, collectively, the "Purchased Contracts") free and clear of all Liens, Claims, encumbrances, and other interests pursuant to

---

² Capitalized terms used but not otherwise defined in this Order shall have the meanings assigned to such terms in the Confirmation Brief and the APA (as defined below).

2

Bankruptcy Code sections 363 and 365; and (d) granting related relief; and this Court having entered an order on January 14, 2016 (the "Bidding Procedures Order") granting the Bidding Procedures Motion and approving, among other things, the bidding procedures (the "Bidding Procedures") with respect to, and notice of, the Molycorp Minerals Sale; and no other bidder having submitted a competing bid for the Purchased Assets; and as a result of the Debtors receiving no competing bids, the Auction scheduled for March 4, 2016 having been cancelled; and the Debtors, after consultation with the Consultation Parties (as defined in the Bidding Procedures), having determined that the APA represents the Successful Bid (as defined in the Bidding Procedures); the Court having reviewed (i) the Sale Pleadings, (ii) the *Notice of: (I) 10% Noteholder Group Settlement Among the Ad Hoc 10% Noteholders, the Debtors, Oaktree and the Creditors' Committee; and (II) Certain Related Matters Regarding Confirmation & Sale Hearing* [Dkt. No. 1495]; (iii) the *Statement of the Ad Hoc 10% Noteholders in Support of (A) the Molycorp Minerals Sale and (B) the Plan Debtors' (I) Memorandum of Law in Support of Confirmation of Joint Plan of Reorganization* [Dkt. No. 1516]; and (iv) the objections filed to the Molycorp Minerals Sale and to the Plan as it relates to the Molycorp Minerals Sale and joinders thereto; and the Court having considered the statements of counsel and the evidence adduced with respect to the Molycorp Minerals Sale at a joint hearing on the approval of the Molycorp Minerals Sale and confirmation of the Plan held before the Court beginning on March 29, 2016 (the "Sale and Confirmation Hearing"); and after due deliberation the Court having determined that the relief requested in the Sale Pleadings is in the best interests of the Debtors, their estates, and their creditors; and good and sufficient cause having been shown; and for the reasons stated by the Court on the record at the Sale and Confirmation Hearing;

**IT IS HEREBY FOUND AND CONCLUDED, as follows:**

A.  **Jurisdiction and Venue**. This Court has jurisdiction over this matter, the property of the Debtors' estates, including the Purchased Assets to be sold, transferred or conveyed pursuant to the APA and the Sale Pleadings pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  **Final Order**. This Order constitutes a final order within the meaning of 28 U.S.C. §§ 158(a).

C.  **Statutory Predicates**. The statutory and other predicates for the relief sought in the Sale Pleadings are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6005, 6006, 9007, and 9014 and Local Rules 2002-1 and 6004-1.

D.  **Notice**. As evidenced by the affidavits of service on file with the Court, (i) due, proper, timely, adequate, and sufficient notice and a reasonable opportunity to object or be heard with respect to the Molycorp Minerals Sale has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Bidding Procedures Order, and the APA, including to: (a) the Office of the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) Oaktree; (d) the ad hoc group of 10% Noteholders; (e) UMB Bank, National Association (as successor to Wells Fargo Bank, National Association), in its capacity as indenture trustee for the 10% Notes (the "10% Notes Trustee"); (f) Wells Fargo Bank, National Association, in its capacity as collateral agent for the 10% Notes Trustee and Oaktree (the "Collateral Agent"); (g) all entities known to have expressed an interest in acquiring any of the

4

Purchased Assets; (h) all parties known to be asserting a Lien, Claim, encumbrance or interest on or in any of the Purchased Assets; (i) all known contract and license counter-parties relating to the Purchased Assets to be acquired by the Purchaser under the APA; (j) the United States Attorney's office; (k) various federal, state, and local agencies and authorities asserting jurisdiction over the Molycorp Minerals Debtors' assets, including the County of San Bernardino, California, the California Regional Water Quality Control Board, Lahontan Region, the California Integrated Waste Management Board, the California State Water Resources Control Board, the California Department of Public Health – Radiologic Health Branch, the California Department of Resources Recovery and Recycling, and the U.S. Bureau of Land Management; (l) all federal, state, and local taxing authorities with jurisdiction over the Purchased Assets; (m) all regulatory authorities that have a reasonably known interest in the Purchased Assets; (n) all known creditors of the Debtors; and (o) all other parties that have filed a notice of appearance and demand for service of papers in these Bankruptcy Cases under Bankruptcy Rules 2002 and 9010(b) as of the date of entry of the Bidding Procedures Order; (ii) such notice and opportunity to be heard was and is good, sufficient, and appropriate under the circumstances; and (iii) no other or further notice of the Molycorp Minerals Sale is or shall be required. With respect to entities whose identities are not reasonably ascertained by the Debtors, publication of notice pursuant to the Bidding Procedures Order in (a) the Global Edition of *The Wall Street Journal*; (b) the National Edition of *USA Today*; and (c) the *Las Vegas Review- Journal* on January 28, 2016 [*see* Dkt. No, 1304] was sufficient and reasonably calculated under the circumstances to reach such entities.

    E.  **Compliance with Bidding Procedures Order**. As demonstrated by (i) evidence adduced at the Sale and Confirmation Hearing and (ii) the representations of counsel

5

made on the record at the Sale and Confirmation Hearing, the Debtors conducted a fair and open sale process in a manner reasonably calculated to produce the highest or otherwise best offer for the Purchased Assets in compliance with the Bidding Procedures Order. The Bidding Procedures were substantively and procedurally fair to all parties, and were the result of arm's length negotiations. The sale process and the Bidding Procedures were non-collusive and duly noticed, and afforded a full, fair and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase all or any of the Purchased Assets. The Bidding Procedures have been complied with in all material respects by the Debtors and the Purchaser.

F. **Corporate Authority**. The Sellers have taken all corporate or other entity action necessary to authorize and approve the APA and the consummation of the Molycorp Minerals Sale, and the Sellers' sale of the Purchased Assets to the Purchaser has been duly and validly authorized by all necessary corporate or other entity action. The Sellers have full corporate or other entity power and authority to execute the APA and all other documents contemplated thereby and to consummate the Molycorp Minerals Sale. No consents or approvals, other than those expressly provided for in the APA, are required for the Sellers to consummate the Molycorp Minerals Sale.

G. **Business Justification**. Approval of the APA and consummation of the Molycorp Minerals Sale is in the best interests of the Debtors, the Sellers, their estates, their creditors, and other parties in interest. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the sale to the Purchaser pursuant to section 363(b) and (k) of the Bankruptcy Code. Such business purposes and justifications include, but are not limited to, the following: (i) no bids for the Purchased Assets were received by the Debtors pursuant to the Bidding Procedures other than the credit bid submitted by the Purchaser;

6

(ii) the Ad Hoc 10% Noteholders were expressly authorized, pursuant to the Bidding Procedures Order, to submit a credit bid for some or all of the assets of the Molycorp Minerals Debtors and the Directing Noteholders (defined below) have duly authorized the Purchaser to submit a credit bid for the Purchased Assets on their behalf; (iii) the APA and closing thereof present the only available opportunity to realize the value of the Purchased Assets and avoid decline and devaluation of the Purchased Assets; and (iv) the Molycorp Minerals Sale will maximize the value of the Debtors' estates to the most creditors possible.

H.  **Fair Consideration**. The consideration to be provided by the Purchaser pursuant to the APA: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Purchased Assets; (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration. In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Debtors' estates and the indirect benefits of the Molycorp Minerals Sale for the Debtors' creditors. The Debtors' determination that the APA constitutes the Successful Bid (as defined in the Bidding Procedures) for the Purchased Assets is a result of due deliberation by the Debtors and their legal and financial advisors and investment bankers, and the principals and professionals of the Consultation Parties and constitutes a valid and sound exercise of the Debtors' business judgment consistent with their fiduciary duties. Entry of an order approving the Molycorp Minerals Sale is a necessary condition precedent to the Purchaser consummating the Molycorp Minerals Sale.

I.  **Arm's-Length Sale**. The APA was negotiated, proposed, and entered into (as applicable) by the Sellers, the Purchaser, the 10% Notes Trustee, the ad hoc group of 10% Noteholders, and the Collateral Agent (the 10% Notes Trustee, the ad hoc group of 10%

Noteholders, and the Collateral Agent, collectively, the "10% Notes Parties"), without collusion, in good faith, and from arm's length bargaining positions. None of the Purchaser or any of its affiliates or members is an "insider" or an "affiliate" of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code. The Sellers, the other Debtors, the Purchaser, and the 10% Notes Parties have not engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code.

J. **Release**. Based on its review of the record, the Court finds that the releases set forth in paragraph 28 hereof constitute good faith compromises and settlements of the matters covered thereby. Such compromises and settlements are (i) made in exchange for adequate consideration, (ii) in the best interests of each of the Debtors' estates, creditors, and other parties in interest; (iii) fair, equitable, and reasonable; (iv) integral elements of the Molycorp Minerals Sale; and (v) otherwise approved by the Court as appropriate pursuant to applicable law.

K. **Good Faith Purchaser**. The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Purchaser, the 10% Notes Parties, and Oaktree are acting in good faith within the meaning of section 363(m) in consummating the Molycorp Minerals Sale. The Purchaser, Oaktree, and the 10% Notes Parties have proceeded in good faith in all respects in that, *inter alia*: (i) the Purchaser and the 10% Notes Parties recognized that the Sellers were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Purchaser and the 10% Notes Parties complied with the provisions of the Bidding Procedures Order, including, without limitation, that the APA provides that Oaktree shall receive its pro rata share (calculated in accordance with the Collateral Agency Agreement (as defined in the Bidding Procedures Order))

of the common units issued by the Purchaser; (iii) the Purchaser's bid was subjected to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) no common identity of directors or officers exists among the Purchaser or any of the 10% Notes Parties, on the one hand, and the Sellers, on the other hand; (v) all payments to be made by the Purchaser and the 10% Notes Parties and all other material agreements or arrangements entered into by the Purchaser and the 10% Notes Parties, on the one hand, and the Sellers, on the other hand, in connection with the Molycorp Minerals Sale have been disclosed; and (vi) the Purchaser and the 10% Notes Parties have not engaged in any collusive conduct with any other Person, including entering into any agreements with any Person that sought to control or controlled the price of any of the Sellers' assets.

L.    **Legal, Valid, and Binding Transfer**. The Sellers are the sole and lawful owners of the Purchased Assets, or otherwise have a valid, enforceable property interest in such, and title thereto is vested in the Sellers' estates within the meaning of section 541(a) of the Bankruptcy Code. Subject to the liens of the 10% Noteholders and Oaktree, the Sellers have all right, title and interest in the Purchased Assets required to transfer and convey the Purchased Assets to the Purchaser. The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and will vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear of all Liens, Claims, encumbrances, and other interests of any kind and every kind whatsoever other than those Liens, Claims, encumbrances, and interests specifically assumed by the Purchaser pursuant to the APA.

M.    **Valid and Binding Contract; Authorization**. The APA is a valid and binding contract between the Sellers and the Purchaser, which is and shall be enforceable according to its terms. The consummation of the Molycorp Minerals Sale is legal, valid, and

9

properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(k), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Molycorp Minerals Sale.

N. **Free and Clear**. The Purchaser would not have entered into the APA and would not consummate the Molycorp Minerals Sale, thus adversely affecting the Debtors, their estates, and their creditors, if the transfer of the Purchased Assets to the Purchaser and the assumption and assignment of the Purchased Contracts to the Purchaser were not free and clear of all Liens, Claims, encumbrances, and interests of any kind or nature whatsoever other than those Liens, Claims, encumbrances, and interests specifically assumed by the Purchaser pursuant to the APA, or if the Purchaser would, or in the future could, be liable for any such Lien, Claim, encumbrance, or interest under any theory of law or equity, including, without limitation, any theory of successor, transferee or assignee Liability. The Purchaser is purchasing the Purchased Intellectual Property, together with all associated goodwill, free and clear of any Lien, Claim, encumbrance, or interest, including any implied license in such Purchased Intellectual Property of the Downstream Debtors. A sale of the Purchased Assets other than one free and clear of any Liens, Claims, encumbrances, and interests would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Molycorp Minerals Sale.

O. Subject to the provisions of this Sale Order and except as may be specifically provided in the APA, the Sellers may sell the Purchased Assets free and clear of all Liens, Claims, encumbrances, and interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy

Code have been satisfied. Each Person with a Lien, Claim, encumbrance or interest in the Purchased Assets: (i) has, subject to the terms and conditions of this Sale Order, consented to the Molycorp Minerals Sale or is deemed to have consented; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, Claim, encumbrance or interest; or (iii) otherwise falls within the provisions of Bankruptcy Code section 363(f). Those holders of Liens, Claims, encumbrances, and interests who did not object to the Sale Pleadings or the Plan, as the Plan relates to the Molycorp Minerals Sale, are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2).

P.  In addition to the foregoing, for the reasons stated on the record by the Court at the Sale and Confirmation Hearing, the Court finds and concludes that the Purchased Assets may be sold to the Purchaser free and clear of any mechanics' Liens on the Purchased Assets (collectively, the "Mechanics' Liens").

Q.  **No Fraudulent Transfer**. The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States or any state, district, territory, or possession thereof. None of the relevant Parties have entered into the Molycorp Minerals Sale fraudulently.

R.  **No Successor Liability**. The Purchaser, the 10% Notes Parties, Oaktree, and their respective Affiliates (i) are not, and shall not be, considered successors in interest to the Sellers; (ii) have not, *de facto* or otherwise, merged with or into the Sellers, nor have any of the Sellers merged into the Purchaser, Oaktree, any of the 10% Notes Parties, or any of their respective Affiliates; (iii) are not a continuation or substantial continuation of any of the Sellers or any enterprise of any of the Sellers; (iv) do not have a common identity of incorporators, directors, or equity holders with the Sellers; (v) are not holding themselves out to the public as a

11

continuation of the Sellers; (vi) are not expressly or impliedly assuming and shall not in any way be responsible for any liability or obligation of any of the Sellers or any of the other Debtors or their bankruptcy estates except as otherwise expressly provided in the APA; and (vii) are not assuming liability and will not by virtue of the Molycorp Minerals Sale become liable for any Liens, Claims, encumbrances, interests, or Liabilities arising from or related to any of the Liens, Claims, encumbrances, interests, or Liabilities of or against the Sellers or their assets. Except as otherwise specifically provided in the APA, the (x) assignment, transfer and/or sale of the Purchased Assets to the Purchaser and (y) assumption by the Sellers and assignment, transfer, and/or sale to the Purchaser of the Purchased Contracts do not and will not subject the Purchaser, Oaktree, any of the 10% Notes Parties, or any of their respective Affiliates to any Liability whatsoever with respect to the operation of the Debtors' rare earth mining and processing facility known as "Mountain Pass" located in San Bernardino, California (the "Business"), or any of the Debtors' other businesses, before the Closing Date under the laws of the United States, any state, district, territory, or possession thereof, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of successor, transferee, or assignee Liability.

S. **Assumption of Executory Contracts**. On February 5, 2016, the Debtors filed the Notice of Debtors' Intent to Assume and Potentially Assign Certain Executory Contracts and Unexpired Leases [Dkt. No. 1231] (the "Assumption and Assignment Notice"). The Assumption and Assignment Notice was provided to each non-Debtor party to a Purchased Contract, together with a statement therein from the Debtors with respect to the amount, if any, to be paid to such non-Debtor party to cure any defaults under, and to otherwise comply with the requirements of section 365(b) of the Bankruptcy Code with respect to the Purchased Contract to

12

which such non-Debtor is a party (the "Cure Costs"), in accordance with the Assumption and Assignment Procedures set forth in the Bidding Procedures. As to each Purchased Contract, payment of the Cure Costs is sufficient for the Debtors to comply fully with the requirements of section 365(b) of the Bankruptcy Code. Each of the non-Debtor parties to the Purchased Contracts have had an opportunity to object to the Cure Costs set forth in the Assumption and Assignment Notice. In addition, the Purchaser has provided adequate assurance of its ability to perform its obligations under each of the Purchased Contracts within the meaning of section 365(f) of the Bankruptcy Code, based upon (i) the Purchaser's promises to pay any Cure Costs with respect to the Purchased Contracts and to perform the Debtors' obligations under the Purchased Contracts for the period on or after the Closing, (ii) the Purchaser's representations made in section 6.6 of the APA that it has the financial capability to pay the Cure Costs and to pay the fees and expenses required to be paid by the Purchaser in connection with the Molycorp Minerals Sale, including with respect to the Purchased Contracts, based upon, among other things, the sale of the Cash Collateral to the Purchaser pursuant to the APA. To the extent the Purchased Assets will include any Purchased Contracts, Sellers will provide to the Purchased Contract counterparty the additional notice set forth in paragraph 21 hereof. All other requirements and conditions under the Bankruptcy Code for the assumption by the Debtors, and assignment, transfer and/or sale to the Purchaser of the Purchased Contracts have been satisfied. Therefore, the Purchased Contracts may be assumed by the Debtors and assigned and sold to the Purchaser.

T. **Prompt Consummation**. The APA and Molycorp Minerals Sale must be approved and consummated promptly in order to maximize the value of the Debtors' estates. Time is of the essence in consummating the Molycorp Minerals Sale. Cause has been shown as

13

to why this Sale Order should not be subject to any stay provided by Bankruptcy Rules 6004(h) and 6006(d).

U. **Duties and Authority of the 10% Notes Trustee and the Collateral Agent**. In accordance with the indenture governing the 10% Notes (the "10% Notes Indenture"), the Collateral Agency Agreement (as defined in the Bidding Procedures Order), the Security Agreement (as defined in the Collateral Agency Agreement), and all other agreements, documents and instruments executed and/or delivered to or in favor of the 10% Noteholders or in favor of the 10% Notes Trustee or the Collateral Agent in connection with the 10% Notes Indenture, including the Security Documents (as defined in the Collateral Agency Agreement) (collectively, the "10% Notes Documents") and the Bidding Procedures Order, the holders of a majority in aggregate principal amount of the outstanding 10% Notes (collectively, the "Directing Noteholders") consented to and directed the 10% Notes Trustee to, and, in turn, the 10% Notes Trustee, as the Applicable Authorized Representative (as defined in the Collateral Agency Agreement), consented to and directed the Collateral Agent to, among other things, (a) authorize the Purchaser for and on behalf of the Collateral Agent to execute and deliver a credit bid for the Purchased Assets so as to be delivered at the times, to the Persons, and in the formats required by the Bidding Procedures; (b) authorize the Purchaser for and on behalf of the Collateral Agent to participate in the Auction (if required) and modify the credit bid on such terms as authorized and directed; (c) authorize the Purchaser to acquire and assume from the Sellers, pursuant to sections 363 and 365 of the Bankruptcy Code, all of the Purchased Assets in accordance with the APA. The remaining 10% Noteholders and Oaktree have not objected to the approval of the Molycorp Minerals Sale or the APA. As a result of such directions from the Directing Noteholders and the 10% Notes Trustee and the authorization provided by the

Collateral Agent, the Court finds that the Purchaser has the full power and authority to execute, deliver, and perform the APA.

V.  Based on its review of the record, the Court finds that the Collateral Agent diligently and in good faith discharged its duties and obligations pursuant to the applicable 10% Notes Documents and otherwise conducted itself with respect to all matters in any way related to the 10% Noteholders, Oaktree, the 10% Notes, and the applicable 10% Notes Documents with the same degree of care and skill that a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs. Accordingly, the Court finds that the Collateral Agent has discharged its duties fully in accordance with the applicable 10% Notes Documents.

W.  Based on its review of the record, the Court finds the 10% Notes Trustee diligently and in good faith discharged its duties and obligations pursuant to the 10% Notes Indenture, and otherwise conducted itself with respect to all matters in any way related to the 10% Notes, the 10% Notes Indenture, and the 10% Noteholders with the same degree of care and skill that a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs. Accordingly, the Court finds that the 10% Notes Trustee has discharged its duties fully in accordance with the 10% Notes Indenture.

X.  **Sound Business Purpose**. The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the immediate approval and consummation of the transaction contemplated by the APA.

Y.  **Legal and Factual Bases**. Any of the findings of fact contained herein shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law contained herein shall constitute a conclusion of law even if it is stated as a finding of fact.

15

The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale and Confirmation Hearing.

Z. **Other Cause**. There is other good and sufficient cause to grant the relief requested in the Sale Pleadings and approve the APA and the Molycorp Minerals Sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**General Provisions**

1. The request of the Debtors to enter into the APA and consummate the Molycorp Minerals Sale pursuant to the Sale Pleadings is GRANTED and complies with all aspects of Local Rule 6004-1.

2. Any objections to the Molycorp Minerals Sale or the entry of this Sale Order, including, without limitation, any objections to the assumption, assignment, transfer and/or sale of any Purchased Contracts or the Cure Costs related thereto, that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are DENIED and OVERRULED on the merits with prejudice.

3. The APA, including all of its terms and conditions and ancillary documents, and the Molycorp Minerals Sale are APPROVED in all respects.

**Approval of Free and Clear Sale of the Purchased Assets**

4. Pursuant to Sections 363 and 365 of the Bankruptcy Code, the Sellers are authorized and directed to (i) execute, deliver, perform under, consummate, and implement the APA and the Molycorp Minerals Sale together with all additional instruments and documents that are requested by the Purchaser and may be reasonably necessary or desirable to implement the APA and the Molycorp Minerals Sale, and (ii) take any and all actions as they deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to its possession the Purchased Assets, or

16

as may be necessary or appropriate to the performance of the obligations as contemplated by the APA and the Molycorp Minerals Sale, including, without limitation, any and all actions reasonably requested by the Purchaser which are consistent with the APA and the Molycorp Minerals Sale.

5. In order to provide the consideration for the transfer of the Purchased Assets to the Purchaser, each 10% Noteholder and Oaktree shall, at Closing, be deemed to sell, transfer, assign, convey, and deliver to the Purchaser (or its designees), and Purchaser (or its designees), shall be deemed to accept and hold, their pro rata share of the Credit Bid Amount (as defined in the APA). Upon the Closing, the Credit Bid Amount shall be deemed satisfied on a pro rata basis with respect to each 10% Noteholder and Oaktree.

6. Upon the Closing, all claims arising under (i) the 10% Notes Documents, and (ii) the Oaktree Prepetition Facilities and the Oaktree Lease Documents (each as defined in the Bidding Procedures) all other agreements, documents and instruments executed and/or delivered to or in favor of Oaktree in connection with the Oaktree Prepetition Facilities and the Oaktree Lease Documents, including the Collateral Agency Agreement (collectively, the "Oaktree Prepetition Documents"), shall remain outstanding and be in full force and effect and shall continue to be entitled to all the rights and protections afforded under the 10% Notes Documents and the Oaktree Prepetition Documents, as applicable. Subject to paragraph 7(ii) with respect to the Purchased Assets, such claims shall continue to be secured in accordance with, and shall continue to be entitled to the protections of, the 10% Notes Documents, the Oaktree Prepetition Documents, and any order of the Court entered in these bankruptcy proceedings, including the *Final Order Pursuant to Sections 105, 361, 362, 264 and 507 of the Bankruptcy Code (I) Authorizing Debtors to Obtain Superpriority Secured Debtor-In-Possession*

17

*Financing, (II) Authorizing Debtors to Use Cash Collateral, (III) Granting Adequate Protection to the Prepetition Secured Parties, and (IV) Granting Related Relief* [Dkt. No. 278], as applicable. Notwithstanding the foregoing, the aggregate recoveries on account of such claims under the 10% Notes Documents and the Oaktree Prepetition Documents shall not exceed the amount of all claims arising under the 10% Notes Documents and the Oaktree Prepetition Documents, as applicable, less the Credit Bid Amount.

       7.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, upon the Closing: (i) the transfer of the Purchased Assets to the Purchaser pursuant to the APA shall constitute a legal, valid, and effective transfer of the Purchased Assets and shall vest the Purchaser with all right, title, and interest in and to the Purchased Assets; (ii) except as otherwise provided in paragraph 12 of this Order, the Purchased Assets shall be transferred to the Purchaser free and clear of all Liens, Claims, encumbrances, and interests of any and every kind whatsoever, whether known or unknown, whether fixed or contingent, whether arising prior or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, but not limited to: (a) those of any Governmental Body; (b) those based on any theory of successor or transferee Liability, merger, bulk transfer law, or any other similar theory, cause of action or statutory authority; (c) those imposing any restriction on the use, transfer, receipt of income, or other exercise of any attributes of ownership of the Purchased Assets; (d) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or the Purchaser's interest in the Purchased Assets, or any similar rights; (e) those relating to taxes arising under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing; (f) all mortgages, deeds of trust, security interests, conditional sale,