or other title retention agreements (whether arising by statute or contract), pledges, Liens (whether arising by statute or contract, including Mechanics' Liens), judgments, demands, encumbrances, options, rights of first refusal, rights of first offer, or charges of any kind or nature, including but not limited to, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership; (g) all debts arising in any way in connection with any agreements, acts, or failures to act of any of the Debtors or any of the Debtors' predecessors or Affiliates or any of their officers or directors; and (h) all other obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests, implied license, and matters of any kind and nature) other than those Liens, Claims, encumbrances, and interests specifically assumed by the Purchaser pursuant to the APA; and (iii) all Persons, including, without limitation, all lenders, debt security holders, equity security holders, governmental, tax and regulatory authorities, parties to executory contracts, customers, trade creditors, the Downstream Debtors, and other creditors holding Liens, Claims, encumbrances, or interests of any kind or nature against, or in, the Sellers or the Purchased Assets arising out of, in connection with, or in any way relating to the Sellers, the Purchased Assets, or the transfer of the Purchased Assets to the Purchaser, are hereby forever prohibited, estopped and permanently enjoined from asserting any such Lien, Claim, encumbrance or interest, or commencing or continuing in any manner any action or other proceeding (whether in law or equity) in connection with any such Lien, Claim, encumbrance or interest, against Purchaser and its Affiliates, and their respective successors and assigns, or the Purchased Assets.

        8.      On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes, as applicable, a full and complete general assignment, conveyance and transfer of the Purchased Assets acquired under the APA and a bill of sale and

19

assignment transferring good, marketable, and indefeasible title in the Purchased Assets to the Purchaser.

9.      This Sale Order is and shall be effective as a determination that all Liens, Claims, encumbrances, and interests shall be and are, without further action by any Person, unconditionally released, discharged and terminated with respect to the Purchased Assets as of the Closing Date, except as may otherwise be set forth in paragraph 12 of this Order and in the APA. All Persons are hereby forever barred, prohibited, and estopped from taking any action that would adversely affect or interfere with the ability of the Debtors to sell, assign, transfer and/or convey the Purchased Assets to the Purchaser in accordance with the terms of the APA and this Sale Order.

10.      Except as otherwise provided herein or in the APA, on the Closing Date, any Person asserting a Lien, Claim, encumbrance, or interest in the Purchased Assets are authorized and directed to execute such documents and instruments and to take all other actions as may be reasonably necessary to document and effectuate the release of their respective Liens, Claims, encumbrances, and interests in the Purchased Assets, if any.  If any such Person fails to execute any such documents or instruments or take any such actions, the Purchaser is authorized to execute such documents and instruments and to take such actions on behalf of such Person so as to document the release of such Liens, Claims, encumbrances, and interests.

11.      Pursuant to the APA, the Purchaser is not acquiring any of the Excluded Assets or assuming any of the Excluded Liabilities.  For the avoidance of doubt, the Purchased Assets do not include any rights and interests to the collateral held by Ironshore Indemnity, Inc., Lexon Insurance Co., Bond Safeguard Insurance Co., or Westchester Fire Insurance Company (individually and collectively, the "Sureties") whether held as security and/or in trust by the

20

Sureties in connection with the bonds they issued on behalf of one or more of the ~~Molycorp Minerals~~ Debtors while it is in the possession of the Sureties and/or their agents, and such rights and interests shall not be altered or affected by this Order (except as otherwise provided in paragraph 13 of this Order).

12.    Nothing in this Order or the APA releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability (including but not limited to reclamation obligations or liability under environmental statutes) to a governmental unit that any entity would be subject to as the owner or operator of the assets transferred pursuant to the APA after the date of entry of this Order. Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under police or regulatory law governing such transfer. Subject to governing non-bankruptcy law, nothing in this Order divests any tribunal of any jurisdiction it has under applicable police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order. Notwithstanding the foregoing, nothing in this Sale Order shall be interpreted to deem the Purchaser as the successor to the Debtors with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to, or for liabilities relating to off-site disposal by the Debtors of wastes, prior to the Closing Date and nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law.

13.    The rights of all parties are expressly reserved and nothing herein or in the APA shall prejudice the rights and priorities of any party, including, without limitation, the County of San Bernardino (if any), the California Regional Water Quality Control Board,

21

ACTIVE 213893164v.3

Lahontan Region (in any), the California State Water Resources Control Board (if any), the California Department of Resources Recovery and Recycling (if any), Oaktree and the 10% Notes Parties, as to: (a) any rights, Liens, Claims, encumbrances, and interests in or to any machinery, plant, equipment, facilities, systems or other property owned by the Molycorp Minerals Debtors that (i) is not a Purchased Asset or (ii) is a Downstream Transferred Asset (collectively, the "Molycorp Minerals Remaining Property"); (b) whether any such Molycorp Minerals Remaining Property may or may not be available to fund reclamation or other remediation and environmental liabilities of the Molycorp Minerals Debtors with respect to Mountain Pass pursuant to and to the extent applicable, any local, state or federal statute, rule or regulation relating to environmental matters or the public's health, safety or welfare, including, without limitation, the Surface Mining and Reclamation Act of 1975 and all related rules, regulations and orders ("SMARA") or the Porter-Cologne Water Quality Control Act (each to the extent applicable) relating to Mountain Pass; (c) any party's obligations (if any), with respect to such Molycorp Minerals Remaining Property, to comply with any local, state or federal statute, rule or regulation relating to environmental matters or the public's health, safety or welfare, including, without limitation, compliance with all requirements of SMARA or the Porter-Cologne Water Quality Control Act (each to the extent applicable) relating to Mountain Pass; or (d) all prior orders entered by the Court and the effect thereof. Nothing in this paragraph 13 shall be deemed to modify any prior orders entered by the Court in the Debtors' chapter 11 cases and the effect thereof.

**No Successor Liability**

14.    The Purchaser, Oaktree the 10% Notes Parties, Oaktree, and their respective Affiliates, successors and assigns shall not, and shall not be deemed to: (i) be a successor to the Debtors or their estates; (ii) have merged or consolidated with or into any of the

ACTIVE 213893164v.3

Debtors or their estates in a statutory or de facto merger or other combination; (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors; or (iv) expressly or impliedly assume any liabilities, obligations, warranties or other Liens, Claims, encumbrances, or interests arising from or related to the Excluded Liabilities. The Purchaser, Oaktree, the 10% Notes Parties, and their respective Affiliates shall have no successor, transferee, or vicarious Liability of any kind or character, including, but not limited to, under any theory of foreign, federal, state or local antitrust, environmental, tax, ERISA, labor, WARN Act, product liability, employment, de facto merger, substantial continuation, successor, assignee or transferee Liability, or other law, rule or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated, with respect to the Debtors, the Business, or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, Liabilities on account of any Taxes or other Governmental Body fees, contributions, or surcharges arising, accruing or payable under, out of, in connection with, or in any way relating to, the ownership of the Purchased Assets prior to the Closing Date. Except as otherwise provided herein or in the APA, the transfer of the Purchased Assets to the Purchaser pursuant to the APA shall not result in the Purchaser, the 10% Notes Parties, Oaktree, or their respective Affiliates, members, or shareholders, or the Purchased Assets, having any Liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff or otherwise, directly or indirectly, (i) any Claim against the Debtors or against any insider of the Debtors; or (ii) any Lien, Claim, encumbrance, or interest.

23

15.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the APA and the Molycorp Minerals Sale.

16.     Upon the Closing, and except as otherwise expressly provided in the APA with respect to Assumed Liabilities, the Purchaser shall not be liable for any Claims against, and Liabilities of, the Debtors or any of the Debtors' predecessors or Affiliates.  Without limiting the generality of the foregoing, (i) other than as specifically set forth in the APA, the Purchaser shall have no Liability (x) to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to the Debtors' pension plan), WARN Act liability, or any other payment to employees of the Debtors, or (y) in respect of any employee pension plan, employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which any of the Debtors are a party (including, without limitation, Liabilities arising from or related to the rejection or other termination of any such plan, program agreement or benefit); and (ii) the Purchaser shall in no way be deemed a party to or assignee of any such employee benefit, agreement, plan or program, and all parties to any such employee benefit, agreement, plan or program are enjoined from asserting against the Purchaser any claims arising from or relating to such employee benefit, agreement, plan or program.

17.     The Purchaser has given substantial consideration under the APA to the Debtors' estates.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor or transferee Liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all

24

holders of Liens, Claims, encumbrances, and interests against the Sellers or the Purchased Assets.

**Assumption and Assignment of Claims and Purchased Contracts**

18.     On the Closing Date, all of the rights, claims, or causes of action of the Sellers that relate to the Purchased Assets or the Assumed Liabilities shall be assigned, sold, and transferred to Purchaser, free and clear of all Liens, Claims, encumbrances, and interests, and Purchaser shall have standing and authority to assert such rights, claims, and causes of action and the Sellers and their estates shall have no continuing interest in such rights, claims, or causes of action or the proceeds thereof.

19.     Pursuant to section 365 of the Bankruptcy Code, the Debtors are authorized to assume the Purchased Contracts designated in the APA, cure the same (pursuant to the Cure Costs set forth on Schedule 2.3(c) to the APA, by further order of the Court, or by agreement with the applicable counterparty) as set forth in the APA, and assign, transfer, and/or sell the Purchased Contracts to the Purchaser; provided that the Purchaser may direct the removal of any such agreement from the list of Purchased Contracts set forth in Schedule 2.1(b)(iv) of the APA in accordance with the APA, in which case such agreement shall not constitute a Purchased Contract and Purchaser shall have no Liability with respect thereto. Purchaser may direct the removal of any agreement from the list of Purchased Contracts set forth in Schedule 2.1(b)(iv) of the APA (i) prior to the Closing Date, for any reason, and (ii) after the Closing Date, if the Cure Cost for such contract is subject to dispute as of the Closing and is determined by the Bankruptcy Court after the Closing to be greater than the amount set forth in Schedule 2.3(c) to the APA. Subject to the terms of the APA, the Purchaser shall pay the undisputed portion of the Cure Costs pursuant to and subject to the terms and limitations set forth in the APA.

20.     Effective upon the Closing, and without the need for any further action by any party, the Purchased Contracts, consistent with the provisions contained herein, shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, and, pursuant to section 365(k) of the Bankruptcy Code, following payment of the Cure Costs, the Debtors shall be relieved from any further liability with respect to the Purchased Contracts after such assignment and sale to the Purchaser.

21.     The Purchaser's (i) promises to pay any Cure Costs with respect to the Purchased Contracts and to perform the Debtors' obligations under the Purchased Contracts for the period on or after the Closing and (ii) representations made in section 6.6 of the APA that it has the financial capability to pay the Cure Costs and to pay the fees and expenses required to be paid by the Purchaser in connection with the Molycorp Minerals Sale, including with respect to the Purchased Contracts, based upon, among other things, the sale of the Cash Collateral to the Purchaser pursuant to the APA, shall constitute adequate assurance of its future performance under the Purchased Contracts as of the Closing within the meaning of sections 365(b)(l)(C) and (f)(2)(B) of the Bankruptcy Code.  To the extent the Purchased Assets will include any Purchased Contracts, Sellers will provide to the Purchased Contract counterparty not less than 5 days notice of its intent to assign such Purchased Contract to the Purchaser and such Purchased Contract counterparty shall have the right to object to such assumption and assignment solely on the basis that the Purchaser has not provided adequate assurance of future performance as it relates to the specific Purchased Contract.  Upon the expiration of such 5 day period, the Purchased Contract counterparty shall be bound by all the terms and conditions of this Order and such Purchased Contract, subject to the terms of the APA, shall be assumed and assigned to the Purchaser.

26

22.     All defaults or other obligations of the Debtors under the Purchased Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured, upon payment of the Cure Costs, and the Purchaser shall have no Liability arising or accruing under the Purchased Contracts on or prior to the Closing, except as otherwise expressly provided in the APA. The non-Debtor parties to the Purchased Contracts are barred from asserting against the Debtors, the Purchaser, and their respective successors and assigns, any default or unpaid obligation allegedly arising or occurring before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Purchased Contracts arising or incurred prior to the Closing, other than the Cure Costs. Any provisions in any Purchased Contract (including those of the type described in section 365(b)(2)) that prohibit or condition the assignment of such Purchased Contract or allow the non-Debtor party to such Purchased Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Purchased Contract, shall constitute unenforceable anti-assignment provisions that are void and of no force and effect.

23.     The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions or of the right of the Debtors or the Purchaser, as the case may be, to enforce every term and condition of the Purchased Contracts. The validity of the assumption, assignment, and sale of the Purchased Contracts to the Purchaser shall not be affected by any existing dispute between any of the Debtors and any non-Debtor party to such Purchased Contracts. Any party that may have had the right to consent to the assignment of any Purchased Contracts is deemed to have consented for the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code. There

27

shall be no accelerations, assignment fees, increases, or any other fees charged to the Purchaser or the Debtors as a result of the assumption, assignment, transfer, and/or sale of the Purchased Contracts. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all non-Debtor parties to the Purchased Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Purchaser any assignment fee, default, breach, or claim or pecuniary loss arising under or related to the Purchased Contracts existing as of the Petition Date or any assignment fee or condition to assignment arising by reason of the Closing other than with respect to the allowance and payment of any Cure Costs as provided in this Sale Order and in the APA.

24.    To the extent a counterparty to a Purchased Contract failed to timely object to a Cure Cost, such Cure Cost shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to or denying the validity and finality of the Cure Cost at any time, and such Cure Costs, when paid, shall completely revive any Purchased Contract to which it relates.

25.    The Purchaser is hereby authorized in connection with the consummation of the Molycorp Minerals Sale to allocate the Purchased Assets and the Purchased Contracts among its direct and indirect subsidiaries in a manner as it, in its sole discretion, deems appropriate and to assign, license, sublicense, transfer, or otherwise dispose of any of the Purchased Assets or the rights under any Purchased Contract to its direct and indirect subsidiaries with all of the rights and protections accorded under this Sale Order and the APA, and the Debtors shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing.

28

**No Fraudulent Transfer**

26.    The consideration provided by the Purchaser under the APA constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Voidable Transactions Act (and all similar statutes), (ii) fair consideration under the Uniform Voidable Transactions Act (and all similar statutes), and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory, district, or possession thereof.  The consideration provided by the Purchaser for the Purchased Assets the APA is fair and reasonable and the Molycorp Minerals Sale may not be avoided under section 363(n) of the Bankruptcy Code, and no Person shall be entitled to damages or other recovery pursuant to section 363(n) in respect of the APA or the Molycorp Minerals Sale.

**Good Faith**

27.    The APA and the Molycorp Minerals Sale are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the APA and the Molycorp Minerals Sale shall not affect the validity of the sale of the Purchased Assets to the Purchaser, unless this Sale Order is duly stayed pending such appeal.  The Purchaser is a good faith purchaser of the Purchased Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

**Additional Provisions**

28.    The Purchaser and its Affiliates, Oaktree, the 10% Notes Trustee, the Collateral Agent, and their respective predecessors, successors and assigns, and each of the foregoing Person's current and former shareholders, principals, officers, directors, employees, managers, trustees, partners, members, financial advisors, attorneys, agents, professionals,

29

accountants, investment bankers, consultants, and representatives, in each case in their capacity as such, shall neither have nor incur any liability to, or be subject to any action by the Debtors, the Debtors' estates, the Creditors' Committee, the DIP Agent, the lenders under the DIP Credit Agreement, the creditors of the Debtors, the Internal Revenue Service, any trustee or estate representative, or any of their respective predecessors, successors, and assigns arising out of any prepetition or postpetition action or omission in connection with, or related to the Molycorp Minerals Sale or the formulation, negotiation, investigation, preparation, prosecution, execution, dissemination, delivery, or implementation of the APA or any other document, instrument or agreement related thereto.

29.     All Persons that are in possession of some or all of the Purchased Assets as of or after the Closing are hereby deemed to have surrendered possession of such Purchased Assets to the Purchaser as of the Closing or at such time thereafter as the Purchaser may request. The Debtors agree to exercise reasonable best efforts to assist the Purchaser in assuring that all Persons that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets in which the Debtors hold an interest will surrender possession of the Purchased Assets either to (i) the Debtors before the Closing Date, or (ii) the Purchaser on or after the Closing Date.

30.     This Sale Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons, who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that

30

the Purchaser is the assignee and owner of the Purchased Assets free and clear of all Liens,

Claims, encumbrances, and interests (all such entities being referred to as "Recording Officers").

All Recording Officers are authorized to strike and shall be deemed to have stricken recorded

Liens, Claims, encumbrances, and interests against the Purchased Assets recorded or arising

prior to the date of the Closing, unless the APA expressly provides that the Purchaser is

acquiring the Purchased Assets subject to such Liens, Claims, encumbrances, and interests. A

certified copy of this Sale Order may be filed with the appropriate Recording Officers to

evidence cancellation of any recorded Liens, Claims, encumbrances, and other interests against

the Purchased Assets recorded or arising prior to the date of the Closing, other than Liens,

Claims, encumbrances, and other interests specifically assumed by Purchaser under the APA.

Nothing in the foregoing shall be deemed to vitiate or impair in any way the validity or effect of

the "Notice of Reclamation Plan Approval" recorded by the County of San Bernardino in the

official land use records of the County with respect to the mining operations conducted at

Mountain Pass on the Molycorp Minerals Remaining Property.

31.    Except as otherwise provided in paragraph 12 of this Order, to the greatest

extent available under applicable law, the Purchaser shall be authorized, as of the Closing, to

operate under any license, registration, and any governmental authorization or approval of the

Debtors with respect to the Purchased Assets, if applicable, and all such licenses, registrations,

and any governmental authorizations and approvals are deemed to have been, and hereby are,

directed to be transferred to the Purchaser as of the Closing Date. All existing licenses

applicable to the Purchased Assets shall remain in place for Purchaser's benefit until either new

licenses are obtained or existing licenses are transferred in accordance with applicable

administrative procedures. To the extent provided by section 525 of the Bankruptcy Code, no

31

Governmental Body may revoke or suspend any permit, registration, authorization, or approval relating to the Purchased Assets sold, transferred, assigned, or conveyed to the Purchaser solely on account of the filing or pendency of the Bankruptcy Cases or the consummation of the Molycorp Minerals Sale.

32.    Following the Closing, no holder of any Lien, Claim, encumbrance, or interest on or in the Purchased Assets or other party in interest may interfere with the Purchaser's use and enjoyment of the Purchased Assets based on or related to such Lien, Claim, encumbrance, or interest, or any actions that the Debtors may take in their Bankruptcy Cases, and no party may take any action to prevent, interfere with, or otherwise enjoin the consummation of the Molycorp Minerals Sale.

33.    The terms and provisions of the APA, the ancillary agreements, and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, the Purchaser, and their respective Affiliates, successors and assigns, the Debtors' estates, all creditors of (whether known or unknown), and holders of equity interests in the Debtors, and any affected third parties, notwithstanding the dismissal of any of the Debtors' Bankruptcy Cases, the conversion of any the Debtors' Bankruptcy Cases to a case or cases under Chapter 7, or any subsequent appointment of any trustee(s) under any Chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding and not subject to rejection or avoidance. The APA, the Molycorp Minerals Sale and this Sale Order shall be enforceable against and binding upon, and shall not be subject to rejection or avoidance by, any Chapter 7 or Chapter 11 trustee appointed in the Bankruptcy Cases. Further, nothing contained in any plan of reorganization or liquidation confirmed in these Bankruptcy Cases or any order confirming any

32

plan of reorganization or liquidation or any other order entered in these Bankruptcy Cases shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order.

34.    The APA and any related agreements, documents, or other instruments may be amended in accordance with the terms thereof and the 10% Noteholder Group Settlement without further order of the Court, provided that any such amendment does not have an adverse impact on the confirmation of the Plan with respect to the Downstream Debtors (as defined in the Bidding Procedures) or the Downstream Transferred Assets.

35.    The failure to include specifically any particular provision of the APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety with such amendments as may be made by the parties in accordance with this Sale Order.

36.    To the extent of any inconsistency between the provisions of this Sale Order, the APA, and any documents executed in connection therewith, the provisions contained in the Sale Order, the APA and any documents executed in connection therewith shall govern, in that order.

37.    The provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of all Liens, Claims, encumbrances, and interests shall be self-executing, and notwithstanding the failure of the Debtors, the Purchaser, or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof, all Liens, Claims, encumbrances, and other interests (other than those expressly assumed by the Purchaser or permitted to survive under the APA) on or against such Purchased Assets, if any, shall be deemed released, discharged, and terminated.

33

38.     From time to time, as and when requested by any Party, each Party to the APA shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other Party may reasonably deem necessary or desirable to consummate the Molycorp Minerals Sale, including such actions as may be necessary to vest, perfect or confirm, of record or otherwise, in Purchaser its right, title, and interest in and to the Purchased Assets. Any amounts that become payable by the Debtors to the Purchaser or any other entity pursuant to the APA (or any related agreements executed in connection therewith) (a) shall constitute allowed administrative expenses of the Debtors' estates under sections 503(b) and 507(a)(2) of the Bankruptcy Code, and (b) shall be paid by the Debtors in the time and manner provided for in the APA (and such related agreements) without further Court order.

39.     All distributions of ownership interests in the Purchaser to the 10% Noteholders, Oaktree, and any other entity entitled to such distributions shall be made by the Purchaser or its authorized agent. The Collateral Agent shall neither have nor assume any responsibility or liability for directing or making such distributions.

40.     This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding the provisions of Bankruptcy Rule 6004(h) and 6006(d), this Sale Order shall be effective and enforceable immediately and shall not be stayed. Time is of the essence in closing the Molycorp Minerals Sale and the Debtors and the Purchaser intend to close the Molycorp Minerals Sale as soon as practicable. Any party objecting to this Sale Order must timely file an appeal and pursue a stay, or risk its appeal being dismissed as moot.

34

ACTIVE 213893164v.3

41.     The findings and conclusions set forth herein and read into the record at the Sale and Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

42.     This Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased Assets to the Purchaser; (ii) adjudicate, if necessary, any and all disputes arising out of, concerning or otherwise relating in any way to the Molycorp Minerals Sale; and (iii) protect the Purchaser against any Liens, Claims, encumbrances, and interests in the Purchased Assets of any kind or nature whatsoever.

Dated: ___April 5___, 2016


THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

35

# EXHIBIT A

APA

ASSET PURCHASE AGREEMENT

AMONG

MOLYCORP MINERALS, LLC

THE OTHER SELLERS PARTY HERETO

AND

SECURE NATURAL RESOURCES LLC

DATED AS OF APRIL [4], 2016

ACTIVE 213897944
NAI-1500932710v12

**TABLE OF CONTENTS**

Page

I. DEFINITIONS...................................................................................... 1
    1.1   Certain Definitions ................................................................. 1
    1.2   Terms Defined Elsewhere in this Agreement........................... 10
    1.3   Other Definitional and Interpretive Matters ............................ 11
II. PURCHASE AND SALE OF ASSETS; ASSUMPTION OF LIABILITIES........... 13
    2.1   Purchase and Sale of Assets................................................ 13
    2.2   Excluded Assets ................................................................. 14
    2.3   Assumption of Liabilities ...................................................... 14
    2.4   Excluded Liabilities ............................................................. 15
    2.5   Cure Costs......................................................................... 16
    2.6   Non-Assignment of Assets.................................................... 16
    2.7   Previously Omitted Contracts ............................................... 17
    2.8   Further Conveyances and Assumptions ................................. 18
III. CONSIDERATION................................................................................ 18
    3.1   Consideration...................................................................... 18
    3.2   Payment of Purchase Price .................................................. 18
IV. CLOSING AND TERMINATION .............................................................. 19
    4.1   Closing Date ...................................................................... 19
    4.2   Deliveries by Sellers ........................................................... 19
    4.3   Deliveries by Purchaser....................................................... 19
    4.4   Termination of Agreement .................................................... 20
    4.5   Procedure Upon Termination ................................................ 21
    4.6   Effect of Termination........................................................... 21
V. REPRESENTATIONS AND WARRANTIES OF SELLERS............................. 22
    5.1   Organization and Good Standing............................................ 22
    5.2   Authorization of Agreement .................................................. 22
    5.3   Conflicts; Consents of Third Parties....................................... 23
    5.4   Real Property; Specified Mineral Properties ............................ 23
    5.5   Title to Purchased Assets .................................................... 24
    5.6   Intellectual Property; Intellectual Property Licenses ................ 24

**TABLE OF CONTENTS**
(continued)

|  |  |  | Page |
|---|---|---|---|
|  | 5.7 | Contracts | 25 |
|  | 5.8 | Litigation | 25 |
|  | 5.9 | Environmental Matters | 26 |
|  | 5.10 | Financial Advisors | 26 |
|  | 5.11 | Compliance with Laws | 26 |
|  | 5.12 | Taxes | 26 |
|  | 5.13 | No Other Representations or Warranties; Schedules | 27 |
| VI. | | REPRESENTATIONS AND WARRANTIES OF PURCHASER | 27 |
|  | 6.1 | Organization and Good Standing | 27 |
|  | 6.2 | Authorization of Agreement | 27 |
|  | 6.3 | Conflicts; Consents of Third Parties | 28 |
|  | 6.4 | Litigation | 28 |
|  | 6.5 | Financial Advisors | 28 |
|  | 6.6 | Financial Capability | 28 |
|  | 6.7 | Condition of the Purchased Assets | 29 |
| VII. | | BANKRUPTCY COURT MATTERS | 29 |
|  | 7.1 | Bankruptcy Court Filings | 29 |
|  | 7.2 | No Solicitation | 30 |
| VIII. | | COVENANTS | 30 |
|  | 8.1 | Access to Information | 30 |
|  | 8.2 | Actions Pending the Closing | 31 |
|  | 8.3 | Consents | 31 |
|  | 8.4 | Regulatory Approvals | 31 |
|  | 8.5 | Further Assurances | 31 |
|  | 8.6 | Publicity | 32 |
|  | 8.7 | Confidentiality | 32 |
|  | 8.8 | Conversion to Chapter 7 | 33 |
|  | 8.9 | Condemnation | 33 |
|  | 8.10 | Notification of Certain Matters | 34 |
|  | 8.11 | Oaktree Matters | 34 |

ACTIVE 213897944

**TABLE OF CONTENTS**
(continued)

Page

IX.    CONDITIONS TO CLOSING ............................................................. 34
  9.1    Conditions Precedent to Obligations of Purchaser .................... 34
  9.2    Conditions Precedent to Obligations of Sellers ......................... 35
  9.3    Conditions Precedent to Obligations of Purchaser and Sellers ............ 35
  9.4    Frustration of Closing Conditions ............................................ 36
X.    TAXES ...................................................................................... 36
  10.1    Transfer Taxes ..................................................................... 36
  10.2    Purchase Price Allocation .................................................... 36
  10.3    Certain Periodic Non-Income Taxes ..................................... 36
  10.4    Cooperation and Audits ........................................................ 37
XI.    MISCELLANEOUS .................................................................... 37
  11.1    No Survival of Representations and Warranties ..................... 37
  11.2    Expenses ............................................................................. 38
  11.3    Injunctive Relief .................................................................. 38
  11.4    Submission to Jurisdiction; Consent to Service of Process ............ 38
  11.5    Waiver of Right to Trial by Jury ............................................ 39
  11.6    Entire Agreement; Amendments and Waivers ...................... 39
  11.7    Governing Law ..................................................................... 39
  11.8    Notices ................................................................................. 40
  11.9    Severability .......................................................................... 41
  11.10  Assignment .......................................................................... 41
  11.11  Non-Recourse ...................................................................... 42
  11.12  Legal Representation ........................................................... 42
  11.13  Counterparts ........................................................................ 43
  11.14  Time Is of the Essence ........................................................ 43

## ASSET PURCHASE AGREEMENT

ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of April [4], 2016 (the "Effective Date"), among the entity identified on the signature page as Purchaser ("Purchaser"), the parties listed as "Sellers" on the signature page (collectively, "Sellers" and each a "Seller") and, for the limited purposes specified in this Agreement, Molycorp, Inc., a Delaware corporation (the "Company").

### RECITALS:

A.     Sellers are debtors and debtors in possession (together with certain of their Affiliates, the "Debtors") under title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on June 25, 2015 (the "Petition Date") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), where the Sellers' bankruptcy cases are jointly administered under Case No. 15-11357 (CSS) (collectively, the "Bankruptcy Case");

B.     Sellers are principally engaged in the business of mining and processing rare earth minerals at Sellers' facility located in San Bernardino County, California (the "Mountain Pass Facility"), from ore extracted from the Mineral Properties (defined below) at the Owned Real Property (defined below), and the operation of all businesses related thereto (the "Business");

C.     Sellers desire to sell to Purchaser the Purchased Assets (defined below) and transfer to Purchaser the Assumed Liabilities (defined below) and Purchaser desires to purchase from Sellers the Purchased Assets and assume the Assumed Liabilities, in each case upon the terms and conditions hereinafter set forth and subject to and in accordance with the Sale Order (defined below) of the Bankruptcy Court with respect thereto; and

D.     The Parties desire to consummate the proposed transaction as promptly as practicable after the Bankruptcy Court enters the Sale Order.

NOW, THEREFORE, the Parties hereby agree as follows:

### I. DEFINITIONS

1.1     Certain Definitions. For purposes of this Agreement, each of the following terms, when used herein with initial capital letters, has the meaning specified in this Section 1.1 or in the other Sections of this Agreement identified in Section 1.2:

"Affiliate" means, with respect to any Person, any other Person that, directly or indirectly, controls, is controlled by, or is under common control with, such Person, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction