Contract notifying such counterparties of the Cure Costs (if any) with respect to such Previously Omitted Contract and Sellers' intention to assume and assign such Previously Omitted Contract in accordance with this Section 2.7 with no adjustment to the Purchase Price. The Previously Omitted Contract Notice shall provide the counterparties to such Previously Omitted Contract with seven (7) days to object, in writing to Sellers and Purchaser, to the Cure Costs (if any) and the assumption, assignment and sale of the Previously Omitted Contract. If the counterparties, Sellers and Purchaser are unable to reach a consensual resolution with respect to the objection, Sellers will seek an expedited hearing before the Bankruptcy Court to determine the Cure Costs and approve the assumption, assignment and sale. If no objection is timely served on Sellers and Purchaser, Sellers shall obtain an Order of the Bankruptcy Court fixing the Cure Costs and approving the assumption of the Previously Omitted Contract.

2.8   Further Conveyances and Assumptions. From time to time following the Closing, Sellers and Purchaser will, and will cause their respective Affiliates to, execute, acknowledge and deliver all such further conveyances, notices, assumptions, assignments, releases and other instruments, and will take such further actions, as may be reasonably necessary or appropriate to assure fully to Purchaser and its respective successors or assigns, all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Purchaser under this Agreement and to assure fully to each Seller and its Affiliates and their successors and assigns, the assumption of the liabilities and obligations intended to be assumed by Purchaser under this Agreement, and to otherwise make effective the Transactions, except that nothing in this Section 2.8 will require Purchaser or any of its Affiliates to assume any Liabilities other than the Assumed Liabilities.

### III. CONSIDERATION

3.1   Consideration. The aggregate consideration for the Purchased Assets (the "Purchase Price") will be:

(a)   One Million Dollars ($1,000,000.00) to be satisfied in the form of a credit, on a pro rata basis (being $352,830 against the Oaktree Prepetition Claims (as defined in the Plan) secured under the Security Documents and $647,170 against the 10% Notes Claim (as defined in the Plan) secured under the Security Documents), against the principal amount of the Indebtedness that is secured under the Security Documents pursuant to section 363(k) of the Bankruptcy Code (the "Credit Bid Amount"), and

(b)   the assumption of the Assumed Liabilities.

3.2   Payment of Purchase Price. On the Closing Date, Purchaser will credit the Credit Bid Amount against the principal amount of the Indebtedness that is secured under the Security Documents pursuant to section 363(k) of the Bankruptcy Code.

-18-

ACTIVE 213897944
NAI-1500932710v12

## IV. CLOSING AND TERMINATION

4.1  Closing Date. Subject to the satisfaction of the conditions set forth in Article IX (or the waiver thereof by the Party entitled to waive that condition), the closing of the purchase and sale of the Purchased Assets and the assumption of the Assumed Liabilities provided for in Article II (the "Closing") will take place remotely via electronic communication at 9:00 a.m. (Eastern time) on the date that is three (3) Business Days following the satisfaction or waiver of the conditions set forth in Article IX (other than conditions that by their nature are to be satisfied at the Closing, but subject to the satisfaction or waiver of such conditions), or at such other place and time as the Parties may designate in writing; provided that the purchase and sale of the Specified Mineral Properties will be consummated through the Title Company, as applicable. The date on which the Closing is held is referred to in this Agreement as the "Closing Date."

4.2  Deliveries by Sellers. At the Closing, Sellers will deliver to Purchaser, the Collateral Agent or the Title Company, as applicable:

(a)  a duly executed bill of sale substantially in the form attached as Exhibit B (the "Bill of Sale");

(b)  a duly executed assignment and assumption agreement substantially in the form attached as Exhibit C (the "Assignment Agreement");

(c)  a duly executed assignment of the Purchased Intellectual Property, in a form suitable for recording with the U.S. Patent and Trademark Office, substantially in the form attached as Exhibit D (the "IP Assignment Agreement");

(d)  duly executed quitclaim deeds conveying title to the applicable Specified Mineral Properties, in recordable form, in a form reasonably acceptable to Purchaser and Sellers (the "Deed");

(e)  the officers certificate required to be delivered pursuant to Sections 9.1(a) and 9.1(b);

(f)  affidavits executed by each Seller that such Seller is not a foreign person within the meaning of Section 1445(f)(3) of the Code; and

(g)  all other deeds, endorsements, assignments and other instruments of conveyance and transfer, reasonably requested by Purchaser, to convey and assign the Purchased Assets to Purchaser and vest title therein in Purchaser.

4.3  Deliveries by Purchaser. At the Closing, Purchaser will deliver to the Company:

(a)  Evidence, in form and substance reasonably acceptable to Sellers, of a credit equal to the Credit Bid Amount as set forth in Section 3.1(a);

(b)  a duly executed Bill of Sale;

-19-

(c)    a duly executed Assignment Agreement;

(d)    a duly executed IP Assignment Agreement; and

(e)    the officers certificate required to be delivered pursuant to Sections 9.2(a) and 9.2(b).

4.4    Termination of Agreement. This Agreement may be terminated prior to the Closing as follows:

(a)    by Purchaser or the Company, if the Closing has not occurred by 5:00 p.m. Eastern time on April 15, 2016 (the "Termination Date"), provided that if the Closing has not occurred on or before the Termination Date due to a material breach of any representations, warranties, covenants or agreements contained in this Agreement by Purchaser or a Seller, then the breaching Party may not terminate this Agreement pursuant to this Section 4.4(a);

(b)    by mutual written consent of the Company and Purchaser;

(c)    by Purchaser, if Sellers breach any representation or warranty or any covenant or agreement contained in this Agreement, such breach would result in a failure of a condition set forth in Sections 9.1 or 9.3 and such breach has not been cured by the earlier of (i) ten (10) Business Days after the giving of written notice by Purchaser to Sellers of such breach and (ii) the Termination Date; provided that Purchaser shall not have the right to terminate this Agreement pursuant to this Section 4.4(c) if Purchaser is then in material breach of any representation, warranty, covenant or agreement contained in this Agreement that would result in the closing conditions set forth in Section 9.2(a) or 9.2(b) not being satisfied;

(d)    by the Company, if Purchaser breaches any representation or warranty or any covenant or agreement contained in this Agreement, such breach would result in a failure of a condition set forth in Sections 9.2 or 9.3 and such breach has not been cured by the earlier of (i) ten (10) Business Days after the giving of written notice by Sellers to Purchaser of such breach and (ii) the Termination Date; provided that Sellers shall not have the right to terminate this Agreement pursuant to this Section 4.4(d) if Sellers are then in material breach of any representation, warranty, covenant or agreement contained in this Agreement that would result in the closing conditions set forth in Section 9.1(a) or 9.1(b) not being satisfied;

(e)    by the Company or Purchaser, if there is in effect a Final Order of a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the Transactions; it being agreed that the Parties will promptly appeal any adverse determination which is not non-appealable and pursue such appeal with reasonable diligence unless and until this Agreement is terminated pursuant to this Section 4.4;

ACTIVE 213897944
NAI-1500932710v12

(f)  by Purchaser, if (i) the Sale Order is denied by the Bankruptcy Court and/or (ii) the Sale Order shall have been stayed, vacated, modified or supplemented without Purchaser's prior written consent.

(g)  by the Company, if the Sale Order has been entered and (i) the Company has provided Purchaser with written notice that it is prepared to consummate the Transactions, (ii) the conditions to Closing in Article IX have been satisfied (or waived, to the extent permissible, by the Party entitled to the benefit of such condition), other than those conditions that by their nature can only be satisfied at Closing; and (iii) the Closing Date does not occur within three (3) Business Days of the Company providing Purchaser with such notice;

(h)  by Purchaser, if the Sale Order has been entered and (i) Purchaser has provided Sellers with written notice that it is prepared to consummate the Transactions contemplated by this Agreement, (ii) the conditions to Closing in Article IX have been satisfied (or waived, to the extent permissible, by the Party entitled to the benefit of such condition), other than those conditions that by their nature can only be satisfied at Closing); and (iii) the Closing Date does not occur within three (3) Business Days of Purchaser providing Sellers with such notice;

(i)  by Purchaser if, prior to the Closing, any Seller files a plan of reorganization inconsistent with the terms of this Agreement or seeks to modify or withdraw the motion to approve the Sale Order or have the Bankruptcy Court enter an Order dismissing, or converting into cases under chapter 7 of the Bankruptcy Code, any Bankruptcy Case, or appointing a trustee in any of the Bankruptcy Cases or appointing a responsible officer or an examiner with enlarged powers relating to the operation of the Business (beyond those set forth in section 1106(a)(3) or (4) of the Bankruptcy Code) under Bankruptcy Code section 1106(b), or such an Order of dismissal, conversion or appointment is entered for any reason

(j)  by Purchaser, (i) if Sellers enter into or consummate an Alternative Proposal, or (ii) pursuant to Purchaser's rights under Section 8.9; or

(k)  by Purchaser or the Company, if under section 363(k) of the Bankruptcy Code, Purchaser is disallowed from credit bidding the Credit Bid Amount in payment of the Purchase Price as set forth in Section 3.1.

4.5  Procedure Upon Termination. In the event of termination pursuant to Section 4.4, the terminating Party will give written notice thereof to the other Parties, and this Agreement will terminate as described in Section 4.6, and the purchase of the Purchased Assets hereunder will be abandoned, without further action by Purchaser or Sellers.

4.6  Effect of Termination. In the event that this Agreement is terminated as provided herein, then each of the Parties will be relieved of its duties and obligations arising under this Agreement after the date of such termination and there will be no liability or obligation on Purchaser, any Seller or any of their respective Representatives,

-21-

except that (a) the provisions of this Section 4.6 and Article XI (other than Section 11.3) and, to the extent necessary to effectuate the foregoing enumerated provisions, Section 1.1, Section 1.2 and Section 1.3, will survive any such termination and will be enforceable, and (b) nothing in this Section 4.6 will be deemed to release any Party from liability for any material breach of its duties or obligations arising under this Agreement prior to termination. Further, without otherwise limiting the Debtors' rights under the Settlement Agreement, in the event that this Agreement is terminated as provided herein, then each of the Debtors will be automatically relieved of its duties and obligations arising under the Settlement Agreement with respect to the Molycorp Minerals Sale (as defined in the Settlement Agreement) and there will be no liability or obligation on the Debtors or their Representatives in connection therewith.

## V. REPRESENTATIONS AND WARRANTIES OF SELLERS

Sellers hereby jointly and severally represent and warrant to Purchaser that:

5.1   Organization and Good Standing. Each Seller is an entity duly organized, validly existing and in good standing (to the extent such term is applicable in the relevant jurisdiction) under the laws of the jurisdiction of its organization and, subject to the limitations imposed on such Seller as a result of having filed a petition for relief under the Bankruptcy Code, has the requisite power and authority to own, lease and operate its properties and to carry on its business as now conducted. Each Seller is duly qualified or licensed to do business in each jurisdiction in which the actions to be performed hereunder or in which the nature of its business or the ownership or leasing of its properties makes such qualification or licensing necessary for the operation of the Sellers' Business as now conducted, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a Seller Material Adverse Effect.

5.2   Authorization of Agreement. Subject to entry of the Sale Order, each Seller has the requisite power and authority to execute and deliver this Agreement and the Transaction Documents to which it is a party and to perform its respective obligations hereunder and thereunder. The execution and delivery of this Agreement and the Transaction Documents to which such Seller is a party and the consummation of the Transactions have been duly authorized by all requisite corporate or similar action on the part of each such Seller. This Agreement and the Transaction Documents to which such Seller is a party have been duly and validly executed and delivered, and each agreement, document or instrument contemplated hereby or thereby to be delivered at or prior to Closing will be duly and validly executed and delivered, by such Seller and (assuming the due authorization, execution and delivery by the other Parties and the entry of the Sale Order) this Agreement and the Transaction Documents to which such Seller is a party constitute legal, valid and binding obligations of such Seller enforceable against such Seller in accordance with its terms, subject to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

-22-

5.3     Conflicts; Consents of Third Parties.

(a)     Except as set forth on Schedule 5.3(a), the execution and delivery by each Seller of this Agreement and the Transaction Documents to which it is a party, the consummation of the Transactions and compliance by such Seller with any of the provisions hereof do not and will not conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, modification, cancellation or acceleration of any obligation or to loss of a material benefit under, or give rise to any obligation of any Seller to make any payment under or to the increased, modified, additional, accelerated or guaranteed rights or entitlements of any Person under, or result in the creation of any Liens upon any of the Purchased Assets or cancellation under any provision of (i) the certificate of incorporation and by-laws or comparable organizational documents of such Seller, (ii) subject to entry of the Sale Order, or any Purchased Contract, (iii) subject to entry of the Sale Order, any Order, or (iv) subject to entry of the Sale Order, any applicable Law, other than, in the case of clauses (ii), (iii) and (iv), such conflicts, violations, defaults, terminations, cancellations or accelerations that would not, individually or in the aggregate, reasonably be expected to be materially adverse to the ownership of the Purchased Assets or the Assumed Liabilities.

(b)     Except as set forth on Schedule 5.3(b) and except to the extent not required if the Sale Order is entered, no consent, waiver, approval, Order or authorization of, or declaration or filing with, or notification to, any Person or Governmental Body is required on the part of any Seller in connection with the execution and delivery of this Agreement or any other agreement, document or instrument contemplated hereby or thereby to which any Seller is a party, the compliance by Sellers with any of the provisions hereof or thereof, the consummation of the Transactions or the taking by Sellers of any other action contemplated hereby or thereby (with or without notice or lapse of time, or both), except for (i) the entry of the Sale Order, and (ii) immaterial consents, waivers, approvals, Orders, authorizations, declarations, filings and notifications.

5.4     Real Property; Specified Mineral Properties.

(a)     Schedule 5.4(a)(i) sets forth the legal descriptions of the Owned Real Property. Sellers have good and marketable fee simple title to the Owned Real Property and the Specified Mineral Properties, to the extent applicable, free and clear of all Liens (except for Permitted Exceptions). Except as set forth on Schedule 5.4(a)(ii), none of the Owned Real Property is subject to any leases or tenancies or other rights of occupancy. Other than Purchaser's right to purchase the Specified Mineral Properties, no Person has any written or oral agreement or option, right of first refusal, right of first offer, right of first negotiation or rights for the purchase, sale use or other disposition of the Specified Mineral Properties. To the Knowledge of Sellers, no Seller has received written notice from any Governmental Body that any of Specified Mineral Properties or the business conducted by Sellers thereon is in violation of any use or occupancy restriction, limitation, easement, condition or covenant of record or Law, other than with respect to such violations as would not, individually or in the aggregate, reasonably be

-23-

ACTIVE 213897944
NAI-1500932710v12

expected to be material to the ownership of the Specified Mineral Properties or the Assumed Liabilities.

(b) Except as would not reasonably be expected to, individually or in the aggregate, be material to the ownership of the Specified Mineral Properties, the Purchased Assets or the Assumed Liabilities: (i) as of the Effective Date, there is no pending or, to the Knowledge of Sellers, threatened in writing Legal Proceeding relating to the Specified Mineral Properties or other matters affecting adversely the current use, occupancy or value of the Specified Mineral Properties; (ii) the Specified Mineral Properties does not serve any adjoining property for any purpose inconsistent with the ownership of the Specified Mineral Properties; and (iii) to the Knowledge of Sellers, the current use of the Specified Mineral Properties by Sellers does not violate any instrument of record or agreement affecting the Specified Mineral Properties or any applicable Law, except as set forth on Schedule 5.4(b).

5.5  Title to Purchased Assets. Except as set forth on Schedule 5.5, Sellers own the Purchased Assets free and clear of all Liens (other than Permitted Exceptions) and, subject to Section 2.6 and the entry of the Sale Order, at the Closing, Purchaser will be vested with good and valid title to such Purchased Assets, free and clear of all Liens (other than Permitted Exceptions and Assumed Liabilities), to the fullest extent permissible under Law. No Person other than Sellers hold rights, title and interest in the Purchased Assets.

5.6  Intellectual Property; Intellectual Property Licenses.

(a) Schedule 5.6(a) sets forth an accurate and complete list of all Purchased Intellectual Property. The Purchased Intellectual Property is valid, subsisting, and enforceable. Sellers exclusively own all right, title and interest to, or have a right to use, the Purchased Intellectual Property, and can convey such property free and clear of Liens pursuant to the Sale Order.

(b) To the Knowledge of Sellers, (i) no Person is engaging in any activity that infringes any Purchased Intellectual Property or has engaged in any such activity during the three (3) years prior to the Effective Date, and (ii) no Claim has been asserted or threatened against any Seller that the use of any Purchased Intellectual Property infringes or violates the Intellectual Property of any third party.

(c) All Purchased Intellectual Property created by employees of Sellers in the course of employment is owned by Sellers. No current or former employee, consultant, independent contractor or other Person has any ownership interest in any Purchased Intellectual Property.

(d) Except pursuant to the Purchased Contracts, to the Knowledge of Sellers, no other Person has any right to use any of the Purchased Intellectual Property. Except pursuant to the Purchased Contracts, Sellers do not pay any royalties or other consideration for the right to use any Intellectual Property rights of third parties licensed to Sellers pursuant to Purchased Intellectual Property Licenses.

-24-

(e)     Neither the execution of this Agreement nor the consummation of the Transactions contemplated by this Agreement will result in the (i) loss or impairment of any right of Purchaser to own, use, practice or otherwise exploit any Purchased Intellectual Property; (ii) grant of any license, right, covenant or ownership interest to any Person with respect to any Purchased Intellectual Property; or (iii) Purchaser being bound by, or subject to, any non-compete or other restriction on the operation or scope of its business. As of immediately following the Closing, Purchaser will have the right to exercise all of its current rights under agreements granting rights with respect to the Purchased Intellectual Property of a third Person to materially the same extent and in materially the same manner as Sellers would have been able to had the transaction contemplated by this Agreement not occurred, and without the payment of any additional consideration solely as a result of such transaction and without the necessity of any third party consents.

5.7   Contracts.

(a)   Schedule 5.7(a) sets forth an accurate and complete list of all Contracts related to the Purchased Assets, including any and all amendments thereto. No Seller has assigned, delegated, or otherwise transferred to any third party any of its rights or obligations with respect to any Purchased Contract, and each such Purchased Contract is in full force and effect and is a valid and binding obligation of Seller party thereto and, to the Knowledge of Sellers, the other parties thereto in accordance with its terms and conditions, except as such validity and enforceability may be limited by (a) bankruptcy, insolvency or other similar laws affecting the enforcement of creditors' rights generally, (b) equitable principles of general applicability (whether considered in a proceeding at law or in equity), and (c) the obligation to pay Assumed Cure Costs under Section 2.5.

(b)   Except as set forth on Schedule 5.7(b), no Seller has received any notice of any default or violation under, or the intention of any party to terminate any such Purchased Contract. Except as set forth on Schedule 5.7(b), to the Knowledge of Sellers, no event has occurred which, with the passage of time or the giving of notice, or both, would constitute a default under or a violation of any such Contract or would cause the acceleration of any obligation of any Seller or, to the Knowledge of Sellers, any other party thereto or the creation of a Lien (other than Permitted Exceptions) upon any Purchased Asset, except for such events, in each such case, that would not reasonably be expected to be material to the ownership of any Purchased Asset. Sellers have delivered or made available to Purchaser copies of all of the Contracts related to the Purchased Assets in effect as of the Effective Date.

5.8   Litigation.   Except as set forth on Schedule 5.8 and the Bankruptcy Case and except for Legal Proceedings that do not have and would not reasonably be expected to have a material adverse effect on the ability of Sellers to consummate the Transactions in a timely manner, there are no Legal Proceedings pending or, to the Knowledge of Sellers, threatened in writing against any Seller that involve or relate to any of the Transactions or affect any of the Purchased Assets that would reasonably be

-25-

expected to adversely affect the ownership or use by Purchaser of the Purchased Assets after the Closing.

5.9   Environmental Matters. Except as set forth on Schedule 5.9, as of the Effective Date, (a) with respect to the Purchased Assets, no Seller is the subject of any outstanding Order respecting (i) Environmental Laws or Hazardous Materials or (ii) a Remedial Action that would materially and adversely affect the Purchased Assets, (b) there is no investigation by any Governmental Body or Legal Proceeding pending, or, to the Knowledge of Sellers, threatened in writing that could reasonably be expected to result in Sellers incurring any material Liability pursuant to any applicable Environmental Law in connection with the Purchased Assets, (c) to the Knowledge of Sellers, there has been no Release of Hazardous Materials and, to the Knowledge of Sellers, no Person has been exposed to Hazardous Materials at, to, on, under or from the Owned Real Property in a manner that reasonably could be expected to materially and adversely affect the Purchased Assets under Environmental Laws, and (d) Sellers are and, during the five (5) years before the Effective Date, have been in compliance in all material respects with Environmental Laws with respect to the Owned Real Property and the Purchased Assets. Sellers have delivered or made available to Purchaser copies of all reports, assessments or tests with respect to compliance of the Owned Real Property with any Environmental Laws or the presence or Release of Hazardous Material which are in the possession of any Seller as of the Effective Date.

5.10   Financial Advisors. Sellers have not incurred any Liability, contingent or otherwise, for financial advisor, brokerage or finders' fees or agents' commissions or other similar payment in connection with this Agreement or the Transactions for which Purchaser is or will become liable.

5.11   Compliance with Laws. Except as set forth on Schedule 5.11, since January 1, 2012, Sellers have conducted, and Sellers are presently conducting, the Business in material compliance with all applicable Laws. Except as set forth in Schedule 5.11, no Seller has received any written notice of or, to the Knowledge of Sellers, been charged with the alleged or actual violation of any Laws applicable to or affecting the Purchased Assets, nor, to the Knowledge of Sellers, is there any pending or threatened notice of such violation, including under any Permit, that could reasonably be expected to result in Sellers incurring material Liability.

5.12   Taxes. Except as set forth in Schedule 5.12, (a) Sellers have, in respect of the Purchased Assets, filed all material Tax Returns which are required to be filed and have paid all material Taxes which have become due pursuant to such Tax Returns, except to the extent payment of any such Tax is prohibited by the Bankruptcy Court or applicable Law; (b) all such Tax Returns are complete and accurate in all material respects; (c) no Seller is currently the beneficiary of any extension of time within which to file any such Tax Return; and (d) to the Knowledge of Sellers, there is no action, suit, investigation, audit, claim or assessment pending or proposed or threatened with respect to Taxes associated with the Purchased Assets.

5.13  No Other Representations or Warranties; Schedules. Except for the representations and warranties contained in this Article V (as modified by the Schedules), none of Sellers nor any other Person makes any other express or implied representation or warranty with respect to Sellers, the Purchased Assets, the Assumed Liabilities or the Transactions, and each Seller disclaims any other representations or warranties, whether made by Sellers, any Affiliate of Sellers, or any of Sellers' or their Affiliates' respective Representatives. Except for the representations and warranties contained in this Article V (as modified by the Schedules), each Seller (a) expressly disclaims and negates any representation or warranty, expressed or implied, at common law, by statute, or otherwise, relating to the condition of the Purchased Assets (including any implied or expressed warranty of merchantability or fitness for a particular purpose, or of conformity to models or samples of materials) and (b) disclaims all liability and responsibility for any representation, warranty, projection, forecast, statement (including the Disclosure Statement with respect to the Plan), or information made, communicated, or furnished (orally or in writing) to Purchaser or its Affiliates or Representatives pursuant to Section 8.1 or otherwise (including any opinion, information, projection, or advice that may have been or may be provided to Purchaser by any Representative of Sellers or any of its Affiliates). Sellers make no representations or warranties to Purchaser regarding the probable success or profitability of the Purchased Assets or the use thereof. The disclosure of any matter or item in any Schedule will not be deemed to constitute an acknowledgment that any such matter is required to be disclosed or is material or that such matter could result in a Seller Material Adverse Effect.

## VI. REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Sellers that:

6.1  Organization and Good Standing. Purchaser is an entity duly organized, validly existing and in good standing under the laws of the state of its organization.

6.2  Authorization of Agreement. Purchaser has the requisite power and authority to execute and deliver this Agreement and the Transaction Documents to which it is a party and to perform its obligations hereunder and thereunder. The execution and delivery of this Agreement and the Transaction Documents to which it is a party and the consummation of the Transactions have been duly authorized by all requisite corporate or similar action on the part of Purchaser. This Agreement and the Transaction Documents to which Purchaser is a party have been duly and validly executed and delivered, and each agreement, document or instrument contemplated hereby or thereby to be delivered at or prior to the Closing will be duly executed and delivered by Purchaser and (assuming the due authorization, execution and delivery by the other Parties) this Agreement and the Transaction Documents to which Purchaser is a party constitutes legal, valid and binding obligations of Purchaser enforceable against it in accordance with its respective terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including

principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

6.3    Conflicts; Consents of Third Parties. (a) The execution and delivery by Purchaser of this Agreement and the Transaction Documents to which Purchaser is a party, the consummation of the Transactions, or compliance by Purchaser with any of the provisions hereof or thereof do not conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination or cancellation under any provision of (i) the certificate of incorporation and by-laws or comparable organizational documents of Purchaser, (ii) any Contract to which Purchaser is a party or by which any of the properties or assets of Purchaser are bound, (iii) any Order, or (iv) any applicable Law, other than, in the case of clauses (ii), (iii) and (iv), such conflicts, violations, defaults, terminations or cancellations that would not reasonably be expected to have, individually or in the aggregate, a Purchaser Material Adverse Effect.

(b)    No consent, waiver, approval, Order or authorization of, or declaration or filing with, or notification to, any Person or Governmental Body is required on the part of Purchaser in connection with the execution and delivery of this Agreement and the Transaction Documents to which Purchaser is a party, the compliance by Purchaser with any of the provisions hereof or thereof, the consummation of the Transactions, the taking by Purchaser of any other action contemplated hereby or thereby, except for (i) the entry of the Sale Order, (iii) the matters identified on Schedule 6.3(b), and (iv) immaterial consents, waivers, approvals, Orders, authorizations, declarations, filings and notifications.

6.4    Litigation. There are no Legal Proceedings pending or, to the knowledge of Purchaser, threatened against Purchaser, or to which Purchaser is otherwise a party before any Governmental Body, which, if adversely determined, would reasonably be expected to have, individually or in the aggregate, a Purchaser Material Adverse Effect. Purchaser is not subject to any Order except to the extent the same would not reasonably be expected to have, individually or in the aggregate, a Purchaser Material Adverse Effect.

6.5    Financial Advisors. Except as set forth on Schedule 6.5, no Person has acted, directly or indirectly, as a broker, finder or financial advisor for Purchaser in connection with the Transactions and no Person is entitled to any fee or commission or like payment in respect thereof.

6.6    Financial Capability. As of the date hereof, assuming the receipt by Purchaser of the proceeds contemplated by the Credit Bid Agreement, at the Closing, Purchaser will have sufficient funds in cash to pay the fees and expenses required to be paid by Purchaser in connection with the Transactions and to effect the Transactions. Assuming (a) the accuracy of the representations and warranties in Article V, (b) the performance by Sellers of their obligations hereunder, (c) the satisfaction of the conditions precedent to Purchaser's obligations to close under Article IX, and (d) the receipt by Purchaser of the proceeds contemplated by the Credit Bid Agreement, upon

-28-