the consummation of the Transactions, (a) Purchaser will not be insolvent as defined in section 101 of the Bankruptcy Code, (b) Purchaser will not be left with unreasonably small capital, (c) Purchaser will not have incurred debts beyond its ability to pay such debts as they mature, and (d) the capital of Purchaser will not be impaired.

6.7 <u>Condition of the Purchased Assets</u>. Notwithstanding anything contained in this Agreement to the contrary, Purchaser acknowledges and agrees that Sellers are not making any representations or warranties whatsoever, express or implied, beyond those expressly given by Sellers in <u>Article V</u> (as modified by the Schedules), and Purchaser acknowledges and agrees that, except for the representations and warranties contained therein, the Purchased Assets are being transferred on a "where is" and, as to condition, "as is" basis. Purchaser acknowledges that it has conducted to its satisfaction its own independent investigation of the Purchased Assets and, in making the determination to proceed with the Transactions, Purchaser has relied on the results of its own independent investigation.

## VII. BANKRUPTCY COURT MATTERS

7.1 <u>Bankruptcy Court Filings</u>. Sellers will pursue diligently the entry of the Sale Order. Purchaser agrees that it will promptly take such actions as are reasonably requested by Sellers to assist in obtaining entry of the Sale Order as it relates to the Transactions and a finding of adequate assurance of future performance by Purchaser of the Purchased Contracts, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under this Agreement. In the event that the entry of the Sale Order is appealed or a stay pending appeal is sought, Sellers will oppose the appeal or the stay pending appeal, seek the dismissal of any appeal (including a petition for certiorari, motion for rehearing, reargument, reconsideration or revocation), and consult with Purchaser regarding the status of any such actions. Sellers will give Purchaser reasonable advance notice of any hearings regarding the motions required to obtain the issuance of the Sale Order and Purchaser will have the right to attend and seek to be heard at any such hearings. Sellers shall consult with Purchaser and its representatives concerning any Order of the Bankruptcy Court and the Bankruptcy Case, in each case, solely to the extent affecting this Agreement or the Transactions, and provide Purchaser with copies of applications, pleadings, notices, proposed Orders and other documents relating to such proceedings, in each case, solely to the extent relating to this Agreement or the Transactions, as soon as reasonably practicable prior to any submission thereof to the Bankruptcy Court. Sellers further covenant and agree that the terms of the Plan or any other reorganization plan submitted to the Bankruptcy Court or any other court by or with the support of Sellers for confirmation shall not conflict with, supersede, abrogate, nullify or restrict the terms of this Agreement, or in any way prevent or interfere with the consummation or performance of the Transactions contemplated by this Agreement. The Parties agree that the entry of the Sale Order and the approval by the Bankruptcy Court of the Transactions contemplated by this Agreement shall not be a condition to confirmation of the Plan. The Parties further agree that the Transactions contemplated by this Agreement shall only be approved to the extent that such Transactions do not

have an adverse impact on the confirmation of the Plan with respect to the Downstream Debtors or any of the Downstream Transferred Assets.

7.2   No Solicitation. From and after the Effective Date until the Closing, except as directed by the Bankruptcy Court: (a) Sellers will not, and will cause their Representatives and Affiliates not to, initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by, any Person (excluding Purchaser and its agents and Representatives) regarding an Alternative Proposal without the prior written consent of Purchaser, and (b) Sellers will not enter into negotiations with, provide any information to, or enter into any agreements or other instruments with, any prospective buyers of the Purchased Assets (other than Purchaser and its agents and Representatives) concerning any Alternative Proposal or perform any other acts related thereto.

## VIII. COVENANTS

8.1   Access to Information.

(a)   From the Effective Date through the Closing Date, Purchaser will be entitled, through its Representatives, to make such investigation of the Purchased Assets and the Assumed Liabilities as it reasonably requests. Any such investigation and examination will be conducted upon reasonable advance notice during normal business hours and under reasonable circumstances and will be subject to restrictions under applicable Law. Sellers will direct and use their commercially reasonable efforts to cause their respective Representatives to reasonably cooperate with Purchaser and Purchaser's Representatives in connection with such investigation and examination, and Purchaser and its Representatives will reasonably cooperate with Sellers and their Representatives. Notwithstanding anything herein to the contrary, no such investigation or examination will be permitted to the extent that it would require Sellers to disclose information that would cause material competitive harm to a Seller or would violate attorney-client privilege. No investigation by Purchaser prior to or after the Effective Date will affect or be deemed to modify any of the representations, warranties, covenants or agreements of Sellers contained in this Agreement. Sellers will promptly deliver to Purchaser all pleadings, motions, notices, statements, schedules, applications, reports and other papers filed in any other judicial or administrative proceeding related to the Purchased Assets and the Transactions.

(b)   For a period of three years after the Closing Date, Sellers will retain the Records and Other Information and will, upon reasonable written notice by Purchaser, afford Purchaser's Representatives reasonable access (including the right, at Purchaser's sole cost and expense, to make photocopies) during normal business hours to such Records and Other Information; provided that Purchaser will be responsible for the costs of storing (inclusive of related packing and shipping costs) and maintaining such Records and Other Information for such three-year period. At the end of such three-year period, Sellers shall give Purchaser a reasonable opportunity to segregate and remove such Records and Other Information as Purchaser may select;

-30-

provided that Sellers may (in Seller's sole discretion and at Sellers' sole cost and expense) make and retain copies of such Records and Other Information.

8.2 <u>Actions Pending the Closing</u>. Except (i) as required by applicable Law, (ii) as otherwise expressly contemplated by this Agreement, or (iii) with the prior written consent of Purchaser, during the period from the Effective Date to and through the Closing Date, Sellers will:

(a) use commercially reasonable efforts to maintain the Purchased Assets in their current condition;

(b) not remove or permit to be removed from the Owned Real Property any Purchased Asset;

(c) not enter into, renew, or modify any material Contract related to the Purchased Assets;

(d) not sell, lease, license, encumber, subject to a Lien, divest, cancel, abandon or allow to lapse or expire, or otherwise transfer or dispose of any Purchased Assets (including any Purchased Intellectual Property);

(e) take reasonable actions to defend and protect the Purchased Assets from infringement or deterioration, all in accordance with the Limited Operations Plan; and

(f) comply with applicable Laws in all material respects.

8.3 <u>Consents</u>. Sellers and Purchaser will use their commercially reasonable efforts to obtain at the earliest practicable date all consents and approvals contemplated by this Agreement, including the consents and approvals referred to in <u>Section 5.3(b)</u> and the Necessary Consents, except that none of Sellers or Purchaser will be obligated to pay any consideration therefor to any third party from whom consent or approval is requested or to initiate any litigation or proceedings to obtain any such consent or approval (except to the extent applicable under <u>Section 8.4</u>).

8.4 <u>Regulatory Approvals</u>. Each Party will use commercially reasonable efforts to furnish to each other Party all information required for any application or other filing to be made pursuant to any applicable Law in connection with the Transactions. Each such Party will promptly inform the other Parties of any oral communication with, and provide copies of written communications with, any Governmental Body regarding any such filings or any such transaction. No Party will independently participate in any formal meeting with any Governmental Body in respect of any such filings, investigation, or other inquiry without giving the other Parties prior written notice of the meeting and, to the extent permitted by such Governmental Body, the opportunity to attend, participate or both.

8.5 <u>Further Assurances</u>. Subject to the other provisions of this Agreement, Purchaser and each Seller will use its commercially reasonable efforts to (a) take all

-31-

actions necessary or appropriate to consummate the Transactions, (b) provide the other Parties with reasonable cooperation and take such actions as the other Parties may reasonably request in connection with the consummation of the Transactions, (c) work in good faith to effectuate the transfer of the Specified Mineral Properties, including taking reasonable steps necessary to transfer the unpatented mining claims and to sever any mineral rights from the Owned Real Property, (d) following the Closing, execute and deliver such additional documents, instruments, assignments, conveyances and assurances, and take such further actions as may be reasonably required to carry out the provisions of this Agreement and give effect to the Transactions, and (d) cause the fulfillment at the earliest practicable date of all of the conditions to its obligations to consummate the Transactions. Without limiting the foregoing, Purchaser and each Seller will use its commercially reasonable efforts to defend any Legal Proceedings that would prevent the condition to Closing described in Section 9.3(a) from being satisfied, including seeking to have any stay or temporary restraining order entered by any court or other Governmental Body with respect thereto vacated or reversed, and will cooperate with each other Party in connection with the foregoing.

8.6   Publicity. The initial press release concerning this Agreement and the Transactions will be in substantially the form previously agreed by Purchaser and the Company. Prior to the Closing, none of the Parties will issue any press release concerning this Agreement or the Transactions without obtaining the prior written approval of Purchaser and the Company, which approval will not be unreasonably withheld, conditioned or delayed, unless, in the sole judgment of Purchaser or the Company, as applicable, disclosure is otherwise required by applicable Law or by the Bankruptcy Court with respect to filings to be made with the Bankruptcy Court in connection with this Agreement and the Party intending to make such release uses its commercially reasonable efforts consistent with such applicable Law or Bankruptcy Court requirement to consult with the other Parties with respect to the text thereof. After the Closing, the Parties may issue public announcements regarding the Transactions, provided that such announcements, in the case of announcements made by Sellers, do not disclose the specific terms or conditions of this Agreement except where such terms and conditions have already been disclosed as required by Law, applicable stock exchange regulation or in filings that any Seller has made in the Bankruptcy Court, except that the issuing party will use its commercially reasonable efforts consistent with such applicable Law or Bankruptcy Court requirement to consult with the other Parties with respect to the text thereof.

8.7   Confidentiality. Purchaser acknowledges that Evaluation Material (as defined in the Confidentiality Agreements) has been, and in the future will be, provided to it in connection with this Agreement, including under Section 8.1, and is subject to the terms of the confidentiality agreements dated December 17, 2015 (as amended as of January 19, 2016) and January 19, 2016 between the Company and each of JHL Capital Group Master Fund L.P. and QVT Financial LP (together the "Confidentiality Agreements"), the terms of which are incorporated herein by reference. Purchaser acknowledges and understands that this Agreement may be publicly filed in the Bankruptcy Court and that, except as prohibited herein, such disclosure will not be

-32-

deemed to violate any confidentiality obligations owing to Purchaser, whether pursuant to this Agreement, the Confidentiality Agreements or otherwise. Effective upon, and only upon, the Closing, the Confidentiality Agreements will terminate solely as they relate to the Purchased Assets and Assumed Liabilities. Sellers acknowledge that from and after the Closing, all non-public information relating to the Purchased Assets and the Assumed Liabilities, will be valuable and proprietary to Purchaser and its Affiliates. Sellers agree that, from and after the Closing, no Seller will disclose to any Person any information relating to Purchaser and its Affiliates, the Purchased Assets or the Assumed Liabilities, except as required by Law or as otherwise becomes available in the public domain other than through any action by any Seller in violation of its obligations under this Section 8.7. Sellers acknowledge and agree that the remedies at law for any breach or threatened breach of this Section 8.7 by any Seller are inadequate to protect Purchaser and its Affiliates and that the damages resulting from any such breach are not readily susceptible to being measured in monetary terms. Accordingly, without prejudice to any other rights or remedies otherwise available to Purchaser or its Affiliates, each party acknowledges and agrees that upon any breach or threatened breach by a Seller of the terms and conditions of this Section 8.7, Purchaser and its Affiliates, as applicable will be entitled to immediate injunctive relief and to seek an order restraining any threatened or future breach from any court of competent jurisdiction without proof of actual damages or posting of any bond in connection with any such remedy. The provisions of this Section 8.7 will survive the Closing.

    8.8    Conversion to Chapter 7. The Parties agree that the Plan shall be withdrawn as to the Molycorp Minerals Debtors (as defined in the Plan). The Parties further agree to work in good faith until the Effective Date (as defined in the Plan) to determine whether a chapter 11 plan for the Molycorp Minerals Debtors can be confirmed. If the Parties determine, in good faith, as of the Effective Date (as defined in the Plan), that a chapter 11 plan for the Molycorp Minerals Debtors cannot be confirmed, the Molycorp Minerals Debtors may convert their cases from chapter 11 to chapter 7 of the Bankruptcy Code.

    8.9    Condemnation. If, prior to the Closing, all or any part of the Specified Mineral Properties is taken by eminent domain (or is the subject of a pending taking that has not yet been consummated), then Sellers will promptly notify Purchaser of this fact. If such taking affects all or any material portion of the Specified Mineral Properties, then Purchaser may terminate this Agreement by giving notice to Sellers not later than three (3) Business Days after the giving of Sellers notice. If less than a material portion of the Specified Mineral Properties is affected by a taking or if Purchaser elects not to terminate this Agreement as aforesaid, then the sale of the Specified Mineral Properties will be consummated as herein provided without any adjustment to the Purchase Price (except to the extent of any condemnation award received by Sellers prior to the Closing) and Sellers will assign to Purchaser at the Closing all of Sellers' right, title and interest in and to all awards, if any, for the taking, and Purchaser will be entitled to receive and keep all awards for the taking of the Owned Real Property or portion thereof.

-33-

8.10  Notification of Certain Matters. Sellers shall promptly inform Purchaser in writing of (i) the occurrence or non-occurrence of any event, the occurrence or non-occurrence of which would cause any of the representations or warranties in this Agreement of any Seller to be untrue or inaccurate in any material respect at or prior to the Closing Date and (ii) any material failure of any Seller to comply with or satisfy any covenant, condition or agreement to be complied with or satisfied by it under this Agreement; provided, however, that the delivery of any notice pursuant to this Section 8.10 shall not limit or otherwise affect the remedies available to Purchaser under this Agreement.

8.11  Oaktree Matters. On the Closing Date, in accordance with the terms and conditions of the Credit Bid Agreement, Purchaser shall issue to Oaktree its pro rata share (35.283%) of the total number of common units issued by Purchaser.

## IX. CONDITIONS TO CLOSING

9.1  Conditions Precedent to Obligations of Purchaser. The obligation of Purchaser to consummate the Transactions is subject to the fulfillment, at or prior to the Closing, of each of the following conditions (any or all of which may be waived by Purchaser in whole or in part to the extent permitted by applicable Law):

(a)  (i) the representations and warranties of Sellers contained in this Agreement that are not qualified by materiality or Seller Material Adverse Effect or similar qualification shall be true and correct in all material respects with respect to the Purchased Assets and Assumed Liabilities on and as of the Closing, except to the extent expressly made as of an earlier date, in which case such representations and warranties shall be true and correct in all material respects as of such earlier date, and (ii) the representations and warranties of Sellers contained in this Agreement that are qualified by materiality or Seller Material Adverse Effect or similar qualification shall be true and correct in all respects with respect to the Purchased Assets and Assumed Liabilities on and as of the Closing, except to the extent expressly made as of an earlier date, in which case such representations and warranties shall be true and correct in all respects as of such earlier date, and Purchaser shall have received a certificate signed by an authorized officer of each Seller on behalf of such Seller, dated the Closing Date, to the foregoing effect;

(b)  Sellers shall have performed and complied in all material respects with all obligations and agreements required in this Agreement to be performed or complied with by them prior to or on the Closing Date, and Purchaser shall have received a certificate signed by an authorized officer of each Seller on behalf of such Seller, dated the Closing Date, to the forgoing effect;

(c)  Since December 31, 2014, there shall have been no Seller Material Adverse Effect with respect to the Purchased Assets or Assumed Liabilities, and Purchaser shall have received a certificate signed by an authorized officer of each Seller on behalf of such Seller, dated the Closing Date, to the foregoing effect;

-34-

(d) Sellers shall have delivered, or caused to be delivered, to Purchaser all of the items set forth in Section 4.2;

(e) There shall be no (i) pending challenge or contest to the validity, amount, perfection, or priority of the Claims of the noteholders, the Trustee, the Collateral Agent, or the security under the Security Documents, or otherwise that would affect, impair, or otherwise limit Purchaser's ability to credit bid the Credit Bid Amount, or any such challenge or contest shall have been resolved to the satisfaction of Purchaser in its sole and absolute discretion or (ii) pending or prior action, claim or proceeding under or in connection with section 506(c) of the Bankruptcy Code that has not been resolved to the satisfaction of Purchaser in its sole and absolute discretion; and

(f) the Sale Order shall have become a Final Order.

9.2 Conditions Precedent to Obligations of Sellers. The obligations of Sellers to consummate the Transactions are subject to the fulfillment, at or prior to the Closing, of each of the following conditions (any or all of which may be waived by Sellers in whole or in part to the extent permitted by applicable Law):

(a) (i) the representations and warranties of Purchaser contained in this Agreement that are not qualified by materiality or Purchaser Material Adverse Effect or similar qualification shall be true and correct in all material respects on and as of the Closing, except to the extent expressly made as of an earlier date, in which case such representations and warranties shall be true and correct in all material respects as of such earlier date, and (ii) the representations and warranties of Purchaser contained in this Agreement that are qualified by materiality or Purchaser Material Adverse Effect or similar qualification shall be true and correct in all respects on and as of the Closing, except to the extent expressly made as of an earlier date, in which case such representations and warranties shall be true and correct in all respects as of such earlier date, and Sellers shall have received a certificate signed by an authorized officer of Purchaser on behalf of Purchaser, dated the Closing Date, to the foregoing effect;

(b) Purchaser shall have performed and complied in all material respects with all obligations and agreements required in this Agreement to be performed or complied with by Purchaser prior to or on the Closing Date, and Sellers shall have received a certificate signed by an authorized officer of Purchaser on behalf of Purchaser, dated the Closing Date, to the foregoing effect;

(c) Purchaser shall have delivered to Sellers all of the items set forth in Section 4.3; and

(d) The Transactions do not have an adverse impact on the confirmation of the Plan with respect to the Downstream Debtors or any of the Downstream Transferred Assets.

9.3 Conditions Precedent to Obligations of Purchaser and Sellers. The obligations of Purchaser and Sellers to consummate the Transactions are subject to the

-35-

fulfillment, at or prior to the Closing, of each of the following conditions (any or all of which may be waived by Purchaser and Sellers in whole or in part to the extent permitted by applicable Law):

(a) there shall not be in effect any Law or Order by a Governmental Body restraining, enjoining or otherwise prohibiting the consummation of the Transactions; and

(b) the Bankruptcy Court shall have entered the Sale Order and the Sale Order shall be in full force and effect and not subject to stay.

9.4 Frustration of Closing Conditions. No Party may rely on the failure of any condition set forth in Sections 9.1, 9.2 or 9.3, as the case may be, if such failure was caused by such Party's failure to comply with any provision of this Agreement.

## X. TAXES

10.1 Transfer Taxes. All documentary, stamp, transfer, motor vehicle registration, sales, use, excise and other similar non-income Taxes and all filing and recording fees (and any penalties and interest associated with such Taxes and fees) arising from or relating to the consummation of the Transactions (collectively, "Transfer Taxes") will be borne by Purchaser, regardless of the Party on whom liability is imposed under the provisions of the Laws relating to such Transfer Taxes.

10.2 Purchase Price Allocation. The Purchase Price will be allocated among Sellers and the Purchased Assets pursuant to (and to the extent necessary to comply with) Section 1060 of the Code and the applicable regulations promulgated thereunder (or, if applicable, any similar provision under state, local or foreign Law or regulation) and their fair market values using the methodology or values set forth on Schedule 10.2 (the "Allocation Schedule"). Sellers and Purchaser and their respective Affiliates will report, act, and file Tax Returns (including, but not limited to IRS Form 8594) in all respects and for all purposes consistent with the Allocation Schedule. Neither Sellers nor Purchaser will take any position (whether in audits, Tax Returns or otherwise) that is inconsistent with the Allocation Schedule unless required to do so by applicable Law or pursuant to the good faith resolution of a Tax contest.

10.3 Certain Periodic Non-Income Taxes.

(a) With respect to any real or personal property or other periodic Taxes not based on income or receipts ("Periodic Non-Income Taxes") that are assessed on, or in respect of, the Purchased Assets and attributable to any period that begins after the Closing Date, if any Seller pays such Periodic Non-Income Taxes, as promptly as practicable after delivery to Purchaser of proof of such payment, Purchaser will pay to such Seller the amount of such Periodic Non-Income Taxes paid by Seller. With respect to any Periodic Non-Income Taxes that are assessed on, or in respect of, the Purchased Assets and attributable to any period that ends on or prior to the Closing Date, if Purchaser pays such Periodic Non-Income Taxes, as promptly as practicable

-36-

after delivery to the applicable Seller of proof of such payment, such Seller will pay to Purchaser the amount of such Periodic Non-Income Taxes paid by Purchaser.

(b) With respect to any Periodic Non-Income Taxes that are assessed on, or in respect of, the Purchased Assets and attributable to any period which includes but does not end on the Closing Date (a "Straddle Period"): (i) if any Seller pays such Periodic Non-Income Taxes, as promptly as practicable after delivery to Purchaser of proof of such payment, Purchaser will pay to such Seller the amount of such Periodic Non-Income Taxes paid by such Seller that are attributable to the portion of such Straddle Period beginning after the Closing Date (the "Post-Closing Straddle Period"); and (ii) if Purchaser pays such Periodic Non-Income Taxes, as promptly as practicable after delivery to the applicable Seller of proof of such payment, such Seller will pay to Purchaser the amount of such Periodic Non-Income Taxes paid by Purchaser that are attributable to the portion of such Straddle Period up to and including the Closing Date (the "Pre-Closing Straddle Period"). For purposes of this Section 10.3(b), the amount of Periodic Non-Income Taxes attributable to a Pre-Closing Straddle Period will be based upon the ratio of the number of days in the Pre-Closing Straddle Period to the total number of days in the Straddle Period, and the amount of Periodic Non-Income Taxes attributable to a Post-Closing Straddle Period will be based upon the ratio of the number of days in the Post-Closing Straddle Period to the total number of days in the Straddle Period.

(c) The party that has the primary obligation to do so under applicable Law will timely pay to the applicable Governmental Body any Periodic Non-Income taxes covered by this Section 10.3.

(d) All refunds with respect to any Periodic Non-Income Taxes that are assessed on, or in respect of, the Purchased Assets shall be allocated between Sellers and Purchaser in accordance with the principles set forth in this Section 10.3.

10.4 Cooperation and Audits. Purchaser, its Affiliates and Sellers will cooperate fully with each other regarding Tax matters (including the execution of appropriate powers of attorney) and will make available to the other as reasonably requested all information, records and documents relating to Taxes governed by this Agreement until the expiration of the applicable statute of limitations or extension thereof or the conclusion of all audits, appeals or litigation with respect to such Taxes; provided, however, that nothing in this Section 10.4 shall prevent the dissolution, winding-up or liquidation of any Seller.

## XI. MISCELLANEOUS

11.1 No Survival of Representations and Warranties. The Parties agree that the representations and warranties contained in this Agreement will not survive the Closing hereunder, and none of the Parties will have any liability to each other after the Closing for any breach thereof. The Parties agree that the covenants contained in this Agreement to be performed at or after the Closing will survive the Closing hereunder until the expiration of the applicable statute of limitations or for such shorter period

-37-

ACTIVE 213897944
NAI-1500932710v12

explicitly specified therein, and each Party will be liable to the other after the Closing for any breach thereof.

11.2 <u>Expenses</u>. Except as otherwise expressly provided in this Agreement or the Settlement Agreement, whether or not the Transactions are consummated, each of Sellers and Purchaser will bear their own expenses incurred in connection with the negotiation and execution of this Agreement and the Transaction Documents and the consummation of the Transactions and all proceedings incident thereto.

11.3 <u>Injunctive Relief</u>.

(a) The Parties agree that irreparable damages would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached, and that damages at law may be an inadequate remedy for the breach of any of the covenants, promises and agreements contained in this Agreement, and, accordingly, any Party will be entitled to injunctive relief to prevent any such breach, and to specifically enforce the terms and provisions of this Agreement, including specific performance of such covenants, promises or agreements or an order enjoining a party from any threatened, or from the continuation of any actual, breach of the covenants, promises or agreements contained in this Agreement. The rights set forth in this <u>Section 11.3</u> will be in addition to any other rights which a Party may have at law or in equity pursuant to this Agreement.

(b) The Parties hereby agree not to raise any objections to the availability of the equitable remedy of specific performance to prevent or restrain breaches of this Agreement by Purchaser or Sellers, as applicable, and to specifically enforce the terms and provisions of this Agreement to prevent breaches or threatened breaches of, or to enforce compliance with, the respective covenants and obligations of Purchaser or Sellers, as applicable, under this Agreement all in accordance with the terms of this <u>Section 11.3</u>.

11.4 <u>Submission to Jurisdiction; Consent to Service of Process</u>. (a) Without limiting any Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Transactions, and (ii) any and all Legal Proceedings related to the foregoing will be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court for such purposes; <u>provided</u> that if the Bankruptcy Cases have been closed pursuant to section 350 of the Bankruptcy Code, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the Delaware Court of Chancery and any state appellate court therefrom within the State of Delaware (or in the event (but only in the event) that such court does not have subject matter jurisdiction over such Legal Proceeding in the United States District Court for the District of Delaware) and any appellate court from any of them, for the resolution thereof. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such

-38-

dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the Parties agrees that a judgment in any such Legal Proceeding may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law.

(b)    Each of the Parties hereby consents to process being served by any Party to this Agreement in any Legal Proceeding by delivery of a copy thereof in accordance with the provisions of Section 11.8, except that such service will not be effective until the actual receipt thereof by the Party being served.

11.5    Waiver of Right to Trial by Jury. TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW THAT CANNOT BE WAIVED, EACH PARTY WAIVES, AND COVENANTS THAT IT WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING IN WHOLE OR IN PART UNDER, RELATED TO, BASED ON OR IN CONNECTION WITH THIS AGREEMENT, ANY TRANSACTION DOCUMENT OR THE SUBJECT MATTER HEREOF OR THEREOF, WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN TORT OR CONTRACT OR OTHERWISE. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION 11.5 WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF EACH SUCH PARTY TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.

11.6    Entire Agreement; Amendments and Waivers. This Agreement (including any Exhibits and Schedules hereto) and the other documents delivered pursuant hereto (including the Transaction Documents) represent the entire understanding and agreement among the Parties with respect to the subject matter hereof and supersede all prior discussions and agreements among the Parties with respect to the subject matter hereof. This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the Party against whom enforcement of any such amendment, supplement, modification or waiver is sought and the Trustee. No action taken pursuant to this Agreement, including any investigation by or on behalf of any Party, will be deemed to constitute a waiver by the Party taking such action of compliance with any representation, warranty, covenant or agreement contained herein. The waiver by any Party of a breach of any provision of this Agreement will not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy hereunder will operate as a waiver thereof, nor will any single or partial exercise of such right, power or remedy by such Party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

11.7    Governing Law. This Agreement will be governed by and construed in accordance with the laws of the State of Delaware applicable to contracts made and performed in such State.

ACTIVE 213897944
NAI-1500932710v12