11.8 <u>Notices</u>. All notices and other communications under this Agreement will be in writing and will be deemed given (a) when delivered by hand (with written confirmation of receipt), (b) when sent by email of a PDF document (with confirmation of transmission), or (c) one Business Day following the day sent by nationally recognized overnight courier (with written confirmation of receipt), in each case at the following addresses (or to such other address as a Party may have specified by notice given to the other Parties pursuant to this provision):

If to the Company or Sellers, to:

> Molycorp, Inc.
> Plaza Tower One, Suite 1610
> 6400 South Fiddlers Green Circle
> Greenwood Village, Colorado 80111
> Attention: Kevin W. Johnson, Executive Vice President and General Counsel
> Email: kevin.johnson@molycorp.com

with a copy (which will not constitute notice) to:

> Jones Day
> 325 John H. McConnell Boulevard
> Suite 600
> Columbus, OH 43215
> Attention: Jeffrey D. Litle
> Email: jdlitle@jonesday.com

If to Purchaser, to:

> Secure Natural Resources LLC
> 900 N. Michigan Avenue
> Suite 1340
> Chicago, IL 60611
> Attention: James Litinsky
> Email: jhl@jhlcapitalgroup.com

with a copy (which will not constitute notice) to:

> Sidley Austin LLP
> One South Dearborn
> Chicago, IL 60603
> Attention: John R. Box and Matthew A. Clemente
> Email: jbox@sidley.com and mclemente@sidley.com
>
> and

-40-

>
> Sidley Austin LLP
> 1999 Avenue of the Stars, 17th Floor
> Los Angeles, CA 90067
> Attention: Vijay S. Sekhon
> Email: vsekhon@sidley.com
>
> and
>
> QVT Financial LP
> 1177 Avenue of the Americas, 9th Floor
> New York, NY 10036
> Attention: Michael Gat, General Counsel
> Email: michael.gat@qvt.com
>
> and
>
> JHL Capital Group LLC
> 900 N. Michigan Avenue
> Suite 1700
> Chicago, IL 60611
> Attention: John Park
> Email: jpark@jhlcapitalgroup.com

In each case with a copy to the Trustee in care of:

> Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
> One Financial Center
> Boston, MA 02111
> Attention: William W. Kannel
> Email: bkannel@mintz.com

11.9  Severability. If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any law or public policy, all other terms or provisions of this Agreement will nevertheless remain in full force and effect so long as the economic or legal substance of the Transactions is not affected in any manner materially adverse to any Party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Parties will negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner in order that the Transactions are consummated as originally contemplated to the greatest extent possible.

11.10  Assignment. This Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns. Nothing in this Agreement will create or be deemed to create any third party beneficiary rights in any Person or entity not a Party except as set forth in Section 11.11; provided that the Collateral Agent and Trustee are each an intended third party beneficiary of this

-41-

Agreement. No assignment of this Agreement or of any rights or obligations hereunder may be made by either Sellers or Purchaser (by operation of law or otherwise) without the prior written consent of the other Parties and the Trustee any attempted assignment without the required consents will be void, except that (a) Purchaser may assign some or all of its rights or delegate some or all of its obligations hereunder to one or more Affiliates and (b) Sellers may assign some or all of their rights or delegate some or all of their obligations hereunder in accordance with the terms of the Plan. No assignment of any obligations hereunder will relieve the Parties of any such obligations. Upon any such permitted assignment, the references in this Agreement to Sellers or Purchaser will also apply to any such assignee unless the context otherwise requires.

11.11 Non-Recourse.

(a) No past, present or future director, officer, employee, incorporator, member, partner, equityholder, Affiliate, agent, attorney or representative of Sellers, Purchaser, or the Collateral Agent or any of their respective Affiliates who is not otherwise a party to this Agreement (each non-party, a "Non-Party Person") will have any liability for any obligations or liabilities of Sellers, Purchaser, or the Collateral Agent under this Agreement or any agreement entered into in connection herewith, including the Transaction Documents. Without limiting the foregoing, (i) each Party hereto hereby waives and releases any and all rights, claims, demands or causes of action that may otherwise be available at law or in equity to avoid or disregard the entity form of a party, whether based on theories of agency, control, instrumentality, alter ego, domination, sham, single business enterprise, piercing the veil, unfairness, undercapitalization, or otherwise; and (ii) each Party hereto disclaims any reliance upon any Non-Party Person with respect to any representation or warranty made in or in connection with the Transaction Documents.

(b) Notwithstanding anything in this Agreement to the contrary, nothing in the Transaction Documents shall impose or expand any duty or Liability on the Collateral Agent beyond those specifically set forth in the Collateral Agency Agreement and the Credit Bid Agreement or impose or expand any duty or Liability on the Trustee beyond those specifically set forth in the Indenture and the Credit Bid Agreement. Nothing contained in this Agreement shall alter, impair, or otherwise deprive the Collateral Agent of any rights or privileges provided under the Collateral Agency Agreement, the Credit Bid Agreement, or any related documents. Nothing contained in this Agreement shall alter, impair, or otherwise deprive the Trustee of any rights or privileges provided under the Indenture, the Credit Bid Agreement, or any related documents.

11.12 Legal Representation.

(a) Purchaser agrees that, as to all communications between counsel for Sellers or their Affiliates (including Jones Day), on the one hand, and Sellers or any of their respective Affiliates, on the other hand, that relate in any way to the Transactions (collectively, the "Privileged Communications"), the attorney-client privilege and the expectation of client confidence with respect to the Privileged

-42-

Communications belongs to the applicable Seller, may be controlled by the applicable Seller and will not pass to or be claimed by Purchaser or any of its Affiliates. The Privileged Communications are the property of Sellers, and, from and after the Closing, none of Purchaser or its Affiliates, or any Person purporting to act on behalf of or through Purchaser or its Affiliates will seek to obtain such communications, whether by seeking a waiver of the attorney-client privilege or through other means. Purchaser further agrees that no such Person may use or rely on any of the Privileged Communications in any action against or involving any Seller or any Affiliate of any Seller. The Privileged Communications may be used by Sellers or any of their Affiliates in connection with any dispute that relates to the Transactions, including in any claim brought by Purchaser.

(b) Jones Day has represented Sellers and their Affiliates. All of the Parties recognize the commonality of interest that exists and will continue to exist until Closing, and the Parties agree that such commonality of interest should continue to be recognized after the Closing. Specifically, the Parties agree that Purchaser will not, and will cause any Affiliates not to, seek to have Jones Day disqualified from representing Sellers or their Affiliates in connection with any dispute that may arise between Sellers or their Affiliates and any of Purchaser or any of its Affiliates in connection with this Agreement or the Transactions.

(c) Sidley Austin LLP has represented Purchaser and its Affiliates. All of the Parties recognize the commonality of interest that exists and will continue to exist until Closing, and the Parties agree that such commonality of interest should continue to be recognized after the Closing. Specifically, the Parties agree that Sellers will not, and will cause any Affiliates not to, seek to have Sidley Austin LLP disqualified from representing Purchaser or their Affiliates in connection with any dispute that may arise between Sellers or their Affiliates and any of Purchaser or any of its Affiliates in connection with this Agreement or the Transactions.

11.13 <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. Signatures delivered by electronic means will have the same force and effect as manual signatures delivered in person.

11.14 <u>Time Is of the Essence</u>. With respect to all dates and time periods set forth or referred to in this Agreement, time is of the essence.

[*Signature page follows*]

IN WITNESS WHEREOF, each Party has caused its duly authorized officer to execute this Agreement as of the Effective Date.

**PURCHASER:**
Secure Natural Resources LLC

By: _____
   Name:
   Title:

**COMPANY:**
Molycorp, Inc., for the limited purposes specified in this Agreement

By: _____
   Name:
   Title:

**SELLERS:**

Molycorp Minerals, LLC

By: _____
   Name:
   Title:

PP IV Mountain Pass Inc.

By: _____
   Name:
   Title:

RCF IV Speedwagon Inc.

By: _____
   Name:
   Title:

PP IV Mountain Pass II, Inc.

By: _____
   Name:
   Title: