SECTION 12.3    Order of Distribution. Upon any dissolution and winding up of the Company, after satisfaction (whether by payment or the making of reasonable provision for payment thereof) of any liabilities (including all contingent, conditional or unmatured claims) of the Company owed to any creditors, including any Members who are creditors (to the fullest extent permitted by Applicable Law), any remaining assets of the Company shall be paid to each of the Members in accordance with Section 5.1.

SECTION 12.4    No Resignation or Removal. No Member has the right to resign as a Member of the Company and require repayment of all or any portion of the purchase price for its Units (if any) or redeem its Units, except in each case, in the event of the dissolution and winding up of the Company as provided in this Article XII.

ARTICLE XIII

MISCELLANEOUS

SECTION 13.1    Confidentiality.

(a)    By executing this Agreement, each Member expressly agrees, at all times during the term of the Company and thereafter and whether or not at the time such Person is a Member of the Company, to maintain the confidentiality of, and not to disclose, without the consent of the Company, to any Person other than its Affiliates (who agree to be bound or are bound by confidentiality), any direct or indirect limited partner or any current or prospective investor (in each case, who agrees to be bound or are bound by confidentiality), the Company, another Member, a Person designated by the Company or any of their respective financial planners, accountants, attorneys or other advisors (who agree to be bound or are bound by confidentiality), any information relating to the business, financial results or customers of the Company that is not generally known to the public, except in each case as otherwise required by Applicable Law or judicial or administrative process or by any regulatory or self- regulatory organization having jurisdiction and, except in the case of any Member who is employed by any entity controlled by the Company, in the ordinary course of his duties.

(b)    The Company shall not make, or allow any of its Subsidiaries to make, any public announcement, public disclosure or governmental filing that mentions any Member or beneficial owner of any Member without first notifying such Member and giving such Member a reasonable opportunity to review and comment on such announcement, disclosure or filing.

SECTION 13.2    Notices. Whenever notice is required or permitted by this Agreement to be given, such notice shall be in writing (including facsimile or similar writing) and shall be given, if to any Member, at its address, facsimile number or email address shown in Schedule A or, if to the Company, at the following address:

Secure Natural Resources LLC
c/o JHL Capital Group LLC
900 N. Michigan Avenue
Suite 1700

48

    Chicago, IL 60611
    Attention: Chairman

Each such notice shall be effective and shall be deemed to have been delivered (i) if given by facsimile or email, upon dispatch, (ii) if given by mail, three (3) days after it is deposited in the mails (first class or airmail postage prepaid) addressed as aforesaid, (iii) if given by courier, upon the earlier of actual delivery and one (1) day after deposit with a nationally recognized overnight courier specifying next day delivery and (iv) if given by any other means, when delivered to the address of such Member or the Company, as the case may be, specified as aforesaid.

    SECTION 13.3    <u>Amendments and Waivers</u>.

    (a)    Except as otherwise provided herein, this Agreement may be amended or any terms or conditions of this Agreement waived only pursuant to a written instrument approved by the Board and signed by the Company and Members holding at least a majority of the outstanding Common Units. Notwithstanding the foregoing, it is agreed that any amendment providing rights to purchasers of any additional Common Units or other Securities of the Company, and the effect of admitting such purchasers as members of the Company, shall not require the consent of any Member.

    **(b)**    **In addition, any amendment, waiver or modification of any provision of this Agreement that would adversely affect any Member in a manner that is disparate from, or disproportionate to, the manner in which it affects the other Members may be effected only with the consent of the Member so affected.**

    SECTION 13.4    <u>Governing Law</u>. THIS AGREEMENT IS GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF DELAWARE, EXCLUDING ANY CONFLICT-OF-LAWS RULE OR PRINCIPLE THAT MIGHT REFER THE GOVERNANCE OR THE CONSTRUCTION OF THIS AGREEMENT TO THE LAW OF ANOTHER JURISDICTION. In the event of a direct conflict between the provisions of this Agreement and any mandatory provision of the Act, the applicable provision of the Act shall control. If any provision of this Agreement or the application thereof to any Person or circumstance is held invalid or unenforceable to any extent, the remainder of this Agreement and the application of that provision to other Persons or circumstances are not affected thereby and that provision shall be enforced to the greatest extent permitted by Applicable Law.

    SECTION 13.5    <u>Jury Trial</u>. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

    SECTION 13.6    <u>Successors and Assigns</u>. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and the rights and obligations hereunder may

49

not be assigned except to the extent permitted hereunder in connection with a Transfer of Units.

SECTION 13.7    Entire Agreement. This Agreement and the other documents and agreements referred to herein or entered into concurrently herewith embody the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein; provided, that such other agreements and documents shall not be deemed to be a part of, a modification of or an amendment to this Agreement. There are no restrictions, promises, representations, warranties, covenants or undertakings with respect to the subject matter contained herein, other than those expressly set forth or referred to herein. This Agreement supersedes all prior agreements and understandings between the parties with respect to such subject matter, including the Credit Bid Agreement (except that, in accordance with Section 3.1 of this Agreement, the provisions of Section 3(b) of the Credit Bid Agreement shall continue to apply until the obligations of the Company contained therein have been discharged in accordance therewith).

SECTION 13.8    No Effect Upon Lending Relationships. Notwithstanding anything contained in other paragraphs and sections of this Agreement to the contrary, (a) nothing contained in this Agreement shall affect, limit or impair the rights and remedies of the Members or any of their respective Affiliates, funding or financing sources or any other lenders in each case in their capacities as lenders to the Company or any of its Subsidiaries and, (b) without limiting the generality of the foregoing, none of the Members or their Affiliates, in exercising its rights as a lender, including making its decision on whether to foreclose on any collateral security, shall have any duty to consider (i) its (or the applicable Member's) status as a holder of Units of the Company, as a Member of the Company or otherwise, (ii) the interests of the Company or any of its Subsidiaries (except to the extent required under any applicable credit or similar agreement or by commercial law applicable to creditors generally) or (iii) any duty it may have to any other Member of the Company or holder of Units of the Company.

SECTION 13.9    Counterparts. This Agreement (including the Joinder Agreement) may be executed in any number of counterparts, all of which together shall constitute a single instrument.

SECTION 13.10    Section Titles. Section titles are for descriptive purposes only and shall not control or alter the meaning of this Agreement as set forth in the text hereof.

SECTION 13.11    Severability. The provisions hereof shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof. If any provision hereof, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability

affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

*[The remainder of this page is intentionally left blank.]*

51

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**SECURE NATURAL RESOURCES LLC**

By: _____
Name: James H. Litinsky
Title: Authorized Signatory

SIGNATURE PAGE TO LIMITED LIABILITY COMPANY AGREEMENT

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**JHL CAPITAL GROUP HOLDINGS ONE LLC**

By: _____
Name: James H. Litinsky
Title: Authorized Signatory

**QVT FUND V LP**

By: _____
Name:
Title:

**QVT FUND IV LP**

By: _____
Name:
Title:

**QUINTESSENCE FUND L.P.**

By: _____
Name:
Title:

SIGNATURE PAGE TO LIMITED LIABILITY COMPANY AGREEMENT

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**JHL CAPITAL GROUP HOLDINGS ONE LLC**

By: _____
Name:
Title:

**QVT FUND V LP**

By: _____
Name:
Title:

**QVT FUND IV LP**

By: _____
Name:
Title:

**QUINTESSENCE FUND L.P.**

By: _____
Name:
Title:

Case 15-11371-CSS    Doc 1228    Filed 04/28/16    Page 7 of 10

SIGNATURE PAGE TO LIMITED LIABILITY COMPANY AGREEMENT

Execution Version

## SCHEDULE A

### LIST OF MEMBERS AND UNITS

| Name and Address | Common Units |
|---|---|
| JHL Capital Group Holdings One LLC<br>900 N. Michigan Avenue. Suite 1340, Chicago. IL 60611 | 298,438.960 |
| QVT Fund VLP<br>1177 Avenue of the Americas, 9th Floor, New York, NY 10036 | 47,097.050 |
| QVT Fund IV LP<br>1177 Avenue of the Americas, 9th Floor, New York, NY 10036 | 10,718.131 |
| Quintessence Fund L.P.<br>1177 Avenue of the Americas, 9th Floor, New York, NY 10036 | 6,125.215 |
| **TOTAL** | 362,379.360 |

SCHEDULE A

Execution Version

# EXHIBIT A

## Form of Joinder Agreement

The undersigned is executing and delivering this Joinder Agreement pursuant to the Limited Liability Company Agreement of Secure Natural Resources LLC, a Delaware limited liability company, dated as of April 15, 2016, as amended, supplemented or otherwise modified in accordance with the terms thereof (the "LLC Agreement"). Capitalized terms used but not defined in this Joinder Agreement shall have the respective meanings ascribed to them in the LLC Agreement.

By executing and delivering this Joinder Agreement to the LLC Agreement, the undersigned hereby agrees to be admitted as a member of the Company and to become a party to, to be bound by, and to comply with all of the provisions of the LLC Agreement in the same manner as if the undersigned were an original signatory to such agreement as a Member. In connection therewith and without limiting the foregoing, effective as of the date hereof the undersigned hereby makes the representations and warranties contained in the LLC Agreement.

Accordingly, the undersigned has executed and delivered this Joinder Agreement as of the ____ day of _____, 20____.

_____
Signature of Member

_____
Print Name of Member

_____
_____
_____
Address of Member

Acknowledged and accepted:

SECURE NATURAL RESOURCES LLC

Exhibit A

By: _____
Name:
Title:

SIGNATURE PAGE TO LIMITED LIABILITY COMPANY AGREEMENT