## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

In re:                                           :   Chapter 11
                                                 :
MOLYCORP MINERALS, LLC, *et al.*,[1]             :   Case No. 15-11371 (CSS)
                                                 :   (Jointly Administered)
                 Debtors.                        :
                                                 :   **Objection Deadline:  August 25, 2016 at 4:00 p.m. (ET)**
                                                 :   **Hearing Date:  September 6, 2016 at 10:00 a.m. (ET)**

-------------------------------------------------------------x

### MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF AN ORDER DISMISSING THE MOLYCORP MINERALS DEBTORS' CHAPTER 11 CASES

Paul E. Harner, the chapter 11 trustee (the "Trustee") in the above-captioned chapter 11 cases of Molycorp Minerals, LLC, *et al.* (collectively, the "Minerals Debtors"), hereby moves for the entry of an order dismissing the chapter 11 cases of the Minerals Debtors (the "Motion").  In support of this Motion, the Trustee respectfully represents as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware, dated as of February 29, 2012.

2.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), & (O).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]      The Minerals Debtors are the following 6 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Molycorp Minerals, LLC (4170); Industrial Minerals, LLC; Molycorp Advanced Water Technologies, LLC (1628); PP IV Mountain Pass, Inc. (1205); PP IV Mountain Pass II, Inc. (5361); and RCF IV Speedwagon Inc. (0845).

## BACKGROUND

4.      On June 25, 2015 (the "Petition Date"), the Minerals Debtors and fifteen of their affiliates (the "Plan Debtors") commenced voluntary cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. § § 101-1532 (the "Bankruptcy Code") in this Court.[2]

5.       From June 29, 2015 through April 13, 2016, the cases of the Minerals Debtors were consolidated for procedural purposes only and administered jointly with the cases of the Plan Debtors under the docket of Molycorp, Inc., Case No. 15-11357.  The principal asset in the cases of the Minerals Debtors is a rare earth mineral mining facility located in San Bernardino County, California (including certain real and personal property and fixtures located at the facility, "Mountain Pass").

6.      On April 8, 2016, this Court entered its *Findings of Fact, Conclusions of Law and Order Confirming the Plan Debtors' Fourth Amended Plan of Reorganization* [Plan Debtors D.I. 1580] (the "Confirmation Order") confirming the Plan Debtors' Fourth Amended Joint Plan of Reorganization (the "Plan") and approving certain related settlement agreements.  Prior to entry of the Confirmation Order, however, the Plan was withdrawn as to the Minerals Debtors. Pursuant to the settlements contemplated by the Plan and approved by the Confirmation Order, the sum of $2.5 million was to be tendered to the Minerals Debtors (the "Initial Wind-Down Reserve") for the purpose of partially funding (a) the administrative costs to be incurred by a chapter 7 trustee in connection with attempting to sell the Mountain Pass assets and (b) the costs and expenses of maintaining the Mountain Pass facility in a "cold idle" status.  The effective date of the Plan has not yet occurred.

---

[2]      The Plan Debtors include Molycorp, Inc.; Magnequench, Inc.; Magnequench International, Inc.; Magnequench Limited; MCP Callco ULC; MCP Canada Holdings ULC; MCP Canada Limited Partnership; MCP Exchangeco Inc.; Molycorp Chemicals & Oxides, Inc.; Molycorp Luexmbourg Holdings S.a. r.l.; Molycorp Metals & Alloys, Inc.; Molycorp Minerals Canada ULC; Molycorp Rare Metals Holdings, Inc.; Molycorp Rare Metals (Utah), Inc.; and Neo International Corp.

7.      On April 8, 2016, the same day that the Confirmation Order was entered, the Minerals Debtors filed a motion seeking to convert their chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.  Several creditors and parties in interest, primarily sureties that had issued bonds related to the Mountain Pass assets for the benefit of various environmental, safety, and other regulatory agencies with authority over Mountain Pass (collectively, the "Sureties"), objected to the proposed conversion.  Those creditors and parties in interest urged the Court to appoint a chapter 11 trustee so that the Minerals Debtors could remain in compliance with their various environmental and other regulatory obligations and to prevent any possible loss of valuable and irreplaceable permits for Mountain Pass, while Mountain Pass was marketed for sale.

8.      In their papers, the Sureties indicated to the Court that they were diligently working to "reach an agreement to fund a budget that, along with the [Initial Wind-Down Reserve], will maintain and care for the Facility for the next six to seven months . . . ."  *See Objection to Debtors' Motion to Convert the Molycorp Minerals Debtors' Chapter 11 Cases to Cases Under Chapter 7, and In Support of the Appointment of a Trustee Pursuant to Section 1104 of the Bankruptcy Code*, Preliminary Statement at p. 2; ¶ 24 [Plan Debtors D.I. 1595].

9.      On April 13, 2016, after considering argument and evidence concerning the Minerals Debtors' motion to convert their cases and the objections thereto, this Court entered an *Order (I) Directing the United States Trustee to Appoint a Chapter 11 Trustee for the Chapter 11 Cases of Industrial Minerals, LLC; Molycorp Advanced Water Technologies, LLC; Molycorp Minerals, LLC; PP IV Mountain Pass II, Inc.; PP IV Mountain Pass, Inc.; and RCF IV Speedwagon Inc.; (II) Amending the Debtors' Joint Administration Order and (III) Granting Related Relief* [Minerals Debtors D.I. 8] (the "Trustee Order").

10.    Pursuant to the Trustee Order, the Minerals Debtors' cases were severed from, and are no longer jointly administered for procedural purposes with, the Plan Debtors' cases. The cases of the Plan Debtors continue to be administered under the docket of Molycorp, Inc., Case No. 15-11357.  Further, in accordance with the Trustee Order, the Minerals Debtors' cases remain consolidated with each other for procedural purposes only and are jointly administered.

11.    On May 2, 2016 (the "Appointment Date"), pursuant to section 1104(a)(2) of the Bankruptcy Code, the United States Trustee appointed Paul E. Harner as the chapter 11 trustee of the Minerals Debtors.  On May 3, 2016, this Court entered a Corrected Order Approving Appointment of Trustee, which order approved the appointment of Mr. Harner as the chapter 11 trustee for the Minerals Debtors [Minerals Debtors D.I. 24].

12.    Thereafter, in furtherance of the settlements approved in the Plan, the Plan Debtors tendered the Initial Wind-Down Reserve to the Trustee.

### PRELIMINARY STATEMENT

13.    On June 2, 2016, the Trustee provided the Court with a detailed status report regarding his initial efforts to ensure the safety and stabilization of the Mountain Pass facility, as well as his preliminary views regarding appropriate next steps to maximize the value of the facility for the benefit of all constituencies.  Apart from familiarizing the Court with the facility itself and the immediate tasks to be completed, the Trustee expressed three initial views:  *first,* that there potentially is substantial value to be unlocked in the Mountain Pass assets, particularly in light of the relatively recent investment of more than $1.5 billion in converting the facility to a state-of-the-art rare earth minerals mining and processing plant, and especially if a "turnkey" buyer for the facility could be identified; *second,* that the recovery of that value nonetheless would require the pursuit of an orderly marketing and sale process, with the assistance of an expert investment advisor, which process likely would consume a number of months; and *third,*

that the Trustee would require material additional financing, above and beyond the Initial Wind-Down Reserve, to fund that process, likely to take from 6 to 8 months.

14.     On those three principal topics, the Trustee still has precisely the same views as expressed at the Court's June 2nd status conference.   And in the ensuing approximately two months, the Trustee and his professionals thus have devoted substantially all of their efforts to: (a) maintaining the safety and physical integrity of the Mountain Pass facility, with a view towards a potential sale; (b) identifying potential facility purchasers; (c) identifying candidates to serve in an investment advisory role to conduct an orderly marketing process; and (d) most importantly, identifying and securing potential sources of financing to fund such an orderly process.   These efforts have involved, among other things, finalizing and implementing a "minimal operations" budget for the interim maintenance of the facility – as well as the funding of minimized administrative expenses – and extended discussions with all constituencies regarding both a sale process and financing alternatives.

15.     As anticipated, the Sureties remain the only available and timely source of further financing of the envisioned process.   The Sureties have made multiple proposals in recent weeks regarding the provision of such financing.   Each of those proposals has unsurprisingly contemplated concessions from regulators and existing secured lenders to limit the exposure the Sureties would face.   Despite all best efforts, an agreement to facilitate further financing from the Sureties has not been reached among all necessary parties.

16.     The Trustee also has conducted extensive initial discussions with potential investment advisors prepared to conduct an orderly marketing and sales process, and likewise has facilitated due diligence by one potential buyer.   But the engagement of an advisor, and

commencement of an advisor-directed orderly process, cannot be accomplished without additional time and additional financing.

17.     Against that background, the Initial Wind-Down Reserve is insufficient to sustain further pursuit of the bankruptcy process.  Although the Trustee has made every effort to minimize expenditures, he now believes that the Minerals Debtors' estates will have depleted all available cash sometime in mid to late September.  The cost of maintaining Mountain Pass even in a cold idle status alone totals approximately $2.4 million per quarter.  Insurance costs in excess of $200,000 per month, now demanded by the Plan Debtors (having provided coverage under their more general policy for all Molycorp-related assets, but now requiring reimbursement for pre-paid premiums) are included in this amount.  This budget figure does not include the professional and other costs and expenses of the administration of the Minerals Debtors' estates.

18.     In light of these expenses, and the 6-8 months necessary to conduct a meaningful marketing and sale process for Mountain Pass, the Trustee estimates a need for at least $7-$7.5 million in funding, including the Initial Wind-Down Reserve.  As noted, however, there remains no agreement in place that would provide the required financing to bridge the gap between that figure and the Initial Wind-Down Reserve.

19.     Thus, although the Trustee continues to believe that Mountain Pass has significant potential value, unlocking that value has become a practical impossibility.  Further expenditure of scarce estate resources in the pursuit of a process for which there is no consensus would be, in the Trustee's fiduciary and business judgment, ill-advised and unavailing.  Under these circumstances, there is nothing to be accomplished by prolonging the bankruptcy process.  Those

parties with an interest in the ultimate disposition of Mountain Pass should be left to, and free to exercise, their state law rights and remedies.

20.    The Trustee therefore seeks dismissal of these cases for cause under section 1112(b) of the Bankruptcy Code.

## THE MINERALS DEBTORS' CASES SHOULD BE DISMISSED

21.    Section 1112(b) of the Bankruptcy Code provides that, upon request of a party in interest, a case "shall" be converted to chapter 7 or dismissed for "cause" absent unusual circumstances.  11 U.S.C. § 1112(b).  If a party in interest establishes the existence of "cause," the Court must – absent unusual circumstances – dismiss or convert a case, whichever is in the best interest of creditors.  *Id.*; *see also In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 560-61 (Bankr. M.D. Pa. 2007) (the amendment to section 1112 limits the court's discretion to refuse to dismiss or convert a chapter 11 case when cause exists, absent unusual circumstances establishing that the requested conversion or dismissal is not in the best interests of the creditors and the estate); *see also In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal such that this Court has no choice, and no discretion in that it *'shall'* dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under [Section] 1112(b)(4).") (emphasis in original.)

22.    Although section 1112(b) provides a list of 16 grounds for dismissal, these grounds are not meant to be exhaustive or exclusive, but rather are illustrative and intended to assist courts in determining whether "cause" to dismiss exists.   *In re Gateway Access Solutions, Inc.*, 374 B.R. at 561; *In re Consol. Pioneer Mortg. Entities*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000) ("The enumerated causes are not exhaustive, and 'the court will be able to consider other

factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases") (internal quotations and citation omitted).  The overarching focus of section 1112(b) is on whether the bankruptcy process is able to positively contribute to achieving an outcome in the best interests of creditors and other parties in interest, or whether the process has become an expensive, and ultimately unproductive, means toward that end, and creditors and other parties in interest are better served by being freed to resort to their state law rights and remedies. This case has reached the stage where creditors and other parties in interest are best served by dismissal.

23.     As set forth in detail above, the Initial Wind-Down Reserve is rapidly depleting, and, absent additional financing, the Minerals Debtors' estates will have exhausted all available cash sometime in mid- to late September.  Yet the Trustee has concluded that it would take at least 6-8 months to conduct a meaningful marketing and sale process for Mountain Pass and estimates the total cost of that process, while maintaining Mountain Pass in cold idle status, would be at least $7-$7.5 million.  There is no financing available to meet that cost, and the Initial Wind-Down Reserve is insufficient for that purpose.  Moreover, without additional financing, the Trustee also lacks the funds necessary to continue to maintain required insurance on the Mountain Pass facility.

24.     Thus, although the Trustee believes that Mountain Pass has potential value, unlocking – or even preserving – that value has become a practical impossibility, and further expenditure of scarce estate resources in the pursuit of a process for which there is no consensus is not an appropriate use of resources or of the auspices of the Bankruptcy Court.

25.     The same remains true if this case were instead converted:  there is nothing that a chapter 7 trustee can do to monetize Mountain Pass.  Indeed, converting these cases would only further increase administrative costs and delay the inevitable.    Given the totality of

circumstances, no additional time and expense should be incurred pursuing a strategy under the protections of the Bankruptcy Code. *See, e.g., In re Quail Farm, LLC*, 2010 WL 1849867, at *7 (Bankr. N.D.W.Va. 2010) (dismissal is more appropriate than conversion as "the value of the real property—the sole asset of the bankruptcy estate—is insufficient to satisfy the secured claims of the Quallses and DRB. Thus, there are no assets in the estate for a Chapter 7 Trustee to administer thereby making administration of the case in a Chapter 7 context imprudent and unnecessary."); *In re FRGR Managing Member LLC*, 419 B.R. 576, 585 (Bankr. S.D.N.Y. 2009) ("Where there are few if any assets to administer, and the estate appears to be administratively insolvent, dismissal would often be the better course."); *In re 3 Ram, Inc.*, 343 B.R. 113, 119 (Bankr. E.D.Pa. 2006) ("Since Ram has only one asset which is fully encumbered, there is no estate for a Chapter 7 trustee to administer. Thus, dismissal as opposed to conversion is indicated."). *See also In re Lacy*, 304 B.R. 439 (D. Colo. 2004) (bankruptcy court abused its discretion in converting a chapter 11 case to one under chapter 7 when there would be no assets for a chapter 7 trustee to administer).

26.     Based on the forgoing, dismissal of these cases for cause under section 1112(b) of the Bankruptcy Code is not only in the best interests of creditors, but is the only viable conclusion to these cases.

**NOTICE**

27.     Notice of this Motion has been provided to: (i) counsel for the Minerals Debtors; (ii) the United States Trustee, (iii) the creditors holding the 20 largest unsecured claims against the Minerals Debtors' estates (on a consolidated basis); (iv) the Internal Revenue Service, 844 King Street, Wilmington, DE 19801, Attn: District and Regional Directors; (v) counsel for the insurers and environmental regulators of Mountain Pass; (vi) all taxing authorities for the

jurisdictions in which the Minerals Debtors do business; (vii) all environmental authorities listed in Part 12 of the Minerals Debtors' statement of financial affairs; and (viii) those parties who have formally filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. The Trustee submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

28.     No previous request for the relief sought herein has been made by the Trustee to this or any other court.

## LOCAL RULE 9013-1(f) STATEMENT

29.     The Trustee hereby consents to the entry of a final order or judgment by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

**WHEREFORE,** the Trustee hereby respectfully requests that this Court enter an order dismissing the chapter 11 cases of the Minerals Debtors pursuant to section 1112(b) of the Bankruptcy Code and granting such other and further relief as is just and proper.

Dated: August 11, 2016                    Respectfully submitted,
       Wilmington, Delaware

                                           */s/ Matthew G. Summers*
                                           Matthew G. Summers (DE No. 5533)
                                           Tobey M. Daluz (DE No. 3939)
                                           Leslie Heilman (DE No. 4716)
                                           BALLARD SPAHR LLP
                                           919 N. Market Street, 11th Floor
                                           Wilmington, Delaware 19801
                                           Telephone: (302) 252-4428
                                           Facsimile:  (302) 252-4466
                                           E-mail: summersm@ballardspahr.com
                                                      daluzt@ballardspahr.com
                                                      heilmanl@ballardspahr.com

                                           and

                                           Vincent J. Marriott, III*
                                           BALLARD SPAHR LLP
                                           1735 Market Street, 51st Floor
                                           Philadelphia, Pennsylvania 19103
                                           Telephone: (215) 864-8236
                                           Facsimile: (215) 864-9762
                                           E-mail: marriott@ballardspahr.com
                                           (*Admitted *Pro Hac Vice*)

                                           *Counsel to the Chapter 11 Trustee*