# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
In re:                                                    :     Chapter 11
                                                          :
MOLYCORP MINERALS, LLC, *et al.*,[1]                      :     Case No. 15-11371 (CSS)
                                                          :     (Jointly Administered)
                    Debtors.                              :
                                                          :     **Hearing Date: November 21, 2016 at 11:00 a.m. (ET)**
                                                          :     **Obj. Deadline: November 14, 2016 at 4:00 p.m. (ET)**
------------------------------------------------------------x

## MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 363 AND BANKRUPTCY RULES 2002 AND 6004(h) AUTHORIZING AND APPROVING PROCEDURES FOR THE SALE OF SURPLUS ASSETS AND REMAINING INVENTORY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND GRANTING CERTAIN RELATED RELIEF

Paul E. Harner, as chapter 11 trustee (the "**Trustee**") in the above-captioned chapter 11 cases of Molycorp Minerals, LLC, *et al.* (collectively, the "**Minerals Debtors**"), by his undersigned attorneys, submits this motion (the "**Motion**"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing and approving procedures for the sale of certain *de minimis* property of the Minerals Debtors, free and clear of liens, claims, interests and encumbrances ("**Liens**").  In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the

---

[1]     The Minerals Debtors are the following 6 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Molycorp Minerals, LLC (4170); Industrial Minerals, LLC; Molycorp Advanced Water Technologies, LLC (1628); PP IV Mountain Pass, Inc. (1205); PP IV Mountain Pass II, Inc. (5361); and RCF IV Speedwagon Inc. (0845).

District of Delaware dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are section 105(a) and 363(b) of the Bankruptcy Code, along with Bankruptcy Rules 2002 and 6004(h).

## GENERAL BACKGROUND

3.      On June 25, 2015 (the "**Petition Date**"), the Minerals Debtors and fifteen (15) of their affiliates (the "**Plan Debtors**") commenced voluntary cases under chapter 11 of title 11 of the Bankruptcy Code in this Court.[2]

4.      On April 8, 2016, this Court entered its *Findings of Fact, Conclusions of Law and Order Confirming the Plan Debtors' Fourth Amended Plan of Reorganization* [Plan Debtors D.I. 1580] (the "**Confirmation Order**") confirming the Plan Debtors' Fourth Amended Joint Plan of Reorganization (the "**Plan**") and approving certain related settlement agreements.  Prior to entry of the Confirmation Order, however, the Plan was withdrawn as to the Minerals Debtors.  The effective date of the Plan occurred on August 31, 2016 [Plan Debtors D.I. 1942].  The reorganized Molycorp, Inc. is now known as Neo Performance Materials.

5.      On May 2, 2016, pursuant to section 1104(a)(2) of the Bankruptcy Code, the United States Trustee appointed Paul E. Harner as the chapter 11 trustee of the Minerals Debtors.  On May 3, 2016, this Court entered a Corrected Order Approving Appointment of Trustee, which order approved the appointment of Mr. Harner as the chapter 11 trustee for the Minerals Debtors [Minerals Debtors D.I. 24].

---

[2]      The Plan Debtors are Molycorp, Inc.; Magnequench, Inc.; Magnequench International, Inc.; Magnequench Limited; MCP Callco ULC; MCP Canada Holdings ULC; MCP Canada Limited Partnership; MCP Exchangeco Inc.; Molycorp Chemicals & Oxides, Inc.; Molycorp Luexmbourg Holdings S.a. r.l.; Molycorp Metals & Alloys, Inc.; Molycorp Minerals Canada ULC; Molycorp Rare Metals Holdings, Inc.; Molycorp Rare Metals (Utah), Inc.; and Neo International Corp.

6.      The principal assets of the Minerals Debtors are a rare earth minerals mine and a rare earth extraction facility (collectively, the "**Mountain Pass Mine**").

**SPECIFIC BACKGROUND REGARDING REQUESTED RELIEF**

7.      The Trustee is working diligently in pursuit of a turn-key sale of the Mountain Pass Mine, which is currently being maintained in a "cold-idle" state, in order to maximize the value of the Minerals Debtors' estates.  Certain of the Mountain Pass Mine assets are unnecessary to a turn-key sale, either because they were "orphaned" by construction of an entirely new extraction facility, or because they are otherwise unneeded or redundant (the "**Surplus Assets**").  In addition, certain inventory, processed before the Mountain Pass Mine was put on "cold-idle," remains available for sale (the "**Remaining Inventory**").  The vast majority of the Surplus Assets have insubstantial value, and the Remaining Inventory has a recognized market for disposition, and can be disposed of in the ordinary course of business.

8.      Accordingly, requiring the Minerals Debtors to obtain Court approval under section 363(b)(1) of the Bankruptcy Code for the sale of the Surplus Assets or Remaining Inventory would unnecessarily burden the Court and increase costs for the Minerals Debtors' estates.  Indeed, given the small amounts that would be generated by any such sale transaction, the costs and delays associated with seeking Court approval of an individual sale could, in some cases, eliminate or substantially undermine the economic benefit of such a transaction.  To minimize this burden and cost, the Trustee thus seeks approval of the procedures (the "**Surplus Assets and Remaining Inventory Sale Procedures**") detailed below, permitting it to sell the Surplus Assets and Remaining Inventory:

      a.   For any sale of Surplus Assets having an aggregate value less than or equal to $250,000, or any sale of Remaining Inventory regardless of value, the Trustee may proceed without further order of this Court, and subject only to any necessary consent ("**Consent**") of any party claiming a Lien on or in the Surplus Assets or

Remaining Inventory that are included in such sale.  Any such sale will be free and clear of all Liens, with such Liens attaching only to the sale proceeds with the same validity, extent and priority as existed immediately prior to such sale.  For purposes of the foregoing, Consent to a proposed sale shall be deemed given by any party that does not object in writing to the Trustee within five business days of delivery of notice from the Trustee to such party (which notice may be made electronically) of such proposed sale, describing the terms thereof and the assets subject thereto.

b. For any sale of Surplus Assets having a value in excess of $250,000, and for any sale requiring Consent where such Consent is not obtained, the Trustee shall follow the Normal Requirements (as hereinafter defined), to the extent applicable.

## RELIEF REQUESTED

9.    By this Motion, the Minerals Debtors seek entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), (i) authorizing and approving procedures for the sale of Surplus Assets and Remaining Inventory of the Minerals Debtors, free and clear of liens, claims, interests and encumbrances, without the need for further Court approval; and (ii) granting certain related relief.

## LEGAL BASIS FOR THE RELIEF REQUESTED

### A. The Miscellaneous Asset Sale Procedures are Appropriate Under Section 363(b) of the Bankruptcy Code

10.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  The notice and hearing requirements contained in section 363(b)(1) are satisfied if appropriate notice and an opportunity for a hearing are given in light of the particular circumstances.  11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").

4

11.     Generally, Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of 21 days' notice of proposed sales of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code.  As noted above, the "notice" required by section 363(b)(1) of the Bankruptcy Code is "such notice as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A).  Pursuant to Bankruptcy Rule 2002(i), courts may limit notice of asset sales outside of the ordinary course of a debtor's business, even without a prior showing of cause, to any official committee appointed under section 1102 of the Bankruptcy Code requesting notice (the procedures and other requirements set forth in Paragraphs 10 and 11 are collectively referred to herein as the "**Normal Requirements**").

12.     Bankruptcy courts have recognized that, when determining whether notice is appropriate under the circumstances for purposes of section 102(1)(A) of the Bankruptcy Code, they are "guided by fundamental notions of procedural due process."  *In re Lomas Fin. Corp.*, 212 B.R. 46, 54 (Bankr. D. Del. 1997).  Due process "requires that notice is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *In re Grand Union Co.*, 204 B.R. 864, 871 (Bankr. D. Del. 1997).  In sum, if basic due process is afforded to interested parties and appropriate cause is established, a court may determine that limited notice of an asset sale is appropriate.

13.     As the Trustee maintains the Mountain Pass facility in its "cold-idle" state while he pursues a turn-key sale, the Surplus Assets are of little or no value to the Minerals Debtors or any potential purchaser of the Mountain Pass Mine.  Noticing and seeking court approval for

each individual sale of the Surplus Assets would be a waste of the limited resources of the Minerals Debtors' estates, and provide no additional benefit to their creditors or parties in interest.  In addition, with respect to the Remaining Inventory, sale of such inventory in the Trustee's opinion does not require Court approval or Consent in any event, as the sale thereof will involve a recognized market for such inventory, and, although conducted by the Trustee, is consistent with the ordinary course of business of the Minerals Debtors.

14.    Accordingly, the Trustee proposes the Surplus Asset and Remaining Inventory Sale Procedures, which will permit him to efficiently and expeditiously sell the Surplus Assets and Remaining Inventory during these chapter 11 cases, while preserving the rights of any party that must consent.

15.    In light of the demonstrable benefits of streamlined procedures to sell the relevant assets and the legal justifications described above, procedures similar to the Surplus Assets and Remaining Inventory Sale Procedures have been approved in other chapter 11 cases in this District.[3]

## B. Sales of the Surplus Assets and Remaining Inventory Should Be Free and Clear of Liens, Claims, Interests, and Encumbrances

16.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions are satisfied: (i) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (ii) such entity consents; (iii) such interest is a lien

---

[3]    *See In re Corinthian Colleges, Inc.*,  Case No.  15-10952 (KJC) (Bankr. D. Del. June 29, 2015); *In re Cal Dive Int'l Inc.*, Case No. 15-10458 (CSS) (Bankr. D. Del. Apr. 6, 2015) (authorizing sales up to $250,000 on 10-days advanced notice and authorizing the sale of assets with a value of no more than $50,000 without further order of the Court); *In re Solyndra LLC*, Case No. 11-12799 (MFW) (Bankr. D. Del. Oct. 17, 2011) (approving de minimis asset sale procedures for sales equal to or less than $1,000,000); *In re Harry & David  Holdings. Inc.*, Case No. 11-10884  (MFW) (Bankr. D. Del. Apr. 27, 2011) (approving miscellaneous sale procedures and de minimis asset sale procedures).

and the price as which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such interest is in bona fide dispute; or (v) such entity could be compelled, in a legal or equitable proceedings, to accept a money satisfaction of such interest.  11 U.S.C. § 363(f)(1)-(5).

17.     This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

18.     Because section 363(f) of the Bankruptcy Code is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the assets "free and clear" of liens and interests.  *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) (citing *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988)); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. Mar. 6, 1992).

19.     The Trustee proposes to sell the Surplus Assets and Remaining Inventory in a commercially reasonable manner and expects that the value of the proceeds from such sales will fairly reflect the value of the property.  The Trustee also proposes that any holder of a Lien on or in any Surplus Assets or Remaining Inventory sold pursuant to the Surplus Asset and Remaining Inventory Sale Procedures will have a corresponding interest in the proceeds of such sale. Further, to the extent entitled thereto, the holder of any such Lien will have the right to Consent to any such sale, and absent such Consent, the Trustee will be required to proceed in accordance with the Normal Requirements.    Accordingly, the requirements of section 363(f) of the Bankruptcy Code will be satisfied for any sale that proceeds in accordance with the Surplus Assets and Remaining Inventory Sale Procedures.

**C. Purchasers of the Miscellaneous Assets Should be Afforded All Protections Under Section 363(m) of the Bankruptcy Code as Good Faith Purchasers**

20.    Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from the debtor notwithstanding that a sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorizations and such sale of lease were stayed pending appeal.

11 U.S.C. § 363(m).

21.    Any sale conducted in accordance with the Surplus Assets and Remaining Inventory Sale Procedures will be the product of arm's-length, good faith negotiations. Accordingly, the Trustee requests that the Court make a finding in the Proposed Order that purchasers of the Surplus Assets or Remaining Inventory have purchased such assets in good faith and are entitled to the full protections of section 363(m) of the Bankruptcy Code.

**D. The Court Should Waive the Stay Imposed by Bankruptcy Rule 6004(h)**

22.    Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* 10 Collier on Bankruptcy ¶ 6004.11 at 6004-26 (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2015).  Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day period, the leading treatise on bankruptcy suggests that the stay period should be

eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." *Id.* at 6004-22. The treatise further provides that if an objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek such a stay. *See id.*

23.     The Trustee submits that under the circumstances, ample cause exists to justify the waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h). Any delay in the Trustee's ability to sell the Surplus Assets and Remaining Inventory would be detrimental to the Minerals Debtors, their estates, and creditors. Accordingly, the Trustee seeks a waiver of the 14-day stay of any order approving this Motion and requests that each sale conducted pursuant to the Surplus Assets and Remaining Inventory Sale Procedures described in this Motion be deemed immediately approved when consummated thereunder.

## NOTICE

24.     Notice of this Motion has been provided to: (i) counsel for the sureties; (ii) the United States Trustee; (iii) the holders of the 20 largest general unsecured claims against the Minerals Debtors; (iv) counsel for the environmental regulators of the Mountain Pass Mine; and (v) those parties who have formally filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. The Trustee submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

25.     No previous request for the relief sought herein has been made by the Trustee to this or any other court.

9

## STATEMENT UNDER LOCAL RULE 9013-1(F)

26.     The Trustee hereby consents to the entry of a final order or judgment by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

WHEREFORE, the Trustee respectfully requests entry of an order, substantially in the form of order attached hereto as Exhibit A, and granting such other and further relief as the Court deems proper.

Dated: October 31, 2016
      Wilmington, Delaware

Respectfully submitted,

*/s/ Laurel D. Roglen*
Tobey M. Daluz (DE No. 3939)
Matthew G. Summers (DE No. 5533)
Leslie Heilman (DE No. 4716)
Laurel Roglen (DE No. 5759)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 252-4428
Facsimile:  (302) 252-4466
E-mail: daluzt@ballardspahr.com
      summersm@ballardspahr.com
      heilmanl@ballardspahr.com
      roglenl@ballardspahr.com

      and

Vincent J. Marriott, III*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 864-8236
Facsimile: (215) 864-9762
E-mail: marriott@ballardspahr.com
(*Admitted *Pro Hac Vice*)

*Counsel to the Chapter 11 Trustee*

10