**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MOLYCORP MINERALS, LLC, *et al.*,[1] | Case No. 15-11371 (CSS) |
| Debtors. | Jointly Administered |
| | **Related to Docket Nos. 253, 296, 337, 342** |

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENT, (B) APPROVING THE SALE OF THE MOLYCORP MINERALS DEBTORS' BUSINESS AND CERTAIN RELATED ASSETS TO THE PURCHASER FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363(b), (f), (k), AND (m), (C) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365, AND (D) GRANTING RELATED RELIEF**

This matter coming before the Court on the *Motion for an Order (I)(A) Authorizing the Sale Free and Clear of All Liens, Claims and Encumbrances of the Minerals Debtors' Business and Certain Related Assets, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Sale; and (II)(A) Approving Bidding Procedures, (B) Approving an Expense Reimbursement Payable to the Stalking Horse Bidder, (C) Scheduling the Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (E) Granting Related Relief* [Docket No. 253] (the "**Motion**")[2] filed by Paul E. Harner, the chapter 11 trustee (the "**Trustee**") appointed in the above-captioned cases (the "**Bankruptcy Cases**"); and this Court having entered an order on May 15, 2017 [Docket No. 296] (the "**Bidding**

[1] The Minerals Debtors are the following 6 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Molycorp Minerals, LLC (4170); Industrial Minerals, LLC; Molycorp Advanced Water Technologies, LLC (1628); PP IV Mountain Pass, Inc. (1205); PP IV Mountain Pass II, Inc. (5361); and RCF IV Speedwagon Inc. (0845).

[2] All capitalized terms used but not otherwise defined herein have the meanings assigned to such terms in the Motion or the applicable exhibits to the Motion, including the Bidding Procedures.

**Procedures Order**") granting the Motion in relevant part and approving, among other things, the bidding procedures (the "**Bidding Procedures**") with respect to, and notice of, the sale of the Minerals Debtors' business and certain related assets (the "**Sale Transaction**"); and the Trustee having conducted an auction on June 14, 2017 wherein the Trustee determined the bid of MP Mine Operations LLC (the "**Purchaser**") to be the highest and best offer and the Purchaser to be the Successful Bidder and the bid of ERP Strategic Minerals, LLP ("**ERP**" or the "**Next Highest Bidder**") to be the Next Highest Bid in accordance with the Bidding Procedures; and Trustee having filed the Notice of Selection of Successful Bidder and Next Highest Bidder [Docket No. 337] (the "**Notice of Successful Bidder**") and the Court having conducted a hearing to approve the Sale Transaction on June 23, 2017 (the "**Sale Hearing**"), at which time all interested parties having been afforded an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered (i) the Motion, (ii) the objections thereto, (iii) the Notice of Successful Bidder, (iv) the Asset Purchase Agreement, dated as of June 19, 2017 (as may be amended, supplemented or otherwise modified in accordance with the terms thereof, and including all Exhibits and Schedules thereto, the "**APA**"), a true and correct copy of which was filed by the Trustee on June 19, 2017 [Docket No. 342], (v) the declaration of the Trustee in support of the Sale Transaction (the "**Harner Declaration**") filed on June 22, 2017 [Docket No. 350], (vi) the declaration of Michael Rosenthal, Chairman of MPMO in support of the Sale Transaction (the "**Rosenthal Declaration**") filed on June 22, 2017 [Docket No. 351], (vii) the statements of counsel and the evidence proffered or adduced at the Sale Hearing, and (viii) the full record in the Bankruptcy Cases; and after due deliberation the Court having determined that the sale of the Purchased Assets to the Purchaser on the terms and conditions set forth in the APA, free and clear of all Liens, claims (as defined in section 101(5) of the Bankruptcy Code,

"**Claims**"), encumbrances, and other interests pursuant to Bankruptcy Code sections 105(a) and 363(b), (f), (k), and (m), is in the best interests of the Minerals Debtors, their estates, and their creditors; and good and sufficient cause having been shown; and for the reasons stated by the Court on the record at the Sale Hearing;

**IT IS HEREBY FOUND AND CONCLUDED, as follows:**

A. **Jurisdiction and Venue**. This Court has jurisdiction over this matter, the property of the Minerals Debtors' estates, including the Purchased Assets to be sold, transferred or conveyed pursuant to the APA pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B. **Final Order**. This Order constitutes a final order within the meaning of 28 U.S.C. §§ 158(a).

C. **Statutory Predicates**. The statutory and other predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6005, 6006, 9007, and 9014 and Local Rules 2002-1 and 6004-1.

D. **Notice**. As evidenced by the affidavits of service on file with the Court, (i) due, proper, timely, adequate, and sufficient notice and a reasonable opportunity to object or be heard with respect to the Sale Transaction has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Bidding Procedures Order, and the APA, including to: (a) the Office of the U.S. Trustee; (b) Oaktree Capital Management, L.P. and its affiliates (collectively, "**Oaktree**"); (c) UMB Bank, National Association (as successor to Wells Fargo Bank, National Association), in its capacity as indenture trustee for

the 10% Notes (the "**10% Notes Trustee**" and the holders of the 10% Notes, the "**10% Noteholders**"); (f) Wells Fargo Bank, National Association, in its capacity as collateral agent for the 10% Notes Trustee and Oaktree (the "**Collateral Agent**"); (g) all entities known to have expressed an interest in acquiring any of the Purchased Assets; (h) all parties known to be asserting a Lien, Claim, encumbrance or interest on or in any of the Purchased Assets; (i) each of the nondebtor counterparties to the executory contracts and unexpired leases proposed to be assumed by the Trustee and assigned to the Purchaser (as defined and described in Section 2.1(xvi) of the APA and set forth on Schedule 2.1(b)(xvi) of the APA, collectively, the "**Purchased Contracts**"); (j) the United States Attorney's office; (k) various federal, state, and local agencies and authorities asserting jurisdiction over the Minerals Debtors' assets, including the County of San Bernardino, California, the California Regional Water Quality Control Board, Lahontan Region, the California Integrated Waste Management Board, the California State Water Resources Control Board, the California Department of Public Health – Radiologic Health Branch, the California Department of Resources Recovery and Recycling, and the U.S. Bureau of Land Management; (l) all federal, state, and local taxing authorities with jurisdiction over the Purchased Assets; (m) all regulatory authorities that have a reasonably known interest in the Purchased Assets; (n) the issuers of the Minerals Debtors' existing surety bonds and surety credit, including Ironshore Indemnity, Inc. ("**Ironshore**"), Lexon Insurance Co., and Bond Safeguard Co. (collectively, "**Lexon/Ironshore**") and Westchester Fire Insurance Company ("**Westchester**", and together with Lexon/Ironshore, the "**Sureties**"); (o) all known creditors of the Minerals Debtors; and (p) all other parties that have filed a notice of appearance and demand for service of papers in the Bankruptcy Cases under Bankruptcy Rule 2002; (ii) such notice and opportunity to be heard was and is good, sufficient,

and appropriate under the circumstances; and (iii) no other or further notice of the Sale Transaction is or shall be required. With respect to entities whose identities are not reasonably ascertained by the Minerals Debtors, publication of notice pursuant to the Bidding Procedures Order in the national edition of *The New York Times* on May 19, 2017 (*see* Docket No. 311) was sufficient and reasonably calculated under the circumstances to reach such entities.

E. **Compliance with Bidding Procedures Order**. As demonstrated by (i) evidence adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Trustee conducted a fair and open sale process in a manner reasonably calculated to produce the highest or otherwise best offer for the Purchased Assets in compliance with the Bidding Procedures Order. The Bidding Procedures were substantively and procedurally fair to all parties, and were the result of arm's length negotiations. The sale process and the Bidding Procedures were non-collusive and duly noticed, and afforded a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase all or any of the Purchased Assets. The Bidding Procedures have been complied with in all material respects by the Trustee and the Purchaser.

F. **Business Justification**. Approval of the APA and consummation of the Sale Transaction is in the best interests of the Minerals Debtors, their estates, their creditors, and other parties in interest. As set forth in the Harner Declaration and on the record at the Sale Hearing, the Trustee has demonstrated good, sufficient, and sound business purposes and justifications for the sale to the Purchaser pursuant to section 363(b) and (k) of the Bankruptcy Code.

G. **Fair Consideration**. The consideration to be provided by the Purchaser pursuant to the APA is comprised of (a) cash consideration in the amount of $20,500,000 (the

"**Cash Amount**") and (b) the assumption of the Assumed Liabilities (as defined in the APA) (collectively, the "**Purchase Price**"). The Purchase Price: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Purchased Assets; (iii) will provide a greater recovery for the Minerals Debtors' creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration. In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Minerals Debtors' estates and the indirect benefits of the Sale Transaction for the Minerals Debtors' creditors. The Trustee's determination that the APA constitutes the Successful Bid for the Purchased Assets is a result of due deliberation by the Trustee and his professionals and constitutes a valid and sound exercise of the Trustee's business judgment consistent with his fiduciary duties. Entry of an order approving the Sale Transaction is a necessary condition precedent to the Purchaser consummating the Sale Transaction.

H. **Arm's-Length Sale**. The APA was negotiated, proposed, and entered into by the Trustee and the Purchaser without collusion, in good faith, and from arm's length bargaining positions. None of the Purchaser or any of its affiliates or members is an "insider" or an "affiliate" of the Minerals Debtors, as those terms are defined in section 101 of the Bankruptcy Code. The Trustee and the Purchaser have not engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code.

I. **Good Faith Purchaser**. The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Purchaser is acting in good faith within the meaning of section 363(m) in consummating the Sale Transaction. The Purchaser has proceeded in good faith in all respects in that, *inter alia*: (i) the Purchaser recognized that the Trustee was free to deal with any other party

interested in acquiring the Purchased Assets; (ii) the Purchaser complied with the provisions of the Bidding Procedures Order; (iii) the Purchaser's bid was subjected to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Purchaser and all other material agreements or arrangements entered into by the Purchaser and the Trustee in connection with the Sale Transaction have been disclosed; and (v) the Purchaser has not engaged in any collusive conduct with any other potential bidder, including entering into any agreements with any potential bidder that sought to control or controlled the price of any of the Purchased Assets.

J. **Legal, Valid, and Binding Transfer**. The Minerals Debtors are the sole and lawful owners of the Purchased Assets, or otherwise have a valid, enforceable property interest in such, and title thereto is vested in the Minerals Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and will vest the Purchaser with all right, title, and interest of the Minerals Debtors to the Purchased Assets free and clear of all Liens, Claims, encumbrances, and other interests of any kind and every kind whatsoever other than those Liens, Claims, encumbrances, and interests specifically assumed by the Purchaser pursuant to the APA.

K. **Valid and Binding Contract; Authorization**. The APA is a valid and binding contract between the Trustee and the Purchaser, which is and shall be enforceable according to its terms. The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(k), 363(m), 365(b), and 365(f) of the Bankruptcy

Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

L. **Free and Clear**. The Purchaser would not have entered into the APA and would not consummate the Sale Transaction, thus adversely affecting the Minerals Debtors, their estates, and their creditors, if the transfer of the Purchased Assets to the Purchaser and the assumption of the Purchased Contracts by the Trustee and assignment to the Purchaser were not free and clear of all Liens, Claims, encumbrances, and interests of any kind or nature whatsoever other than those Liens, Claims, encumbrances, and interests specifically assumed by the Purchaser pursuant to the APA, or if the Purchaser would, or in the future could, be liable for any such Lien, Claim, encumbrance, or interest under any theory of law or equity, including, without limitation, any theory of successor, transferee or assignee Liability. A sale of the Purchased Assets other than one free and clear of any Liens, Claims, encumbrances, and interests would adversely impact the Minerals Debtors' estates, and would yield substantially less value for the Minerals Debtors' estates, with less certainty than the Sale Transaction.

M. Subject to the provisions of this Order and except as may be specifically provided in the APA, the Trustee may sell the Purchased Assets free and clear of all Liens, Claims, encumbrances, and interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied. Each Person with a Lien, Claim, encumbrance or interest in the Purchased Assets: (i) has, subject to the terms and conditions of this Order, consented to the Sale Transaction or is deemed to have consented; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, Claim, encumbrance or interest; or (iii) otherwise falls within the provisions of Bankruptcy Code section 363(f). Those holders of

Liens, Claims, encumbrances, and interests who did not object to Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2).

N. **No Fraudulent Transfer**. The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States or any state, district, territory, or possession thereof. None of the relevant Parties have entered into the Sale Transaction fraudulently.

O. **No Successor Liability**. The Purchaser (i) is not, and shall not be, considered successors in interest to the Minerals Debtors; (ii) has not, *de facto* or otherwise, merged with or into the Minerals Debtors, nor have any of the Minerals Debtors merged into the Purchaser; (iii) is not a continuation or substantial continuation of any of the Minerals Debtors or any enterprise of any of the Minerals Debtors; (iv) does not have a common identity of incorporators, directors, or equity holders with the Minerals Debtors; (v) is not holding itself out to the public as a continuation of the Minerals Debtors; (vi) is not expressly or impliedly assuming and shall not in any way be responsible for any liability or obligation of any of the Minerals Debtors or their bankruptcy estates except as otherwise expressly provided in the APA; and (vii) is not assuming liability and will not by virtue of the Sale Transaction become liable for any Liens, Claims, encumbrances, interests, or Liabilities arising from or related to any of the Liens, Claims, encumbrances, interests, or Liabilities of or against the Minerals Debtors or their assets except as otherwise expressly provided in the APA.

P. **Assumption and Assignment of Purchased Contracts**. On May 19, 2017, the Trustee served the Notice of Intent to Assume and Potentially Assign Certain Executory Contracts and Unexpired Leases (*see* Docket No. 310) (the "**Assumption and Assignment Notice**"). The Assumption and Assignment Notice was provided to each nondebtor

party to a Purchased Contract, together with a statement therein from the Trustee with respect to the amount, if any, to be paid to such nondebtor party to cure any defaults under, and to otherwise comply with the requirements of section 365(b) of the Bankruptcy Code with respect to the Purchased Contract to which such nondebtor is a party (the "**Cure Costs**"), in accordance with the Assumption and Assignment Procedures set forth in the Bidding Procedures Order. As to each Purchased Contract, payment of the Cure Costs, if any, is sufficient for the Trustee to comply fully with the requirements of section 365(b) of the Bankruptcy Code. Each of the nondebtor parties to the Purchased Contracts have had an opportunity to object to the Cure Costs set forth in the Assumption and Assignment Notice. In addition, the Purchaser has provided adequate assurance of its ability to perform its obligations under each of the Purchased Contracts within the meaning of section 365(f) of the Bankruptcy Code, based upon (i) the Purchaser's promises to pay any Cure Costs with respect to the Purchased Contracts and to perform the Minerals Debtors' obligations under the Purchased Contracts for the period on or after the Closing, (ii) the Purchaser's representations made in Section 6.6 of the APA that it has the financial capability to pay the Cure Costs, if any, and to pay the fees and expenses required to be paid by the Purchaser in connection with the Sale Transaction, including with respect to the Purchased Contracts. All other requirements and conditions under the Bankruptcy Code for the assumption by the Trustee, and assignment, transfer and/or sale to the Purchaser of the Purchased Contracts have been satisfied. Therefore, the Purchased Contracts may be assumed by the Trustee and assigned and sold to the Purchaser.

Q. **Prompt Consummation**. The APA and the Sale Transaction must be approved and consummated promptly in order to maximize the value of the Minerals Debtors' estates. Time is of the essence in consummating the Sale Transaction.

R. **Sound Business Purpose**. The Trustee has demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction contemplated by the APA.

S. **Legal and Factual Bases**. Any of the findings of fact contained herein shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law contained herein shall constitute a conclusion of law even if it is stated as a finding of fact. The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.

T. **Other Cause**. There is other good and sufficient cause to grant the relief requested in the Motion and approve the APA and the Sale Transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**General Provisions**

1. The request of the Trustee to enter into the APA and consummate the Sale Transaction pursuant to the Motion is GRANTED and complies with all aspects of Local Rule 6004-1.

2. Any objections to the Sale Transaction or the entry of this Order, including, without limitation, any objections to the assumption, assignment, transfer and/or sale of any Purchased Contracts or the Cure Costs related thereto, that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are DENIED and OVERRULED on the merits with prejudice.

3. The APA, including all of its terms and conditions and ancillary documents, and the Sale Transaction are APPROVED in all respects.

**Approval of Free and Clear Sale of the Purchased Assets**

4. Pursuant to sections 363 and 365 of the Bankruptcy Code, the Trustee is authorized and directed to (i) execute, deliver, perform under, consummate, and implement the APA and the Sale Transaction together with all additional instruments and documents that are requested by the Purchaser and may be reasonably necessary or desirable to implement the APA and the Sale Transaction, and (ii) take any and all actions as he deems necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to its possession the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA and the Sale Transaction, including, without limitation, any and all actions reasonably requested by the Purchaser which are consistent with the APA and the Sale Transaction.

5. For the avoidance of doubt, and notwithstanding anything to the contrary contained in the APA, the Purchased Assets do not include, and this Order does not affect (i) the equipment owned by Oaktree and leased to Molycorp Minerals, and (ii) the subsurface mineral estate (and all federal and state law rights associated therewith and incident and appurtenant thereto) and intellectual property owned by Secure Natural Resources LLC. Specifically, for the avoidance of doubt, notwithstanding anything to the contrary contained in the APA or this Order, the Purchased Assets are not being sold free and clear of the federal and state law access and mining rights of SNR associated with and incident and appurtenant to the subsurface mineral estate.

6. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, upon the Closing: (i) the transfer of the Purchased Assets to the Purchaser pursuant to the APA shall constitute a legal, valid, and effective transfer of the Purchased Assets and shall vest the Purchaser with all right, title, and interest in and to the Purchased Assets; (ii) except as otherwise

provided in paragraphs 11-13 of this Order, the Purchased Assets shall be transferred to the Purchaser free and clear of all Liens, Claims, encumbrances, and interests of any and every kind whatsoever, whether known or unknown, whether fixed or contingent, whether arising prior or subsequent to the commencement of the Bankruptcy Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to: (a) those of any Governmental Body; (b) those based on any theory of successor or transferee Liability, merger, bulk transfer law, or any other similar theory, cause of action or statutory authority; (c) those imposing any restriction on the use, transfer, receipt of income, or other exercise of any attributes of ownership of the Purchased Assets; (d) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Minerals Debtors' or the Purchaser's interest in the Purchased Assets, or any similar rights; (e) those relating to taxes arising under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing; (f) all mortgages, deeds of trust, security interests, conditional sale, or other title retention agreements (whether arising by statute or contract), pledges, Liens (whether arising by statute or contract, including but not limited to the mechanics' liens asserted by Total-Western, Inc., Penta Building Group, and GSL Electric, Inc. (collectively, the "**Mechanics' Liens**")), judgments, demands, encumbrances, options, rights of first refusal, rights of first offer, or charges of any kind or nature, including but not limited to, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership; (g) all debts arising in any way in connection with any agreements, acts, or failures to act of any of the Minerals Debtors or any of the Minerals Debtors' predecessors or Affiliates or any of their officers or directors; and (h) all other obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests, implied license, and matters of any kind

and nature) other than those Liens, Claims, encumbrances, and interests specifically assumed by the Purchaser pursuant to the APA; and (iii) except as otherwise provided in paragraphs 11-13 of this Order, all Persons, including, without limitation, all lenders, debt security holders, equity security holders, governmental, tax and regulatory authorities, parties to executory contracts, customers, trade creditors, and other creditors holding Liens, Claims, encumbrances, or interests of any kind or nature against, or in, the Minerals Debtors or the Purchased Assets arising out of, in connection with, or in any way relating to the Minerals Debtors, the Purchased Assets, or the transfer of the Purchased Assets to the Purchaser, are hereby forever prohibited, estopped and permanently enjoined from asserting any such Lien, Claim, encumbrance or interest, or commencing or continuing in any manner any action or other proceeding (whether in law or equity) in connection with any such Lien, Claim, encumbrance or interest, against Purchaser and its Affiliates, and their respective successors and assigns, or the Purchased Assets.

7. Effective as of the date of the Closing of the Sale Transaction (the "**Closing Date**"), this Order shall be construed and shall constitute for any and all purposes, as applicable, a full and complete general assignment, conveyance and transfer to the Purchaser of the Purchased Assets acquired under the APA and a bill of sale and assignment transferring to the Purchaser good, marketable, and indefeasible title in and to the Purchased Assets.

8. This Order is and shall be effective as a determination that all Liens, Claims, encumbrances, and interests shall be and are, without further action by any Person, unconditionally released, discharged and terminated with respect to the Purchased Assets as of the Closing Date, except as may otherwise be set forth in paragraphs 11-13 of this Order and in the APA. All Persons are hereby forever barred, prohibited, and estopped from taking any action that would adversely affect or interfere with the ability of the Trustee to sell, assign,

transfer and/or convey the Purchased Assets to the Purchaser in accordance with the terms of the APA and this Order, provided, however that nothing in this paragraph or paragraph 34 of this Order shall be deemed to preclude any governmental or regulatory review otherwise applicable to the Sale Transaction or any part thereof.

9. Except as otherwise provided herein or in the APA, on the Closing Date, any Person asserting a Lien, Claim, encumbrance, or interest in the Purchased Assets is authorized and directed to execute such documents and instruments and to take all other actions as may be reasonably necessary to document and effectuate the release of its respective Liens, Claims, encumbrances, and interests in the Purchased Assets, if any. If any such Person fails to execute any such documents or instruments or take any such actions, the Purchaser is authorized to execute such documents and instruments and to take such actions on behalf of such Person so as to document the release of such Liens, Claims, encumbrances, and interests.

10. Pursuant to the APA, the Purchaser is not acquiring any of the Excluded Assets or assuming any of the Excluded Liabilities.

11. Nothing in this Order or the APA releases, nullifies, precludes or enjoins the enforcement of any police or regulatory power of a Governmental Body that any entity would be subject to as the owner or operator of property after the date of entry of this Order; provided, however, that nothing herein shall subject the Purchaser to any liability to a Governmental Body for any Excluded Pre-Closing Fines (as defined in the APA). Nothing in this Order or the APA waives any obligation of the Minerals Debtors or the Purchaser, as applicable, to comply with applicable legal requirements under police or regulatory law governing the transfer or assignment or disposal of, or compliance with, any governmental (a)license, (b) permit, (c) registration, (d) authorization, or (e) approval.

12. Nothing in this Order or the APA affects the Minerals Debtors' or the Purchaser's obligations and responsibilities as a lessee of or operator on federal government property under the Bureau of Land Management's ("**BLM**") regulations, including without limitation 43 C.F.R. Part 2800 and Subparts 3715 and 3809; provided, however, that nothing herein shall subject the Purchaser to any liability to a Governmental Body for any Excluded Pre-Closing Fines (as defined in the APA). Further, any assignment from the Minerals Debtors to the Purchaser of any right of way granted by BLM is, pursuant to regulation, contingent on BLM's approval, and must comply with BLM's regulations, including without limitation 43 C.F.R. § 2807.21.

13. Notwithstanding any other provision of this Order, any other order of this Court, or the APA, pursuant to statute and regulation, no assignment of any rights and interests of any of the Minerals Debtors in any federal license or authorization issued by the Federal Communications Commission ("**FCC**") shall take place prior to the issuance of FCC regulatory approval for such assignment pursuant to the Communications Act of 1934, as amended, and the rules and regulations promulgated thereunder. The FCC's rights and powers to take any action pursuant to its regulatory authority against Purchaser as a licensee, including but not limited to, imposing any regulatory conditions on such assignments and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority; provided, however, that nothing herein shall subject the Purchaser to any liability to a Governmental Body for any Excluded Pre-Closing Fines (as defined in the APA).

14. For the avoidance of doubt, the cash collateral securing the existing bonds issued by the Sureties on behalf of the Minerals Debtors in favor of Governmental Bodies and

other indemnity and indemnity-related obligations owed to the Sureties shall remain in place and no transfer of any such cash collateral to the Purchaser shall take place until such time as all obligations under the surety bonds have been released by the applicable Governmental Body or the Sureties are otherwise discharged. Upon such release, the Sureties shall transfer all remaining cash collateral as may be directed by the Purchaser, including directly to any replacement surety bond provider, but under no circumstances shall any such cash collateral be transferred to or otherwise be released to the Minerals Debtors or the Trustee.

15. Until 11:59 p.m. on July 14, 2017 (the "**ERP Outside Date**"), ERP shall serve as the Next Highest Bidder on the terms and conditions of the Asset Purchase Agreement executed by ERP and the Trustee as such agreement shall be conformed to reflect ERP's Next Highest Bid (as defined in the Bidding Procedures) (as so conformed, the "**ERP Purchase Agreement**"). Absent an extension of the ERP Outside Date (subject to the prior written consent of ERP), ERP's Next Highest Bid and the ERP Purchase Agreement will terminate automatically and immediately, and in accordance with the Bidding Procedures Order, the Trustee shall return to ERP its $500,000 good faith deposit within five business days thereafter. If the Closing of the Sale Transaction between the Trustee and the Purchaser occurs after the ERP Outside Date, ERP shall remain entitled to payment of its Expense Reimbursement (as defined in the ERP Purchase Agreement and approved in the Bidding Procedures Order).

16. Notwithstanding any provisions herein to the contrary, any Liens including but not limited to the Mechanics' Liens existing at the time of the Closing of the Sale Transaction shall attach to the proceeds of the Sale in accordance with their relative priorities; and such proceeds shall be held by the Trustee until this Court orders, or the parties otherwise agree on, the distribution of such proceeds.

**No Successor Liability**

17. The Purchaser and its Affiliates, successors, and assigns shall not, and shall not be deemed to: (i) be a successor to the Minerals Debtors or their estates; (ii) have merged or consolidated with or into any of the Minerals Debtors or their estates in a statutory or de facto merger or other combination; (iii) be a continuation or substantial continuation of the Minerals Debtors or any enterprise of the Minerals Debtors; or (iv) expressly or impliedly assume any liabilities, obligations, warranties or other Liens, Claims, encumbrances, or interests arising from or related to the Excluded Liabilities. Except as otherwise provided herein or in the APA, the Purchaser and its Affiliates shall have no successor, transferee, or vicarious Liability of any kind or character, including, but not limited to, under any theory of foreign, federal, state or local antitrust, environmental, tax, ERISA, labor, WARN Act, product liability, employment, de facto merger, substantial continuation, successor, assignee or transferee Liability, or other law, rule or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated, with respect to the Minerals Debtors, the Business, or any obligations of the Minerals Debtors arising prior to the Closing Date, including, but not limited to, Liabilities on account of any Taxes or other Governmental Body fees, contributions, or surcharges arising, accruing or payable under, out of, in connection with, or in any way relating to, the ownership of the Purchased Assets prior to the Closing Date. Except as otherwise provided herein or in the APA, the transfer of the Purchased Assets to the Purchaser pursuant to the APA shall not result in the Purchaser or its Affiliates, members, or shareholders, or the Purchased Assets, having any Liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff or otherwise, directly or indirectly, (i) any Claim against the

Minerals Debtors or against any insider of the Minerals Debtors; or (ii) any Lien, Claim, encumbrance, or interest.

18. Upon the Closing, and except as otherwise expressly provided in the APA with respect to Assumed Liabilities, the Purchaser shall not be liable for any Claims against, and Liabilities of, the Minerals Debtors or any of the Minerals Debtors' predecessors or Affiliates.

19. The Purchaser has given substantial consideration under the APA to the Minerals Debtors' estates. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor or transferee Liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens, Claims, encumbrances, and interests against the Minerals Debtors or the Purchased Assets.

**<u>Tax Matters</u>**

20. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the APA and the Sale Transaction. Because the assignment, transfer, and/or sale of the Purchased Assets: (i) is in exchange for the Purchase Price, no withholding of U.S. federal income tax pursuant to section 1441 or 1442 of the Internal Revenue Code is required, and (ii) constitutes an occasional sale, it is exempt from sales and use tax. The Sale Transaction contemplated hereunder is not receiving an exemption under section 1146(a) of the Bankruptcy Code.

**<u>Assumption and Assignment of Claims and Purchased Contracts</u>**

21. Except for the Excluded Assets set forth in the APA, on the Closing Date, all of the rights, claims, or causes of action of the Minerals Debtors that relate to the Purchased Assets or the Assumed Liabilities shall be assigned, sold, and transferred to Purchaser, free and clear of all Liens, Claims, encumbrances, and interests, and Purchaser shall

have standing and authority to assert such rights, claims, and causes of action and the Minerals Debtors and their estates shall have no continuing interest in such rights, claims, or causes of action or the proceeds thereof.

22. Pursuant to section 365 of the Bankruptcy Code, the Trustee is authorized to assume the Purchased Contracts designated in the APA and assign, transfer, and/or sell the Purchased Contracts to the Purchaser; provided that the Purchaser may, in accordance with the APA and the Bidding Procedures Order, direct the removal of any executory contract or unexpired lease from the list of Purchased Contracts set forth in Schedule 2.1(b)(xvi) of the APA at any time prior to the Closing, for any reason, in which case such executory contract or unexpired lease shall not constitute a Purchased Contract and Purchaser shall have no Liability with respect thereto. Subject to the terms of the APA, the Purchaser shall pay the undisputed portion of the Cure Costs, if any, pursuant to and subject to the terms and limitations set forth in the APA and the Bidding Procedures Order.

23. Effective upon the Closing, and without the need for any further action by any party, the Purchased Contracts, consistent with the provisions contained herein, shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, and, pursuant to section 365(k) of the Bankruptcy Code, following payment of the Cure Costs, the Minerals Debtors shall be relieved from any further liability with respect to the Purchased Contracts after such assignment and sale to the Purchaser.

24. The Purchaser's (i) promises to pay any Cure Costs with respect to the Purchased Contracts and to perform the Minerals Debtors' obligations under the Purchased Contracts for the period on or after the Closing Date and (ii) representations made in Section 6.6 of the APA that it has the financial capability to pay the Cure Costs (if any) and to pay the fees

and expenses required to be paid by the Purchaser in connection with the Sale Transaction, including with respect to the Purchased Contracts, based upon, among other things, the Purchaser's representations that it has sufficient available cash and financial commitments to make such payments shall constitute adequate assurance of its future performance under the Purchased Contracts as of the Closing within the meaning of sections 365(b)(l)(C) and (f)(2)(B) of the Bankruptcy Code.

25. All defaults or other obligations of the Minerals Debtors under the Purchased Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured, upon payment of the Cure Costs, and the Purchaser shall have no Liability arising or accruing under the Purchased Contracts on or prior to the Closing, except as otherwise expressly provided in the APA. The nondebtor parties to the Purchased Contracts are barred from asserting against the Trustee, the Minerals Debtors, the Purchaser, and their respective successors and assigns, any default or unpaid obligation allegedly arising or occurring before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Purchased Contracts arising or incurred prior to the Closing, other than the Cure Costs. Any provisions in any Purchased Contract (including those of the type described in section 365(b)(2)) of the Bankruptcy Code that prohibit or condition the assignment of such Purchased Contract or allow the nondebtor party to such Purchased Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Purchased Contract, shall constitute unenforceable anti-assignment provisions that are void and of no force and effect.

26. The failure of the Minerals Debtors, the Trustee, or the Purchaser to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions or of the right of the Minerals Debtors, the Trustee, or the Purchaser, as the case may be, to enforce every term and condition of the Purchased Contracts. The validity of the assumption, assignment, and sale of the Purchased Contracts to the Purchaser shall not be affected by any existing dispute between any of the Minerals Debtors, the Trustee, and/or any nondebtor party to such Purchased Contracts. Any party that may have had the right to consent to the assignment of any Purchased Contracts is deemed to have consented for the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code. There shall be no accelerations, assignment fees, increases, or any other fees charged to the Purchaser or the Trustee as a result of the assumption, assignment, transfer, and/or sale of the Purchased Contracts. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all nondebtor parties to the Purchased Contracts are forever barred and permanently enjoined from raising or asserting against the Trustee or the Purchaser any assignment fee, default, breach, or claim or pecuniary loss arising under or related to the Purchased Contracts existing as of the Closing Date or any assignment fee or condition to assignment arising by reason of the Closing other than with respect to the allowance and payment of any Cure Costs as provided in this Order and in the APA.

27. To the extent a counterparty to a Purchased Contract failed to timely object to a Cure Cost, such Cure Cost shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to or denying the validity and finality of the Cure Cost at any time, and such Cure Costs, when paid, shall completely revive any Purchased Contract to which it relates.

28. The Purchaser is hereby authorized in connection with the consummation of the Sale Transaction to allocate the Purchased Assets and the Purchased Contracts among its direct and indirect subsidiaries in a manner as it, in its sole discretion, deems appropriate and to assign, license, sublicense, transfer, or otherwise dispose of any of the Purchased Assets or the rights under any Purchased Contract to its direct and indirect subsidiaries with all of the rights and protections accorded under this Order and the APA, and the Trustee shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing.

**No Fraudulent Transfer**

29. The consideration provided by the Purchaser under the APA constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Voidable Transactions Act (and all similar statutes), (ii) fair consideration under the Uniform Voidable Transactions Act (and all similar statutes), and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory, district, or possession thereof. The consideration provided by the Purchaser for the Purchased Assets under the APA is fair and reasonable and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code, and no Person shall be entitled to damages or other recovery pursuant to section 363(n) in respect of the APA or the Sale Transaction.

**Good Faith**

30. The APA and the Sale Transaction are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the APA and the Sale Transaction shall not affect the validity of the sale of the Purchased Assets to the Purchaser, unless this Order is duly stayed pending such appeal.

The Purchaser is a good faith purchaser of the Purchased Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

**Additional Provisions**

31. All Persons that are in possession of some or all of the Purchased Assets as of or after the Closing are hereby deemed to have surrendered possession of such Purchased Assets to the Purchaser as of the Closing or at such time thereafter as the Purchaser may request. The Trustee agrees to exercise reasonable best efforts to assist the Purchaser in assuring that all persons that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets in which the Minerals Debtors hold an interest will surrender possession of the Purchased Assets either to (i) the Trustee before the Closing Date, or (ii) the Purchaser on or after the Closing Date.

32. This Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons, who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee and owner of the Purchased Assets free and clear of all Liens, Claims, encumbrances, and interests (all such entities being referred to as "**Recording Officers**"). All Recording Officers are authorized to strike and shall be deemed to have stricken recorded Liens, Claims, encumbrances, and interests against the Purchased Assets recorded or arising prior to the Closing Date, unless the APA expressly provides that the Purchaser is acquiring the Purchased Assets subject to such Liens, Claims, encumbrances, and interests. A certified copy of this Order may be filed with the appropriate Recording Officers to evidence

cancellation of any recorded Liens, Claims, encumbrances, and other interests against the Purchased Assets recorded or arising prior to the date of the Closing, other than Liens, Claims, encumbrances, and other interests specifically assumed by Purchaser under the APA.

33. Except as otherwise provided in paragraphs 11-13 of this Order and in the APA, to the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing, to operate under any Permit (as defined in the APA) of the Minerals Debtors with respect to the Purchased Assets and all such Permits are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date to the extent transferable; provided that the Purchaser (a) has made or will make all necessary applications and filings under applicable statutes and regulations and obtain the consent of any Government Body that may be necessary under such statutes and regulations (if any) to obtain the transfer of such Permits, and pay the fees associated with such applications and filings and (b) shall provide the necessary financial assurances and commitments, including the commitment to post additional collateral or other security, if necessary, with respect to the Minerals Debtors' applicable Permits. All existing Permits applicable to the Purchased Assets shall remain in place for Purchaser's benefit until either new Permits are obtained or existing Permits are transferred in accordance with applicable administrative procedures. To the extent provided by section 525 of the Bankruptcy Code, no Governmental Body may revoke or suspend any Permit relating to the Purchased Assets sold, transferred, assigned, or conveyed to the Purchaser solely on account of the filing or pendency of the Bankruptcy Cases or the consummation of the Sale Transaction.

34. Following the Closing, no holder of any Lien, Claim, encumbrance, or interest on or in the Purchased Assets or other party in interest may interfere with the Purchaser's use and enjoyment of the Purchased Assets based on or related to such Lien, Claim,

encumbrance, or interest, or any actions that the Trustee may take in the Bankruptcy Cases, and no party may take any action to prevent, interfere with, or otherwise enjoin the consummation of the Sale Transaction.

35. The terms and provisions of the APA, the ancillary agreements, and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Trustee, the Purchaser, and each of their respective Affiliates, successors and assigns, the Minerals Debtors' estates, all creditors of (whether known or unknown), and holders of equity interests in the Minerals Debtors, and any affected third parties, notwithstanding the dismissal of any of the Bankruptcy Cases, the conversion of any the Bankruptcy Cases to a case or cases under chapter 7, or any subsequent appointment of any trustee(s) under any Chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding and not subject to rejection or avoidance. The APA, the Sale Transaction and this Order shall be enforceable against and binding upon, and shall not be subject to rejection or avoidance by, any chapter 7 or chapter 11 trustee appointed in the Bankruptcy Cases. Further, nothing contained in any plan of reorganization or liquidation confirmed in the Bankruptcy Cases or any order confirming any plan of reorganization or liquidation or any other order entered in these Bankruptcy Cases shall conflict with or derogate from the provisions of the APA or the terms of this Order.

36. The APA and any related agreements, documents, or other instruments may be amended in accordance with the terms thereof without further order of the Court.

37. The failure to include specifically any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety with such amendments as may be made by the parties in accordance with this Order.

38. To the extent of any inconsistency between the provisions of this Order, the APA, and any documents executed in connection therewith, the provisions contained in the Order, the APA and any documents executed in connection therewith shall govern, in that order.

39. The provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of all Liens, Claims, encumbrances, and interests shall be self-executing, and notwithstanding the failure of the Trustee, the Purchaser, or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof, all Liens, Claims, encumbrances, and other interests (other than those expressly assumed by the Purchaser) on or against such Purchased Assets, if any, shall be deemed released, discharged, and terminated.

40. From time to time, as and when requested by any Party, each Party to the APA shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other Party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect or confirm, of record or otherwise, in Purchaser its right, title, and interest in and to the Purchased Assets. Any amounts that become payable by the Trustee to the Purchaser or the Minerals Debtors pursuant to the APA (or any related agreements executed in connection therewith) (a) shall constitute allowed administrative expenses of the Minerals Debtors' estates under sections 503(b) and 507(a)(2) of the Bankruptcy Code, and (b) shall be paid by the Trustee in the time and manner provided for in the APA (and such related agreements) without further Court order.

41. At any time prior to the Closing of the Sale Transaction, the Trustee and the Purchaser may amend or otherwise make non-material changes to the APA. In accordance with section 11.5 of the APA, any such amendment shall be in writing.

42. Notwithstanding the Closing of the Sale Transaction and the replacement or discharge of the surety bonds, all obligations owed by the Minerals Debtors under the (i) Loan and Security Agreement (as amended, supplemented, or modified, the "Loan Agreement") dated September 26, 2016 among Molycorp Minerals, LLC and Ironshore and/or one of its Affiliates (collectively, the "Lender"); (ii) the Final Order (A) Authorizing Secured and Unsecured Postpetition Financing, (B) Granting Liens on Certain Insurance Proceeds, and (C) Approving Agreements with Ironshore Indemnity, Inc. [Docket No. 120], the Order Authorizing Chapter 11 Trustee to Enter into a First Amendment to the Post Petition Financing Agreement Extending the Facility Termination Date to April 30, 2017 (Docket No. 248), and the Order Authorizing Chapter 11 Trustee to Enter into a Second Amendment to the Post Petition Financing Agreement Increasing the Facilities to $6.2 Million and Extending the Facility Termination Date to July 7, 2017 (Docket No. 297) (collectively, the "DIP Order"); and (iii) Sureties Advance (as defined in the Loan Agreement) (subclauses (i), (ii), and (iii), collectively, the "DIP Obligations"), shall remain outstanding and the Loan Agreement and DIP Order shall remain full force and effect, including with respect to any obligations of the Lender to continue to provide funding thereunder for expenses accrued through Closing.

43. Upon the Purchaser replacing or otherwise discharging the surety bonds issued by the Sureties ~~at the Closing~~, the Purchaser and the Sureties shall enter into an agreement in form and substance satisfactory to each party providing for, in substance, the Sureties' assignment to the Purchaser of all rights of the Sureties to receive payment of the DIP

Obligations from the Minerals Debtors, including the rights with respect to any collateral securing the DIP Obligations or the proceeds thereof granted under the Loan Agreement, the DIP Order or any other order of the Court. Such assignment shall be effective without further order of the Court.

44. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Time is of the essence in closing the Sale Transaction and the Trustee and the Purchaser intend to close the Sale Transaction as soon as practicable. Any party objecting to this Order must timely file an appeal and pursue a stay, or risk its appeal being dismissed as moot.

45. The findings and conclusions set forth herein and read into the record at the Sale Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

46. This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased Assets to the Purchaser; (ii) adjudicate, if necessary, any and all disputes arising out of, concerning or otherwise relating in any way to the Sale Transaction; and (iii) protect the Purchaser against any Liens, Claims, encumbrances, and interests in the Purchased Assets of any kind or nature whatsoever.

Dated: June 23, 2017

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE